IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

DAVID YOUNG,                         )
                                     )
                Plaintiff,           )          8:07CV265
                                     )
        v.                           )
                                     )
DOUGLAS COUNTY, NEBRASKA, a          )     MEMORANDUM AND ORDER
political subdivision of the         )
State of Nebraska; CITY OF           )
OMAHA, a political sub-              )
division of the State of             )
Nebraska; JENNA R. JOHNSON;          )
SANDRA L. DENTON,                    )
individually and in her             )
official capacity; MATTHEW R.        )
KAHLER, individually and in          )
his official capacity;               )
ANGIE CIRCO, individually and        )
in her official capacity; ALAN)
REYES, individually and in           )
his official capacity;               )
JOHN DOE #1, real and true          )
name unknown; JANE DOE #1,           )
real and true name unknown,          )
                                     )
                Defendants.          )
_____)


                    I. INTRODUCTION

        This matter is before the Court on defendants Douglas

County, Nebraska, Matthew Kahler, and Sandra Denton's (the

"County Defendants") motion for summary judgment (Filing No.

142), County Defendants' brief and index in support of their

motion (Filing Nos. 143 and 144), and plaintiff's brief and index

in opposition to motion for summary judgment (Filing Nos. 176 and

177).

        Denton and Kahler argue that they are entitled to

absolute, or at least qualified immunity with regard to the

§ 1983 claims in this case.  The County Defendants argue that
Denton and Kahler acted at all times within the scope of their
employment and that the State has not waived sovereign immunity
with respect to the state law claims at issue here.  Upon review
of the motion, the briefs and evidentiary submissions of the
parties, and the applicable law, the Court finds that the motion
should be granted.

## II. FACTS

The facts relevant to this motion are largely
undisputed.  Defendants Denton and Kahler were both employed as
deputy county attorneys at the Douglas County Attorney's office.
Douglas County is a political subdivision of the State of
Nebraska.  On or about June 5 and 6, 2005, Jenna Johnson made a
report to the Omaha police department stating that plaintiff
David Young had sexually assaulted her on or about June 5, 2005.
Angie Circo, an officer with the Omaha police department, was
assigned to investigate Johnson's report and began collecting
evidence.  On August 18, 2005, Circo submitted an affidavit in
support of an arrest warrant to the Douglas County Court, which
was issued the next day.  Young was arrested for the First-Degree
Sexual Assault of Johnson in violation of Neb. Rev. Stat. § 28-
319(1) on August 24, 2005.  He was released on bond later that
evening.

On August 25, 2005, Denton filed the charge of First-
Degree Sexual Assault against Young.  On November 2, 2005, the
Douglas County Court determined that probable cause existed to
believe that Young had committed First-Degree Sexual Assault upon

-2-

Johnson.   The Douglas County Court then bound Young's charge over
to the Douglas County District Court for trial.   The Douglas
County Attorney's office filed an information in the District
Court of Douglas County charging Young with the First-Degree
Sexual Assault of Johnson.   Young filed a plea in abatement with
the Douglas County District Court, which was argued on January
17, 2006, and overruled on March 9, 2006.

On March 6, 2006, Denton issued a subpoena to the
custodian of records for Creighton University seeking production
of records relating to a prior incident between Young and a
another young woman.   The court entered a written order quashing
the subpoena on April 27, 2006.   (*See* Filing Nos. 177-8, 177-9.)
On June 30, 2006, Kahler issued a subpoena to the custodian of
records for Creighton University seeking production of records
relating to a prior incident between Young and a different young
woman.   (*See* Filing No. 177-11.)   A hearing on this subpoena was
scheduled for a date subsequent to trial.

On July 12, 2006, Circo and another officer of the
Omaha police department executed a search warrant (Filing No.
177-14) upon the custodian of records for Creighton University
and obtained copies of the records, which she provided to Denton.
The parties dispute whether Circo obtained the search warrant at
Denton or Kahler's behest or on her own initiative.   On July 17,
2006, Denton and Kahler moved to declare evidence relating to
prior acts by Young admissible pursuant to Neb. R. Evid. § 27-
404(2).   The Court denied this motion.   (*See* Filing No. 177-18.)
Young's criminal case was tried to a jury from July 18 through

-3-

July 24, 2006.  Upon conclusion of the State's case in chief, Young moved to dismiss the case on the grounds that the evidence failed to establish a prima facie case of guilt, which the court denied.  Following deliberations, the jury acquitted Young.

Young filed his complaint in this matter on July 12, 2007 (Filing No. 1).  Among other claims, Young seeks damages from Denton, Kahler, and Douglas County pursuant to 42 U.S.C. § 1983, and damages from Denton and Kahler for allegedly tortuous conduct in falsely imprisoning him, carrying out a malicious prosecution against him, and abusing the judicial process.  These defendants moved to dismiss on September 12, 2007, which motion the Court denied on December 18, 2007.  (*See* Filing Nos. 22, 50.) The parties proceeded with discovery.  On May 12, 2009, the County Defendants filed this motion for summary judgment.

### III. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A fact is material only when its resolution affects the outcome of the case.  *Anderson,* 477 U.S. at 248.  A material issue is genuine if it has any real basis in the record.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*

-4-

475 U.S. 574, 586-87 (1986).  On a motion for summary judgment,
the Court must view all evidence and reasonable inferences in the
light most favorable to the nonmoving party.  *Anderson,* 477 U.S.
at 250.  However, the nonmoving party may not rest on the mere
denials or allegations in the pleadings, but must set forth
specific facts sufficient to raise a genuine issue for trial.
*Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  If the
plaintiff cannot support each essential element of his claim,
summary judgment will be granted because a complete failure of
proof regarding an essential element necessarily renders other
facts immaterial.  *Id.* at 322-23.

## IV. DISCUSSION

A. 42 U.S.C. § 1983 Claims

Young claims that Douglas County had a policy,
practice, rule, or custom of, among other things, wrongful
seizure of property, conducting illegal searches, violating
privacy rights, and conducting investigatory discovery in a
criminal matter.  (*See* Filing No. 1, at 7-8 ¶ 29.)  He sues
Denton and Kahler in both their individual and official
capacities and Douglas County as an independent entity.  (*Id.* at
¶ 31.)

1. Absolute Immunity

Defendants Denton and Kahler argue that they are
entitled to absolute immunity from Young's § 1983 claims because
their actions were intimately associated with the judicial phase
of a criminal prosecution.  It is true that Denton and Kahler
were actively engaged in prosecuting a charge against Young when

-5-

they sought to obtain the records at issue here.  The defendants
also suggest that they sought the information in an effort to
bolster the State's case against Young, and not for the purpose
of investigating him for unrelated charges.  They rely on *Imbler
v. Pachtman*, 424 U.S. 409 (1976), for the proposition that
absolute immunity protects a state prosecutor who acts within the
scope of his duties in initiating and pursuing a criminal
prosecution, thereby prohibiting liability for damages under
§ 1983.  (*See* Filing No. 143, at 7.)  However, *Imbler* is not as
broad as the defendants suggest.  The acts at issue in *Imbler*,
such as offering false testimony, suppressing evidence favorable
to the defense, and using a police artist's sketch during trial
even though it had been altered to more closely resemble the
defendant, are all "intimately associated with the judicial phase
of the criminal process . . . ."  *Id.* at 430.  It is true that
"[n]ot all of an advocate's work is done in the courtroom.  For a
lawyer to properly try a case, he must confer with witnesses, and
conduct some of his own factual investigation."  *Reasonover v.
St. Louis County*, 447 F.3d 569, 580 (8th Cir. 2006).  However, it
does not necessarily follow that "attempts to obtain potential
Neb. R. Evid. § 27-404(2) evidence from Creighton University were
inextricably intertwined with advocating the State's case against
Plaintiff."  (Filing No. 143, at 11.)

        Whether a prosecutor is entitled to absolute immunity
depends on the function the complained of conduct serves.  "[T]he
actions of a prosecutor are not absolutely immune merely because
they are performed by a prosecutor."  *Buckley v. Fitzsimmons*, 509

U.S. 259, 273 (1993).  "The question is whether a prosecutor's investigation is of the type normally done by police, in which case prosecutors enjoy only qualified immunity, or whether an investigation is bound up with the judicial process, thus affording prosecutors the heightened protection of absolute immunity."  *KRL v. Moore*, 384 F.3d 1105, 1116 (9th Cir. 2004).  In this case, the prosecutors were seeking to gather information from Creighton University about Young's past conduct unrelated to the case they were prosecuting.  This is an investigatory function.  If the Court treated the gathering of evidence of other crimes or wrongs as anything other than investigatory, it would undermine the distinction made in *Imbler* because all or nearly all investigations undertaken by prosecutors could be cast as seeking evidence of other crimes or wrongs.  Absolute immunity is not this broad.

Denton and Kahler cite *Myers v. Morris*, 810 F.2d 1437 (8th Cir. 1987), for the proposition that absolute immunity is granted even for allegedly illegal or abusive conduct.  This is beside the point.  Each item on the long list of repugnant prosecutorial conduct cited by the defendants (conspiring to prosecute an individual for a crime that never occurred, soliciting and suborning perjury, witness coaching, and coercing a witness to withhold truthful testimony) is intimately related to the prosecutor's function as a courtroom advocate.  Each is related to the prosecutor making his or her case.  The conduct alleged in this case regards information unrelated to the case that was then pending against Young.

-7-

Finally, the policies underlying absolute immunity do not support a grant of it here.  Absolute immunity exists to preserve the prosecutor's independence and to insure that he does not hesitate to vigorously advocate out of fear of retaliation. *Imbler*, 424 U.S. at 429.  But the purpose of the functional approach "was to distinguish and leave standing those cases . . . which hold that a prosecutor engaged in certain investigative activities enjoys, not the absolute immunity associated with the judicial process, but only a good-faith defense comparable to the policeman's."  *Id.* at 430.  The Court finds that in this case the seeking of records of unrelated crimes or wrongs is precisely this type of investigative function.  Denton and Kahler are therefore not entitled to absolute immunity with respect to these claims.

2. Qualified Immunity

As discussed above, on these facts Denton and Kahler are not entitled to absolute immunity.  However, they may still be entitled to qualified immunity.  "[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Wilson v. Layne*, 526 U.S. 603, 609 (1999).  It is available only to an official sued in his individual or personal capacity.  15 Am. Jur. 2d *Civil Rights* § 113.  Qualified immunity is a question of law for the Court. *Littrell v. Franklin*, 388 F.3d 578, 584 (8th Cir. 2004).

However, in the context of summary judgement, the Court views the record in the light most favorable to Young and draws all reasonable inferences in his favor.  In resolving a qualified immunity claim, courts ask whether the plaintiff's allegations establish a constitutional violation.  *See Engleman v. Deputy Murray*, 546 F.3d 944, 947 (8th Cir. 2008).  "Then we ask whether the right was clearly established at the time of the violation." *Id.*  However, the "contours of an alleged constitutional right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Smook v. Minnehaha County*, 457 F.3d 806, 813 (8th Cir. 2006).  In other words, if Young "fails to assert a constitutional violation under the law as currently interpreted or if the actions that [he] alleges the defendant[s] to have taken are actions that a reasonable officer could have believed lawful, [Denton and Kahler are] entitled to dismissal."  *Engleman*, 546 F.3d at 947.

With regard to Denton and Kahler's issuance of praecipes for subpoenas upon Creighton University, there has been no constitutional violation because neither of these activities resulted in any records being released.  Without a release of records, Young's privacy was not invaded, nor was he subject to an illegal seizure.  No § 1983 claim may be maintained in the absence of injury and therefore his claims based on this conduct will be dismissed.

-9-

With regard to the search warrant, even if it is
assumed that a constitutional violation occurred,[1] the contours
of that right are not sufficiently clear that a reasonable
prosecutor would understand that he or she was violating Young's
rights.  It is certainly true that a prosecutor would be aware of
the existence of the constitutional rights of privacy and to be
free from unreasonable seizures.  However, general statements of
those rights are not enough to make a reasonable official
understand that the behavior here violates them.  "The Supreme
Court has clearly stated that in establishing qualified immunity,
the test must be applied at a level of specificity that
approximates the actual circumstances of the case."  *Engleman*,
546 F.3d at 949 n.4 (citing *Anderson v. Creighton*, 483 U.S. 635,
639-40 (1987)).  It is not a clearly established right, for
example, that a prosecutor may not seek records from third
parties.  The district court of Douglas County, Nebraska's order
quashing the defendants' subpoena (Filing No. 177-9) is of no
help to Young here, because it does not foreclose further efforts
by the defendants to discover the records.  (*See id.*, at 5.)
That order therefore did not, as Young urges, put Denton and
Kahler on notice of the illegality of obtaining the records.
Viewing the record in the light most favorable to Young, after
receiving the order quashing their subpoena of the Creighton
records, they asked Circo to seek another subpoena.  This did not

_____

[1] Young does not address this question in detail, except to
say that the action "was utterly unconstitutional and amounted to
a seizure of Young [sic] property and an invasion of his rights
of privacy."  (Filing No. 176, at 27.)

violate clearly established constitutional or statutory rights.
Because Young is unable to show that his rights were violated, or
that any purported right has been stated with sufficient
particularity to be considered clearly established, the § 1983
claims against Denton and Kahler in their individual capacities
will be dismissed.

3. Douglas County

The § 1983 claims against Douglas County similarly
fail.  Douglas County could be found liable to Young if he is
able to demonstrate that a county policy or custom caused a
violation of his constitutional rights.  *See Monell v. Dep't of
Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978).
However, the Court finds no evidence in the record of any policy,
custom, rule, or practice that would subject Douglas County to
direct liability and Young makes no mention of any in his brief
in opposition to this motion.  (*See generally* Filing No. 176.)
Without evidence of such a policy, custom, rule, or practice, the
direct claim against Douglas County must be dismissed.

The absence of a constitutional injury to Young also
mandates the dismissal of his official capacity claims against
Denton and Kahler to the extent they were based upon the attempts
to subpoena the Creighton records.  The only remaining claim
against Douglas County is the official capacity claim against
Denton and Kahler for allegedly directing officer Circo to
attempt to get a search warrant for the records.  However,
officer Circo did not testify that Denton and Kahler directed her
to seek the warrant, as Young suggests.  Rather, Circo stated

-11-

that while she spoke with Denton and possibly with Kahler about

further investigation, and she recalls that Denton instructed her

to issue a subpoena, no one from the county attorney's office

specifically directed her to seek a search warrant, no one

reviewed her affidavit underlying the warrant, and she does not

know if anyone from the county attorney's office knew she was

proceeding with a search warrant to obtain the records.  (Filing

No. 177-13, at 75:4-75:6, 75:8-75:13, 76:23-77:4, 80:13-80:14,

80:21, 80:22-80:24, 81:18-:81:23, 82:24-82:2, 135:11-135:17.)

Young's reliance upon Circo's testimony as the basis for Denton

and Kahler's liability for the search warrant is thus misplaced.

Because Young cannot show that Denton or Kahler directed Circo to

get a search warrant for his records, the remaining § 1983 claim

against them will be dismissed.[2]

B. State Law Claims

           1. Individual Capacity Claims

           Regarding the state law claims against Denton and

Kahler, the Court finds that the activity complained of all

occurred within the course and scope of their employment and

therefore the claims against them in their individual capacities

should be dismissed.  Young argues essentially that there is a

question of fact regarding whether Denton and Kahler were acting

within the course and scope of their employment in issuing

subpoenas because Mr. Dornan stated in his declaration that at

---

    [2] The Court notes that the lack of evidence tying Denton and
Kahler to Circo's seeking of a search warrant is also an
alternative basis for the dismissal of the claims against them in
their individual capacities.

all times they acted within the scope but that certain statements in his deposition say otherwise.  However, Young's argument fails for two reasons.  First, a review of the record reveals no inconsistency in Dornan's statements.  Second, as generations of employers can attest, what is authorized by an employer can be quite different from what occurs in the course and scope of employment.  For example, no employer would authorize its employees to negligently injure someone.  Yet, regularly employers are held liable for the negligent acts of their employees under the master-servant rule.  Similarly, whether Denton and Kahler were acting with authorization or according to the policy of their superiors does not dispose of the question of whether they were acting in the course and scope of their employment.  Issuing subpoenas and providing direction to a police investigation leading up to trial may or may not be activities authorized by a prosecutor's superiors, but if they are activities in support of the prosecution, then they were undertaken in the course and scope of employment.  The state law claims against Denton and Kahler in their individual capacities must be dismissed.

2. Official Capacity Claims

Young has sued Denton and Kahler in both official and individual capacities.  A suit against a public official in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent . . . ."  *Dennes v. Dunning*, 719 N.W.2d 737, 742 (Neb. App. 2006).  Neb. Rev. Stat. § 13-902 states that "no political

-13-

subdivision . . . shall be liable for the torts of its officers,
agents, or employees, and that no suit shall be maintained
against such political subdivision or its officers, agents, or
employees on any tort claim except to the extent, and only to the
extent, provided by the Political Subdivisions Tort Claims Act."
The Act provides that "[e]xcept as otherwise provided . . . the
political subdivision shall be liable in the same manner and to
the same extent as a private individual under like circumstances
. . . ." § 13-908.  However, the Act does not apply to "[a]ny
claim arising out of . . . false arrest, false imprisonment,
malicious prosecution, [or] abuse of process . . . ."  § 13-
910(7).  Here, Young's complaint includes causes of action for
false imprisonment (second), malicious prosecution (third), and
abuse of process (fourth).  (*See* Filing No. 1.)  Denton and
Kahler are named as defendants in each of these claims.  However,
claims against them in their official capacities may not be
maintained because Nebraska has not waived its sovereign immunity
in this area, and as discussed above these claims may not be
maintained against these defendants in their individual
capacities because the Court finds that they were acting in the
course and scope of their employment.  Thus, none of the claims
against Denton and Kahler may be maintained and they should be
dismissed as party defendants from this action.

### V. CONCLUSION

        Young's individual capacity civil rights claims against
Denton and Kahler fail because they are entitled to qualified
immunity and his state law claims against them individually fail

because they acted within the scope of their employment.  Young's
official capacity claims against Denton and Kahler fail because
he is unable to show a constitutional injury caused by any action
of the two, and because Nebraska has not waived its sovereign
immunity with respect to the state law claims he asserts.
Young's civil rights claim against Douglas County fails for lack
of evidence of a policy, custom, rule, or practice harming him.
Accordingly,

        IT IS ORDERED that defendants Sandra Denton, Matthew
Kahler, and Douglas County, Nebraska's motion for summary
judgment (Filing No. 142) is granted; plaintiff's claims against
Denton, Kahler, and Douglas County are dismissed.

        DATED this 19th day of August, 2009.

                              BY THE COURT:

                              /s/ Lyle E. Strom
                              _____
                              LYLE E. STROM, Senior Judge
                              United States District Court