## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

DAVID J. YOUNG,

               Plaintiff,

vs.

CITY OF OMAHA, A political subdivision of
the State of Nebraska;
JENNA R. JOHNSON;
ANGIE CIRCO, individually and in her
official capacity;  ALAN REYES, individually
as in his official capacity;
JOHN DOE #1, real and true name unknown;
JANE DOE #1, real and true name unknown,

               Defendants.

CASE NO. 8:07-cv-00265

**INDEX OF EVIDENCE IN SUPPORT
OF JENNA JOHNSON'S MOTION
FOR SUMMARY JUDGMENT**

COMES NOW Defendant, Jenna R. Johnson, pursuant to NE Civ. R. 7.0.1(a)(2)(A) and (B), and lists the following items of evidence offered in support of her Motion for Summary Judgment:

## TABLE OF CONTENTS

**Index Pg.**

Exhibit A:    Complaint, *Young v. Dornan, et al*. No. 8:07-CV-00265 ........................ 1

Exhibit B:    Cunningham Report, Omaha Police Department, June 6, 2005 ............... 14

Exhibit C:    Creighton University Division of Student Services Incident Report, Andrew Perrone, June 5, 2005 ............................................................................. 16

Exhibit D:    Circo Report, Omaha Police Department, July 1, 2005 ............................ 19

Exhibit E:    Affidavit of Complaining Witness (Circo), *State v. Young*, Doc. 167 Page 952 ....................................................................................................... 28

Exhibit F:    Arrest Warrant, *State v. Young*, Doc. 167 Page 952 ................................. 32

**KLASS LAW FIRM,
L.L.P.**

Exhibit G:   Journal Entry and Order, First Appearance, *State v. Young*, Doc. 167
             Page 952 ........................................................................................................34

Exhibit H:   Request for Hearing, *State v. Young*, Doc. 167 Page 952 ..........................36

Exhibit I:    Journal Entry and Order, Request for Hearing, *State v. Young*,
             Doc. 167 Page 952 .........................................................................................38

Exhibit J:    Plea in Abatement, *State v. Young*, Doc. 167 Page 952 ............................40

Exhibit K:   Order (Defendant's Plea in Abatement), *State v. Young*, Doc. 167
             Page 952 ........................................................................................................44

Exhibit L:    Verdict Form, *State v. Young*, Doc. 167 Page 952 ....................................50

Exhibit M:   Excerpts from Trial Transcript, *State v. Young*, Doc. 167 Page 952 .........52

Exhibit N:   Excerpts from Deposition of Jenna Johnson, *Young v. Dornan, et al.*,
             May 14, 2009 .................................................................................................70

Exhibit O:   Excerpts from Deposition of Angie Circo, *Young v. Dornan, et al.*,
             July 17, 2009 .................................................................................................88

Exhibit P:   Excerpts from Deposition of Jenna Johnson, *State v. Young*,
             Doc. 167 Page 952, March 17, 2006 .............................................................96

Exhibit Q:   Excerpts from Deposition of Sandra Denton,
             *Young v. Dornan, et al.*, July 15, 2009 ....................................................100

Exhibit R:   Excerpts from Deposition of Matthew Kahler,
             *Young v. Dornan, et al.*, June 29, 2009 ....................................................105

Exhibit S:   Defendant Jenna R. Johnson's Answer and Jury Demand,
             January 4, 2008 ...........................................................................................110

Exhibit T:   Defendants City of Omaha and Angie Circo, Allen Reyes, and Teresa
             Negron's Answer and Request for Jury Trial. ...........................................117

Exhibit U:   Defendants Stuart J. Dornan, Sandra L. Denton, Matthew R. Kahler and
             Douglas County's Answer ...........................................................................122

Exhibit V:   Excerpts from Deposition of David Young, *Young v. Dornan, et al.*,
             May 19, 2008 ...............................................................................................127

Respectfully submitted,

Douglas L. Phillips
KLASS LAW FIRM, L.L.P.
Mayfair Center, Upper Level
4280 Sergeant Road, Suite 290
Sioux City, IA  51106
phillips@klasslaw.com
WWW.KLASSLAW.COM
712/252-1866
712/252-5822 fax

ATTORNEYS FOR DEFENDANT
JENNA JOHNSON

Copy to:

Kristin M. Lynch
Deputy County Attorney's Office
Room 909, Civic Center
1819 Farnam Street
Omaha, NE  68183

Alan M. Thelen
Assistance City Attorney
804 Omaha / Douglas Civic Center
1819 Farnam Street
Omaha, NE  68183

Thomas J. Young
2433 South 130th Circle
Omaha, NE  68144

CERTIFICATE OF SERVICE
The undersigned certifies that the foregoing
instrument was served upon all parties to the
above cause to each of the attorneys of record
herein at their respective addresses disclosed
on the pleading on ___September 14_____, 2009
By: _____ U.S. Mail            _____ facsimile
       _____ Hand delivered     _____ Overnight courier
       _____ Other _____     __X___ ECF

Signature _____

KLASS LAW FIRM,
L.L.P.

3

# Complaint
# *Young v. Dornan, et al.*
# U.S. District Court
# District of Nebraska
# No. 8:07-CV-00265

EXHIBIT
A

From: unknown    Page: 21/32    Date: 9/6/2007 12:24:13 PM

Case: 8:07-cv-00265   Document #: 1   Date Filed: 07/12/2007   Page 1 of 12

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DAVID J. YOUNG, | ) | Case No. |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | COMPLAINT AND DEMAND |
| STUART J. DORNAN, individually and in his official capacity; DOUGLAS COUNTY, NEBRASKA A political subdivision of the State of Nebraska; CITY OF OMAHA, A political subdivision of the State of Nebraska; JENNA R. JOHNSON; WILLIAM J. JOHNSON; BRIDGETTE JOHNSON; SANDRA L. DENTON, individually and in her official capacity; MATTHEW R. KAHLER, individually and in his official capacity; JENNIFER THOMPSON, individually and in her official capacity; ANGIE CIRCO, individually and in her official capacity; ALAN REYES, individually and in his official capacity; TERESA NEGRON, individually and in her official capacity; JOHN DOE #1, real and true name unknown; JANE DOE #1, real and true name unknown | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | FOR JURY TRIAL |
| Defendants. | ) | |

COMES NOW, the Plaintiff and for cause of action against the Defendants, states and

alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action at law to redress the deprivation under color of statute, ordinance,

regulation, custom, usage or practice of the rights, privileges and immunities secured to the

Plaintiff by the Constitution of the United States (42 U.S.C. §1983) and also arising under the

07/23/2007 10.02 FAX                                                    ☑ 005/015

Case: 8:07-cv-00265    Document #: 1    Date Filed: 07/12/2007    Page 2 of 12

laws of the statutes and Constitution of the State of Nebraska.

2.  Jurisdiction is invoked pursuant to 28 U.S.C. §§1331 and 1343(3).

3.  At all relevant times the Plaintiff was a citizen of the United States of America residing in the City of Omaha, Douglas County, Nebraska.

4.  That Defendant, Stuart J. Dornan (hereinafter referred to as Defendant "Dornan") at all relevant times was the duly appointed County Attorney for Douglas County, Nebraska and is sued in both an official and individual capacity; Douglas County (hereinafter referred to as Defendant "County") is a political subdivision of the State of Nebraska; the City of Omaha (hereinafter referred to as Defendant "City") is a political subdivision of the State of Nebraska; Jenna R. Johnson, (hereinafter referred to as Defendant "Jenna Johnson") at all times relevant was a resident of the City of Omaha, Douglas County, Nebraska; William J. Johnson, (hereinafter referred to as Defendant "Jim Johnson") at all times relevant was a resident of the City of Omaha, Douglas County, Nebraska and the father of Jenna R. Johnson; Bridgette Johnson, (hereinafter referred to as Defendant "Bridgette Johnson") at all times relevant was a resident of the City of Omaha, Douglas County, Nebraska and the mother of Jenna R. Johnson; at all relevant times, Sandra L. Denton (hereinafter referred to as Defendant "Denton") was employed as an attorney in the office of the Douglas County Attorney and is sued in both an official and individual capacity; at all relevant times, Matthew R. Kahler (hereinafter referred to as Defendant "Kahler") was employed as an attorney in the office of the Douglas County Attorney and is sued in both an official and individual capacity; at all relevant times, Jennifer Thompson (hereinafter referred to as Defendant "Thompson") was employed in the office of the Douglas County Attorney and is sued in both an official and individual capacity; Angie Circo (hereinafter referred to as Defendant "Circo") was a duly appointed officer of the City of Omaha

2

Police Department and is sued in both an official and individual capacity; Alan Reyes (hereinafter referred to as Defendant "Reyes") was a duly appointed Sergeant employed by the City of Omaha Police Department and is sued in both an official and individual capacity; Teresa Negron (hereinafter referred to as Defendant "Negron") was a duly appointed officer of the City of Omaha Police Department and is sued in both an official and individual capacity; John Doe #1, real and true name unknown and Jane Doe #1, real and true name unknown are named as party Defendants for reason that there may have been other individuals whose conduct violated Plaintiff's rights or are responsible under the laws and statutes of the State of Nebraska for wrongs committed against the Plaintiff.

5. As to all individuals sued in their official and individual capacities, the Plaintiff is not knowledgeable as to whether each such Defendant was, at all times, acting within the course and scope of such Defendant's employment.

### PRELIMINARY ALLEGATIONS

6. On the evening of Saturday, June 4, 2005 and the morning of Sunday, June 5, 2005 Plaintiff, a Creighton University student, was at Davis Hall, Creighton University, in Unit #131 in the company of two other University of Creighton students and Defendant Jenna Johnson. Defendant Jenna Johnson and Plaintiff were together in one of the bedrooms of the unit for several hours until approximately 6:30 a.m. at which time Plaintiff left the premises.

7. Defendant Jenna Johnson, at approximately 12:50 p.m. on June 5, 2005, reported to Creighton University officials/employees that Plaintiff had removed his pants and began taking off her pants as well. Defendant Jenna Johnson further reported that she did not believe Plaintiff attempted to force intercourse or that he ever penetrated her.

8. Defendant Jenna Johnson on the evening of June 5, 2005 called the Omaha Police

3

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

From: unknown    Page: 24/32    Date: 9/6/2007 12:24:14 PM
Case: 8:07-cv-00265-LES-TDT    Document #: 213    Date Filed: 09/14/09    Page 8 of 140

07/23/2007 10.02 FAX                                                        007/015

Department and left a message that she would like to report an "attempted rape".

9. On the morning of June 6, 2005 an officer of the Omaha Police Department met with Defendant Jenna Johnson and said Defendant reported a sexual assault with penetration claiming she was an unwilling participant and denying any consensual sexual conduct.

10. On Monday, June 20, 2005 Defendant Circo and Defendant Jenna Johnson placed a telephone call to Plaintiff to record his statements on tape. The tape recording of said telephone conference was checked into the evidence property unit of the Omaha Police Department by Defendant Circo in early July, 2005. The tape recording has been tampered with by erasing exculpatory statements.

11. On Wednesday, June 22, 2005 Defendant Circo and Defendant Jenna Johnson conversed by telephone and Defendant Jenna Johnson admitted to performing oral sex on Plaintiff and other consensual sexual conduct. Some hours later, both such Defendants met and Defendant Jenna Johnson then was prompted to give false testimony and denied performing oral sex on Plaintiff and engaging in other consensual sexual conduct. Defendant Jenna Johnson, to the knowledge of the Plaintiff, admitted to performing oral sex on the Plaintiff and engaging in extensive consensual sexual conduct, under oath, on or about March 17, 2006.

12. On Wednesday, July 26, 2005 the Defendant Reyes interviewed Plaintiff at the Omaha Police Department headquarters and advised Plaintiff that the police had Defendant Jenna Johnson's tampon with Plaintiff's DNA on it and requested that he submit a sample for DNA testing. Plaintiff agreed to provide the sample, signed an authorization and a sample was provided for DNA testing on that date. To date, Plaintiff's DNA has not been destroyed as required by law resulting in a continuing seizure of his person or property.

13. On Thursday, August 11, 2005 Defendant Circo prepared a felony complaint based

4

upon some of the statements made by the Defendant Jenna Johnson. Defendant Circo signed the felony complaint on August 18, 2005 and an arrest warrant was signed for first degree sexual assault on Friday, August 19, 2005 notwithstanding the lack of probable cause.

14. On Wednesday, August 24, 2005, on the first day of classes at Creighton University, at approximately 6:00 p.m. Plaintiff, while walking to one of his classes with one of his professors, was arrested by Defendant Circo and another Omaha police officer.

15. On the evening of August 24, 2005 information was received that the criminal charges against Plaintiff were being filed due to a "higher up" at the Omaha World Herald. Defendant Jenna Johnson's father was employed by the Omaha World Herald at the time, but the identity of the "higher up" is as yet unknown to the Plaintiff.

16. At all relevant times the Defendants Jenna Johnson, Jim Johnson and Bridgette Johnson were represented by their attorney, Michael Cox who was associated with the firm of Koley Jessen. Michael Cox also represented the Omaha World Herald and a local television station, KETV Channel 7.

17. On or about August 24, 2005 Defendant Negron disclosed information from the Omaha Police Department's supplement reports to unidentified person(s) and such information was the subject of news reports on KETV Channel 7 and its website. Such information was not available or provided to the Plaintiff.

18. On March 6, 2006 Defendant Denton signed and filed a praecipe for subpoena to be issued to the Keeper of Records at Creighton University for Plaintiff's records with a subpoena being issued on the same date. On April 27, 2006 the Douglas County District Court granted Plaintiff's Motion to Quash the subpoena issued on March 6, 2006.

5

19. On June 30, 2006 Defendant Kahler signed and filed a praecipe for subpoena to be issued to the Keeper of Records at Creighton University again requesting certain of Plaintiff's records with the subpoena being issued on July 5, 2006. Plaintiff's criminal trial was scheduled for July 17, 2006. On July 14, 2006 Plaintiff filed a Motion to Quash the subpoena issued on July 5, 2006 with a hearing, set by the Court, for July 21, 2006.

20. On July 12, 2006 Defendant Circo executed a false affidavit and application for the issuance of a no-knock search warrant on Creighton University for Plaintiff's records and submitted these to a Judge of the Douglas County Court. A search warrant was signed by a Douglas County Court Judge on this date and thereafter Creighton University provided copies of Plaintiff's records by delivering a copy of same to the office of the Douglas County Attorney. No proper return and inventory was made as required by law.

21. Plaintiff's criminal trial was concluded on July 24, 2006 resulting in a finding, verdict and judgment of not guilty.

22. On or about Sunday, July 30, 2006, in the early morning hours, an Omaha Police Officer stopped the Plaintiff while he was driving his vehicle and detained and arrested him (citation issued) all as a consequence of his being targeted for arrest by the Defendants, and each of them, after the finding of not guilty.

23. Plaintiff, in 2006, applied for admission to Creighton University Law School and, although qualified, was not admitted. The Defendant Jennmifer Thompson, during July, 2006, advised the Dean of Creighton University Law School that the Plaintiff should be denied admission to the law school and that he was unfit to engage in the practice of law.

24. On information and belief, the Defendants Jenna Johnson, Jim Johnson, Bridgette Johnson, and a person or persons unknown by influence, promise or coercion caused, prompted

6

or induced the above set forth actions and conduct of the other Defendants to occur.

25.  On information and belief, the Defendant Dornan in response to influence, promise or coercion and in the hope of receiving endorsements with regard to his bid for election as Douglas County Attorney acted with malice and in bad faith in pursuing criminal charges against the Plaintiff and in causing or acting in concert to cause the above-referenced violations of Plaintiff's rights and Nebraska law.

26.  The Defendants, and each of them, on information or belief, were engaged in a conspiracy to violate Plaintiff's constitutional rights, privileges and immunities and Nebraska law by seizure of his person and property, interfering with his personal liberty, prosecuting him in bad faith and without probable cause, ruining his reputation, blocking his entry into Creighton Law School, holding him up to ridicule and otherwise and in all respects humiliating him and destroying his present and future life.

27.  To the extent necessary, Plaintiff has fully complied with the provisions of Nebraska's Political Subdivisions Tort Claims Act §13-901 et seq.  Claims having been filed with the City and County on January 4, 2007 and duly denied by the City by letter dated May 11, 2007 and by the County by letter dated May 20, 2007.

### FIRST CAUSE OF ACTION

#### (42 U.S. §1983)

28.  The Plaintiff incorporates, as if fully set forth herein, the allegations contained in paragraphs 1. through 27. set forth hereinabove.

29.  The Defendant County had, at all times relevant, a policy, custom, rule or practice of filing criminal charges based upon the influence of third parties; tampering with evidence and directing Omaha Police Officers to tamper with evidence; wrongful seizure of persons and such

7

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

person's property; targeting individuals for arrest; conducting illegal searches; providing false information to prospective witnesses in criminal matters; distributing wrongfully obtained property (records) which violated rights of privacy; and, conducting investigatory discovery in criminal matters contrary to law.

30. The Defendant City had, at all times relevant, a policy, custom, rule or practice of following directives given by the Douglas County Attorney's Office, tampering with evidence; wrongful seizure of persons and such person's property; targeting individuals for arrest; conducting illegal searches; providing false information to prospective witnesses in criminal matters; distributing wrongfully obtained property (records) which violated rights of privacy; causing illegal search warrants to be issued; and, failing to adhere to State law regarding the destruction of DNA and search warrants.

31. At all times relevant, Plaintiff's constitutional rights were clearly established and all Defendants employed by the Defendants County and City are sued not only in their official capacity but also individually.

32. All of the Defendants, by reason of agreement, conduct or concerted action while acting under color of state law have sought to and have denied Plaintiff of his constitutional rights, privileges and immunities secured by the United States Constitution all in violation of 42 U.S.C. §1983.

WHEREFORE Plaintiff prays that judgment be entered against the Defendants, and each of them, as follows:

a. General damages for the violation of Plaintiff's constitutional rights;

b. Damages for Plaintiff's emotional distress, mental anguish, humiliation and inconvenience;

8

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

c.  Damages for Plaintiff's past and future loss of earnings;

d.  Punitive damages as allowed against the individual Defendants;

e.  An award of reasonable attorney fees and costs; and,

f.  Such other and further relief as the Court deems just and equitable in the premises.

## SECOND CAUSE OF ACTION

### (STATE CLAIM - FALSE IMPRISONMENT)

33.  The Plaintiff incorporates, as if fully set forth herein, the allegations contained in paragraphs 1. through 27. set forth hereinabove.

34.  The Defendants Jenna Johnson, Jim Johnson, Bridgette Johnson, Dornan, Denton, Kahler, Thompson, Circo, Reyes, Negron, and person or persons unknown, have intentionally interfered with the Plaintiff's personal liberty and subjected him to unlawful restraint of movement and have, therefore, falsely imprisoned the Plaintiff.

35.  The Defendants Jenna Johnson, Jim Johnson, Bridgette Johnson, and person or persons unknown by affirmative direction, persuasion or request procured Plaintiff's unlawful arrests and detention.

36.  By reason of the above, the Plaintiff has been subjected to mental anguish, distress, humiliation and disgrace and was compelled to retain counsel for his defense. Plaintiff expended the fair and reasonable amount of TWENTY FIVE THOUSAND DOLLARS ($25,000.00) with regard to his defense of the charges wrongfully filed against him.

WHEREFORE, Plaintiff prays that he be awarded a judgment against the individual defendants named in this cause of action for his special damages in the amount of TWENTY FIVE THOUSAND DOLLARS ($25,000.00) and general damages together with his costs expended herein.

9

07/23/2007 10.03 FAX                                                              ☑013/015

### THIRD CAUSE OF ACTION

#### (STATE CLAIM - MALICIOUS PROSECUTION)

37.    The Plaintiff incorporates, as if fully set forth herein, the allegations contained in paragraphs 1, through 27, set forth hereinabove.

38.    The Defendants Jenna Johnson, Jim Johnson, Bridgette Johnson, and a person or persons unknown, acting in concert or agreement with the Defendants Dornan, Denton, Kahler, Thompson, Circo, Reyes and Negron caused criminal charges to be filed against the Plaintiff which charges were resolved in favor of the Plaintiff.

39.    That, as set forth hereinabove, there was an absence of probable cause for the bringing of such charges. The Defendant Dornan, in the hopes of currying favor and receiving political endorsements with regard to his bid for election as Douglas County Attorney, did not act in good faith but, in fact, acted with malice in causing criminal charges to be filed against the Plaintiff.

40.   Plaintiff was required to retain counsel to defend himself and expended the fair and reasonable amount of TWENTY FIVE THOUSAND DOLLARS ($25,000.00) in doing same. Plaintiff was subjected to severe mental anguish and distress, humiliation and disgrace and has been additionally damaged with regard to loss of earnings to date and in the future.

WHEREFORE, Plaintiff prays that judgment be entered against the individual defendants named in this cause of action, and each of them, for his special and general damages and that he recover his costs expended herein.

10

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

### FOURTH CAUSE OF ACTION

### (STATE CLAIM - ABUSE OF PROCESS)

41. The Plaintiff incorporates, as if fully set forth herein, the allegations contained in paragraphs 1, through 27. set forth hereinabove.

42. The Defendants Jenna Johnson, Jim Johnson, Bridgette Johnson, and a person or persons unknown, acting in concert or agreement with the Defendants Dotman, Denton, Kahler, Thompson, Circo, Reyes and Negron for the reasons set forth in paragraphs 24, 25 and 26 abused the judicial process by causing illegal search warrants to be issued; the issuance of subpoenas without authority of law in contravention of a court order; illegal seizure of Plaintiff's person and property and tampering with evidence inclusive of having same submitted during Plaintiff's criminal trial.

43. By reason of the above, Plaintiff has been subjected to mental anguish, distress, humiliation and disgrace and was compelled to retain counsel for his defense. Plaintiff expended the fair and reasonable amount of TWENTY FIVE THOUSAND DOLLARS ($25,000.00) with regard to his defense in defending the above-referenced actions of the Defendants.

WHEREFORE, Plaintiff prays that he be awarded a judgment against the individual defendants named in this cause of action for his special damages in the amount of TWENTY FIVE THOUSAND DOLLARS ($25,000.00) and general damages together with costs expended herein.

11

Case: 8:07-cv-00265   Document #: 1   Date Filed: 07/13/2007   Page 12 of 12

DAVID J. YOUNG, Plaintiff.

By: /s/ *Thomas J. Young*
     Thomas J. Young   #14645
     2433 South 130th Circle
     Omaha, NE 68144
     Tel: (402) 330-3700

ATTORNEY FOR PLAINTIFF

## REQUEST FOR PLACE OF TRIAL AND DEMAND FOR JURY TRIAL

The Plaintiff herein requests a trial by jury be had in Omaha, Nebraska.

/s/ *Thomas J. Young*
Thomas J. Young

12

# Cunningham Report
# Omaha Police
# Department
# June 6, 2005

EXHIBIT

B



# OMAHA POLICE DEPARTMENT



COPIES MADE
**C-770**

Page No. 1

of 1 Pages

| ☐ CONTINUATION - CHECK ONE - SUPPLEMENTARY ☒ | RB No. 20413-F |
|---|---|

| Offense Sexual Assault | ☒ Victim   Suspect ☐ JOHNSON, Jenna R. | Address 660 J. E. George Blvd. |
|---|---|---|

| Day/Date/Time: Original Report MON / 06JUN05 / 0902hrs | Day/Date/Time: This Report MON / 06JUN05 / 0902hrs | |
|---|---|---|

On MON 06JUN05 at 0902hrs, R/O CUNNINGHAM, D. # 1757 received a radio call to 660 J. E. George Blvd for a report of a sexual assault. Upon arrival, R/O met with victim, JOHNSON, Jenna, R. JOHNSON stated that she went over to her friends, RYAN, Katie and PETERSON, Samantha's apartment last night. This apartment is located at 21st and Burt St (Davis Hall # 131) and is affiliated with Creighton University. PETERSON'S friend YOUNG, David was also over there. The group was drinking alcoholic beverages from approximately 2300hrs till 0200hrs. JOHNSON stated that she consumed one beer, a mixed strawberry daiquiri, a glass of champagne, and a shot of vodka. JOHNSON stated that YOUNG had more to drink than she did.

At approximately 0300hrs, JOHNSON and YOUNG went into the back bedroom, which is a spare. JOHNSON stated that she and YOUNG talked and "made out" on the bed. JOHNSON stated that before they started making out they discussed ground rules on how far it would go. The rules were kissing only and clothes had to stay on. YOUNG continually tried to go further than just kissing and JOHNSON kept telling him no. YOUNG would stop when JOHNSON told him no, but asked several times if she was sure that she didn't want to have sex. JOHNSON told YOUNG that she was sure and he then told her how big his penis is. YOUNG tried to fondle JOHNSON's vagina through her pajama pants and she pushed him off of the bed. At this point JOHNSON told YOUNG that she had enough and that she was done making out with him. JOHNSON told YOUNG to sleep on the couch. YOUNG told JOHNSON that he wanted to sleep in the bed with her. YOUNG got into the bed and they talked for ten to fifteen minutes. JOHNSON started to fall asleep and YOUNG kept asking if she was asleep. JOHNSON ignored YOUNG and eventually fell asleep. JOHNSON was lying on the left side of the bed, facing away from YOUNG, on her side. JOHNSON woke up to find her pants and underwear had been pulled down to about her mid thigh area. YOUNG had inserted one to two fingers into her vagina from behind. JOHNSON was having her menstrual cycle and this pushed her tampon inside her. JOHNSON yelled at YOUNG, "What the hell are you doing?" and jumped out of bed. YOUNG asked her what she meant and stated that they had been talking about this. JOHNSON told YOUNG, "No, this is rape." YOUNG began to apologize to JOHNSON. YOUNG then asked JOHNSON what he could do to make this up to her. JOHNSON made YOUNG leave by pushing him out of the apartment door and locking it. YOUNG tried to talk to JOHNSON through the door, but JOHNSON didn't want to talk to him. YOUNG came back to the apartment later and entered it. (YOUNG had borrowed PETERSON's key) YOUNG again apologized to JOHNSON. JOHNSON went into the back bedroom and locked the door. YOUNG eventually left.

At some time during this incident, RYAN woke up to the commotion. RYAN went to the back bedroom and spoke to JOHNSON. JOHNSON then called Creighton University's Campus Security. After speaking with security, JOHNSON called the police telephone response squad (TRS) and left a message. TRS called JOHNSON back and advised her that this was a sexual assault. TRS transferred JOHNSON to 911.

* JOHNSON had taken a shower prior to R/O's arrival so a sexual assault kit was not completed.

| Report Typed By | Date | Time | Signature Reporting Officer/Serial No. |
|---|---|---|---|
| Approved By: (Command Officer/Serial No.) ☐☐☐ Sml # 1165 | | | Signature Reporting Officer/Serial No. D. Cunningham   1757 |

OPD Form 200A (01/97)

# Creighton University Division of Student Services Incident Report Andrew Perrone June 5, 2005

EXHIBIT
C
_____



# Creighton
### U N I V E R S I T Y

DIVISION OF STUDENT SERVICES

Incident Number:

### INCIDENT REPORT

#### Type of Incident

| Alcohol | Drugs | Fireworks/Flame | Psychological |
|---|---|---|---|
| Assault | False Information | Harassment | Roommate Conflict |
| Conduct | Failure to Comply | Medical | Visitation |
| Concern for Student | Other (describe) | | |

Date of Incident: June 5, 2005
Time: between 3am & 6am
Location: Davis 131

Persons involved in the incident (do not list name of person completing this report)

| NAME | ADDRESS | PHONE | NET ID |
|---|---|---|---|
| David Young | Off-Campus CU | ? | ? |
| Jenna Johnson | UNL student | 402-319-4981 | |
| Katie Ryan | Davis 131 | 402-639-4993 | ker63313 |
| Samantha Peterson | Davis 131 | ? | smp79042 |

Description of the incident (be clear and specific)

At 12:50pm, Resident Director On Duty, Andrew Perrone, received a call from the Department of Public Safety. It was explained to RDOD Perrone that Katie Ryan, a Davis Square resident, had called to report a sexual assault that had occurred in her apartment the night before. Katie had requested that a Public Safety officer and the RDOD come to her apartment to take her report. RDOD Perrone was met at Davis 131 by DPS Officer Martins. Katie informed RDOD Perrone that she had had a small gathering of friends in her apartment the night before (6/4/05). The people in her apartment included herself, Samantha Peterson (her roommate), David Young (an off campus CU student), and Jenna Johnson (a friend of Katie's and a UNL student). Towards the end of the evening, when people were getting ready to go to sleep, Jenna began making the bed in an empty bedroom in the apartment. It was believed that David was going to sleep on the couch. David and Jenna were then alone in the spare bedroom. Jenna described their behavior as "just making out." However, Jenna also stated that David became aggressive at times. David would put his hands on Jenna's body in places that she was not comfortable. At these times, Jenna firmly stated that she did not want their actions to go any further. Jenna stated that David became aggressive on several occasions but always stopped when she asked him to or when she said "no." Jenna remembers asking David, "Why do you keep trying?" To which David responded, "I'm very persistent. I keep going until I get what I want."

Jenna reports that, after stopping David's advances on more than two occasions, she told him to leave the bedroom and go to sleep on the couch. David said that he would not try anything further and he would just sleep in the bed with Jenna. Jenna reports that she then attempted to act as though she was asleep so that David would stop his advances. After approximately 10-15 minutes of attempting to feign sleeping, Jenna reports that David then took off his own pants and

P0002

**Index Pg. -17-**



### DIVISION OF STUDENT SERVICES

Incident Number:

began to take off Jenna's pants as well. As David removed her pants, Jenna asserted that she did not want this to go any further and she pushed David from the bedroom. Jenna reports that, while she did not believe that David attempted to force intercourse with her, she did feel extremely uncomfortable with David being so close to her with his pants off and having him remove her pants. She does not believe that he ever penetrated her or ever successfully forced intercourse. After Jenna had pushed David out of the bedroom, she watched him leave the apartment, exit Davis Square, and proceed to his car. However, approximately 5 minutes later, David returned to the apartment. It is believed that he had taken the student ID card of Samantha Peterson and had used it to return to the apartment. David returned to the apartment because he wanted to apologize to Jenna for his actions. Jenna told him that she simply wanted him to leave.

This report was taken from Katie Ryan and Jenna Johnson on the afternoon of Sunday, June 5, 2005. Katie had contacted DPS and had called Jenna to ask her to return to campus in order to file a report. Office Martins explained DPS' procedures and informed Jenna that Officer Desiree Shipman will be in touch with Jenna in order to continue the investigation. RDOD Perrone explained to Jenna how the University will proceed with the investigation as well as who will be involved in any further discussions. Jenna was primarily concerned with making sure that a similar incident does not happen to another female, but she was also concerned for her level of confidentiality in this situation. Officer Martins explained that DPS will consider this incident with the highest level of confidentiality that they can. Jenna was told that she will receive a call on Monday morning from Officer Shipman and Tanya Winegard's office concerning further investigation.

| Andrew Perrone | McGloin Resident Director |
|---|---|
| Signature of Reporting Staff Member | Title |

| | |
|---|---|
| Signature of Supervisor | Title |

P0003

# Circo Report
# Omaha Police
# Department
# July 1, 2005

EXHIBIT
D

COPIES MADE
C804

**ORIGINAL**

OMAHA POLICE DEPARTMENT
SUPPLEMENTARY REPORT

NO COPIES
NEEDED

Page 1 of 8

| | RB# | **F-20413 AA** |
|---|---|---|

| OFFENSE: | VICTIM: | ADDRESS: |
|---|---|---|
| **SEXUAL ASSAULT** | **JOHNSON, Jenna R.** | **660 JE GEORGE BLVD.**<br>**OMAHA NE   68132** |

| ORIGINAL REPORT: | THIS REPORT: |
|---|---|
| **MON 06 JUNE '06   0902 HRS** | **FRI 01 JULY '05   1930 HRS** |

| TYPED BY: | REPORTING OFFICERS: |
|---|---|
| **PARK, G. C804 / TUES 12 JULY '05** | **CIRCO, Angie #1546** |

**SYNOPSIS:**

This supplementary report will be in reference to a sexual assault report
made by victim JOHNSON and the interview conducted by Reporting Officer
with JOHNSON.  This report will also detail the one party consent phone
call between victim JOHNSON and suspect YOUNG, David.

**PERSONS AND PLACES MENTIONED IN THIS REPORT:**

**VICTIM:**
JOHNSON, Jenna
Address:                          6601 JE George Blvd
                                  Omaha, NE  68132
Telephone:                        561-6892
Work Telephone:                   444-1135
White female
DOB:  02/06/85

**SUSPECT:**
YOUNG, David J.
Address:                          12920 Lafayette
                                  Omaha, NE
Telephone:                        968-8012
White male
DOB:  10/26/84
6'/170 lbs.
Black hair/brown eyes
Data: 2883618

**WITNESS 1:**
RYAN, Katie
Address:                          Davis Hall #131
                                  21st & Burt Street
                                  Omaha, NE
Telephone:                        639-4993
DOB:  10/20/84

COPIES MADE
C804

OMAHA POLICE DEPARTMENT
**ORIGINAL**
**SUPPLEMENTARY REPORT**

Page 2 of 8

| | RB# | F-20413 AA |
|---|---|---|

| OFFENSE:<br>**SEXUAL ASSAULT** | VICTIM:<br>**JOHNSON, Jenna R.** | ADDRESS:<br>**660 JE GEORGE BLVD.**<br>**OMAHA NE   68132** |
|---|---|---|
| ORIGINAL REPORT:<br>**MON 06 JUNE '06   0902 HRS** | | THIS REPORT:<br>**FRI 01 JULY '05   1930 HRS** |
| TYPED BY:<br>**PARK, G. C804 / TUES 12 JULY '05** | | REPORTING OFFICERS:<br>**CIRCO, Angie #1546** |

**WITNESS 2:**
PETERSON, Samantha
Address:                        Davis Hall #131
                               21st & Burt Street
                               Omaha, NE
Telephone:                     720-0508

**EVIDENCE HELD IN THIS INVESTIGATION:**
1.   Video tape of victim interview
2.   Audio tape of victim interview
3.   Audio taped recording of one party consent phone call between
     JOHNSON and YOUNG

**OMAHA POLICE OFFICERS MENTIONED IN THIS REPORT:**

Reporting Officer CIRCO, Angie #1546
"C" Shift - Child Victim Sexual Assault Unit
444-4129

**DETAILS OF INVESTIGATION:**

On Monday, 06 June 2005 at 0902 hours, cruiser officers responded to a
radio call at 660 JE George Blvd. which is the residence of victim
JOHNSON, Jenna.  JOHNSON reported that on Saturday, 04 June 2005, she was
visiting a friend at 21st & Burt Street, a Creighton University campus
affiliation, Davis Hall #131.  JOHNSON stated that this is the home of
RYAN, Katie and PETERSON, Samantha.  JOHNSON stated that PETERSON'S
friend, YOUNG, David, was also present at RYAN and PETERSON'S residence.
JOHNSON stated that this was the first time she had met suspect YOUNG.
JOHNSON advised that she, YOUNG, RYAN, and PETERSON were drinking
alcoholic beverages from approximately 2300 hours on Saturday, 04 June
2005 until 0200 hours on Sunday, 05 June 2005.

JOHNSON reported that at approximately 0300 hours on Sunday, 05 June
2005, she and YOUNG "made out" after discussing ground rules that JOHNSON
and YOUNG would kiss and that clothes would stay on both parties.

COPIES MADE

C804

ORIGINAL

OMAHA POLICE DEPARTMENT.
SUPPLEMENTARY REPORT                    Page 3 of 8

| | | RB# | F-20413 AA |
|---|---|---|---|

| OFFENSE: | VICTIM: | ADDRESS: |
|---|---|---|
| SEXUAL ASSAULT | JOHNSON, Jenna R. | 660 JE GEORGE BLVD. OMAHA NE 68132 |

| ORIGINAL REPORT: | THIS REPORT: |
|---|---|
| MON 06 JUNE '06 0902 HRS | FRI 01 JULY '05 1930 HRS |

| TYPED BY: | REPORTING OFFICERS: |
|---|---|
| PARK, G. C804 / TUES 12 JULY '05 | CIRCO, Angie #1546 |

JOHNSON stated that YOUNG continually tried to go further then just kissing and that JOHNSON kept telling him "No". JOHNSON stated that YOUNG would stop when JOHNSON told him no but asked several times if she was sure that she didn't want to have sex with him. JOHNSON told YOUNG that she was sure and he then told her how big his penis was. JOHNSON stated that YOUNG tried to fondle her vagina through her pajama pants but she pushed him off the bed. JOHNSON stated that she told YOUNG that she had enough and that she was done making out with him and told him to go sleep on the couch. YOUNG told JOHNSON that he wanted to sleep in the bed with her and got into the bed where they talked for ten to fifteen minutes. JOHNSON stated that she started to fall asleep and YOUNG kept asking her if she was asleep but she ignored him. JOHNSON stated that she eventually fell asleep. JOHNSON stated that she was laying on her left side facing away from YOUNG on her side. JOHNSON woke up to find her pants and underwear had been pulled down to about her mid-thigh area. JOHNSON stated that YOUNG had inserted one to two fingers inside her vagina from behind. JOHNSON stated that she was having her menstrual cycle and that YOUNG had pushed her tampon inside her. JOHNSON stated that she yelled at YOUNG, "What the hell are you doing?" and jumped out of bed. YOUNG told JOHNSON that they had been talking about doing this and asked her what she meant. JOHNSON told YOUNG, "No, this is rape". YOUNG began to apologize to JOHNSON and asked what he could do to make this up to her. JOHNSON eventually left the apartment, returning a short time later and apologized again to JOHNSON.

**INTERVIEW WITH VICTIM - Jenna JOHNSON:**

On Thursday, 16 June 2005 at 1415 hours, Reporting Officer made contact with JOHNSON at Project Harmony where an interview was conducted. JOHNSON advised that the incident that she reported occurred on Saturday, 04 June 2005 into Sunday, 05 June 2005. JOHNSON gave Reporting Officer the following timeframe.

On Saturday, 04 June 2005 at 2030 hours, JOHNSON stated that she was visiting her friend Katie RYAN who she has known since high school and RYAN'S friend Samantha PETERSON. JOHNSON stated that YOUNG, David is a friend of PETERSON'S.

COPIES MADE
C804

OMAHA POLICE DEPARTMENT
SUPPLEMENTARY REPORT ~~ORIGINAL~~

Page 4 of 8

| | | RB# | F-20413 AA |
|---|---|---|---|

| OFFENSE: | VICTIM: | ADDRESS: |
|---|---|---|
| SEXUAL ASSAULT | JOHNSON, Jenna R. | 660 JE GEORGE BLVD. OMAHA NE  68132 |

| ORIGINAL REPORT: | THIS REPORT: |
|---|---|
| MON 06 JUNE '06  0902 HRS | FRI 01 JULY '05  1930 HRS |

| TYPED BY: | REPORTING OFFICERS: |
|---|---|
| PARK, G. C804 / TUES 12 JULY '05 | CIRCO, Angie #1546 |

At 2120 hours, JOHNSON stated that she left the apartment with RYAN, PETERSON and YOUNG in YOUNG'S car which she described as a blue newer model boxy four door with leather seats.  JOHNSON stated that she and RYAN were in the back seat while PETERSON and YOUNG were in the front seat.  JOHNSON stated that they were going to a surprise birthday party at 108th & Maple Street.

At 2230 hours, JOHNSON stated that they left the party and YOUNG offered to stop by his parent's to get alcohol.  JOHNSON advised that while at the party, she did not drink any alcohol.

At 2240 hours, JOHNSON stated that they went to YOUNG'S residence which is in the area of 120th to 132nd & Blondo Street.  JOHNSON stated that she, RYAN, and PETERSON stayed in the car while YOUNG went inside. JOHNSON stated that YOUNG returned with a 24 pack of Budweiser cans and eight bottles of alcohol that were not completely full.  JOHNSON also stated that YOUNG had mentioned that both of his parents are attorneys and if he gets in trouble, they just make a phone call and he gets out of it.

At 2300 hours, JOHNSON stated they returned back to RYAN and PETERSON'S apartment.

At 2300 to 0200 hours, JOHNSON stated that she, RYAN, PETERSON, and YOUNG drank and hung out while watching Risky Business.

At 0200 hours on Sunday, 05 June 2005, JOHNSON stated that they had all stopped drinking and she began drinking water.

At 0230 hours to 0300 hours, JOHNSON stated that every one had started making sleeping arrangements.  JOHNSON stated that YOUNG stated he was too drunk and didn't want to drive home.  JOHNSON stated that arrangements were made for YOUNG to sleep on the couch which is in the front room of the apartment.  JOHNSON stated that she was going to sleep in the back bedroom of the apartment and began putting sheets on the bed when YOUNG walked in and turned off the light.  JOHNSON stated that YOUNG began kissing her neck and eventually YOUNG and JOHNSON began kissing. JOHNSON stated that in between kissing, that JOHNSON told YOUNG that they were only going to kiss.  JOHNSON stated that YOUNG told her, "I just

# ORIGINAL

COPIES MADE
C804

**OMAHA POLICE DEPARTMENT**
**SUPPLEMENTARY REPORT**

Page 5 of 8

RB#   **F-20413 AA**

| OFFENSE:<br>**SEXUAL ASSAULT** | VICTIM:<br>**JOHNSON, Jenna R.** | ADDRESS:<br>**660 JE GEORGE BLVD.**<br>**OMAHA NE   68132** |
|---|---|---|
| ORIGINAL REPORT:<br>**MON 06 JUNE '06  0902 HRS** | | THIS REPORT:<br>**FRI 01 JULY '05   1930 HRS** |
| TYPED BY:<br>**PARK, G. C804 / TUES 12 JULY '05** | | REPORTING OFFICERS:<br>**CIRCO, Angie #1546** |

want to be with you" and they continued to make out.  JOHNSON stated that they would kiss for awhile, then lay and talk on the bed.  JOHNSON stated that she asked YOUNG about his friendship with PETERSON.  JOHNSON stated that YOUNG talked about how much money his family had.

JOHNSON stated that there was "heavy kissing" and that YOUNG tried to take off her shirt but she told him she wanted to leave clothes on and YOUNG stopped and apologized.  JOHNSON stated that one time YOUNG was laying on top of her and he touched her vagina on the outside of her pajamas pants.  JOHNSON stated that she was shocked and immediately pushed YOUNG off causing him to fall on the floor.  JOHNSON stated that she thought YOUNG was mad about it because he stated that it had hurt.  JOHNSON stated that she told YOUNG that she was tired and suggested that he go to the couch because she wanted to go to bed.  JOHNSON stated that YOUNG said the bed was more comfortable and he wasn't making any attempt to leave.  JOHNSON stated that she then laid down on the bed and waited for YOUNG to get the message.  JOHNSON stated that she laid on the bed ignoring him for approximately fifteen minutes while he continued to try to get her to talk again.  JOHNSON stated that she was lying on her side with her back to YOUNG.  JOHNSON stated that YOUNG was stroking her head and back running his hands through her hair stating, "I'll just lay here until you fall asleep".  JOHNSON stated that there was approximately one foot in-between her and YOUNG.  JOHNSON stated that she was on the edge of the bed and YOUNG was up against the wall, both laying on the bed.  JOHNSON stated that she fell asleep for what she believed to be approximately fifteen to twenty minutes and when she woke up, she realized that YOUNG had pulled her pajamas pants down to her mid thigh.  JOHNSON stated that her legs were sprawled apart and YOUNG was behind her holding her vagina open with one hand and inserting his fingers from his other hand into her vagina.  JOHNSON stated that she had a tampon in because she was having her period and that YOUNG was pushing the tampon up.  JOHNSON also stated that she could see that YOUNG'S pants were opened and unzipped and could see his erect penis.

JOHNSON stated that she asked YOUNG, "What the hell are you doing?"  YOUNG replied, "What are you talking about?  We've been up talking".  JOHNSON stated that she told YOUNG, "We ended that an hour ago.  Were you going to rape me?"  JOHNSON stated that YOUNG said, "Oh my God, you're right.  I can't believe I was going to do this to you.  You must hate me.

COPIES MADE   OMAHA ~~POLICE DEPARTMENT~~ ORIGINAL
C804          SUPPLEMENTARY REPORT          Page 6 of 8

| | | RB# | F-20413 AA |
|---|---|---|---|

| OFFENSE:<br>SEXUAL ASSAULT | VICTIM:<br>JOHNSON, Jenna R. | ADDRESS:<br>660 JE GEORGE BLVD.<br>OMAHA NE   68132 |
|---|---|---|
| ORIGINAL REPORT:<br>MON 06 JUNE '06   0902 HRS | | THIS REPORT:<br>FRI 01 JULY '05   1930 HRS |
| TYPED BY:<br>PARK, G. C804 / TUES 12 JULY '05 | | REPORTING OFFICERS:<br>CIRCO, Angie #1546 |

You're going to hate me for the rest of your life.  I am so sorry.  I'm drunk, I haven't been with anyone since my girlfriend".  JOHNSON stated that she heard YOUNG in the kitchen and then saw him leave, so she went into the bathroom and when she came out, saw that he was back inside the apartment.  JOHNSON stated that YOUNG said, "I'm so sorry, what can I do to make this up to you?"

JOHNSON stated that she went into RYAN'S bedroom and told her about what happened.

JOHNSON described YOUNG as a white male, twenty years of age, approximately 6'1", average to muscular build, dark eyes, and a Creighton pre-law student.

JOHNSON advised Reporting Officer that she never had vaginal intercourse with anyone.

JOHNSON also told Reporting Officer that when she and YOUNG were kissing, he told her that they could take this farther but she told him that she didn't want to and that she was on her period.  JOHNSON also stated that YOUNG said, "I could really go for a blow job right now".  JOHNSON also stated that YOUNG told her that he had an eight inch cock and other girls have enjoyed it.  The interview with JOHNSON ended at 1540 hours.

### ONE PARTY CONSENT PHONE CALL BETWEEN JOHNSON AND YOUNG:

On Monday, 20 June 2005 at 1436 hours, JOHNSON agreed to do a taped one party consent call to YOUNG.  During the conversation, YOUNG admitted that he knew that JOHNSON was asleep and that she had a tampon in because he could feel it.  YOUNG also agreed that JOHNSON had said, "no" to having sex.  YOUNG stated that he was "a little drunk" and had been through a broken engagement recently, further stating that he was "kind of screwed up", but that "it's not an excuse".  JOHNSON asked YOUNG if he was going to have sex with her while she was sleeping and he replied, "No, there was not a plan".  JOHNSON asked YOUNG what YOUNG was going to do to her which YOUNG stated he didn't know.  JOHNSON asked YOUNG if he knew that she was sleeping and he replied, "Yeah".  JOHNSON told YOUNG that she had a tampon in and YOUNG said, "Yeah, I know.  That's why I

COPIES MADE
C804

OMAHA POLICE DEPARTMENT
SUPPLEMENTARY REPORT

ORIGINAL

Page 7 of 8

RB# | F-20413 AA

| OFFENSE:<br>SEXUAL ASSAULT | VICTIM:<br>JOHNSON, Jenna R. | ADDRESS:<br>660 JE GEORGE BLVD.<br>OMAHA NE   68132 |
| --- | --- | --- |
| ORIGINAL REPORT:<br>MON 06 JUNE '06   0902 HRS | | THIS REPORT:<br>FRI 01 JULY '05   1930 HRS |
| TYPED BY:<br>PARK, G. C804 / TUES 12 JULY '05 | | REPORTING OFFICERS:<br>CIRCO, Angie #1546 |

wasn't going to have sex with you". YOUNG told JOHNSON that every day, he wakes up, he regrets what happened and apologized to JOHNSON, stating that if there was anyway to make this up to JOHNSON, he would. YOUNG also told JOHNSON, "I'm the guy who usually, when stuff like this happens, I break legs because of it and have on previous occasions. So, to be on the opposite position is really weird". YOUNG also wanted to know if JOHNSON would like to rescind her charges against him so they could work things out personally without being kicked out of school.

YOUNG also told JOHNSON that she had given him a blow job. JOHNSON denied that she did and YOUNG repeated it again. JOHNSON continued to deny that she gave YOUNG a blow job.

It should be noted that there are two cassettes of the taped conversation because the first tape recorder was not working towards the end of the conversation. At that part of the conversation, JOHNSON asked YOUNG, "You took my pants down and put your fingers in my vagina. Right?" YOUNG'S response was not recorded and again, JOHNSON stated, "I didn't hear you. Can you say that again?" Once again, YOUNG'S response was not recorded due to the malfunction of the recorder. JOHNSON advised Reporting Officer that YOUNG did agree that he had taken her pants off and put his fingers in her vagina. A second tape player was then used and recorded the remaining conversation. There was approximately a one to two minute part of the conversation that was not recorded due to this malfunction.

It should be noted that on Wednesday, 22 June 2004 at approximately 1600 hours, Reporting Officer contacted JOHNSON by phone to go over some statements made during the one party consent call between JOHNSON and YOUNG. Reporting Officer asked JOHNSON to clarify if the accusation made by YOUNG was true, that JOHNSON had given him a blow job. JOHNSON hesitated, then stated, "Yes". Reporting Officer told JOHNSON that she would need to be truthful and JOHNSON told Reporting Officer she would be available on this same date to talk about it.

A short time later, JOHNSON arrived at Project Harmony where Reporting Officer again explained that it was important for JOHNSON to be honest. At that time, JOHNSON told Reporting Officer that "No", she had not given YOUNG a blow job, but felt that if her and YOUNG'S statements were

COPIES MADE
C804

ORIGINAL

OMAHA POLICE DEPARTMENT
SUPPLEMENTARY REPORT

Page 8 of 8

RB#   F-20413 AA

| OFFENSE: | VICTIM: | ADDRESS: |
|---|---|---|
| SEXUAL ASSAULT | JOHNSON, Jenna R. | 660 JE GEORGE BLVD.<br>OMAHA NE  68132 |

| ORIGINAL REPORT:<br>MON 06 JUNE '06   0902 HRS | THIS REPORT:<br>FRI 01 JULY '05   1930 HRS |
|---|---|

| TYPED BY:<br>PARK, G. C804 / TUES 12 JULY '05 | REPORTING OFFICERS:<br>CIRCO, Angie #1546 |
|---|---|

consistent, that it would be better.   Reporting Officer again asked
JOHNSON if she gave YOUNG a blow mob, JOHNSON replied "No".

The audio taped recording of the one party consent phone call has been
booked into Property.

At the time of this report, there is no further information.

### END OF REPORT

# Affidavit of Complaining Witness (Circo)
## *State v. Young*
# Doc. 167 No. 952

EXHIBIT
E

## IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA
## CRIMINAL BRANCH

**RB # 20413 F**

| | |
|---|---|
| THE STATE OF NEBRASKA )<br>           )<br>     Plaintiff    )<br>           )<br>-vs-           )<br>           )<br>YOUNG, David J.  W/M  )<br>Dob/10-26-1984     )<br>Add/ 12920 Lafayette  Omaha, NE  )<br>           )<br>     Defendant    ) | DOC._____ NO._____<br><br>**AFFIDAVIT OF**<br>**COMPLAINING WITNESS** |

DOC._____  NO._____

**AFFIDAVIT OF**
**COMPLAINING WITNESS**

FILED ·
CRIM/TRAF DIVISION

AUG 1 8 2005

By: Etta L. Carlisle
Acting Clerk of Court
DOUGLAS COUNTY COURT
OMAHA, NEBRASKA

STATE OF NEBRASKA   )
               )
County of Douglas    )

      Officer CIRCO, Angie #1546, being first duly sworn on oath, deposes and says that this affiant is an officer of the Omaha Police Department, City of Omaha, Douglas County, Nebraska.  This affiant further states that, based upon the investigation of Omaha Police Officer, CIRCO, Angie #1546, there are grounds for issuance of an arrest warrant for the above defendant:

On Monday, 06 JUNE 05, 0902 hours, Officer CUNNINGHAM, D #1757 responded to a radio call at 660 JE George Blvd, Omaha, Douglas County, Nebraska, residence of victim JOHNSON, Jenna w/f  Dob/06 FEB 85.   JOHNSON reported that on Saturday, 04 JUN 05, she was visiting a friend at Davis Hall, 21st Burt St., Omaha, Nebraska, on the Creighton University Campus.   JOHNSON states that this is the dorm room of RYAN, Katie   Dob/20 OCT 84 and PETERSON, Samantha   Dob/ 23 JUL 84.  JOHNSON stated that she met YOUNG, David  w/m  Dob/26 OCT 84, who was also present at 21st Burt St.  JOHNSON advised that she, YOUNG, RYAN and PETERSON were drinking alcoholic beverages from approximately 2300 hours Saturday, 04 JUN 05 until 0200 hours on Sunday, 05 JUN 05.

 JOHNSON reported to Officer CUNNINGHAM that early Sunday morning,  after RYAN and PETERSON went to bed, she (JOHNSON) and YOUNG began hugging and kissing.  JOHNSON advised YOUNG that nothing more physical would occur between the two parties and she was not going to engage in sexual intercourse or digital penetration.  JOHNSON reported that she fell asleep and awoke a short time later to YOUNG digitally penetrating her vagina.

A report was completed by Officer CUNNINGHAM and forwarded to Affiant Officer.

On Thursday, 16 JUN 05, 1415 hours, Affiant Officer CIRCO, Angie #1546 interviewed JOHNSON in regards to the Sexual Assault report.  JOHNSON disclosed that she had been sexually assaulted by YOUNG.  JOHNSON advised she met YOUNG for the first time on Saturday, 04 JUN 05, while visiting RYAN, Katie at Davis Hall, Creighton University Campus, Omaha, Nebraska.  JOHNSON states she arrived at RYAN's residence at approximately 2030 hours.   JOHNSON states that RYAN has a roommate PETERSON, Samantha, who is a friend of YOUNG.  JOHNSON stated that

CONTINUATION OF AF___DAVIT OF COMPLAINING WITN__ __        PAGE 2
throughout the evening, she had consumed alcohol between 2300 on Saturday 04 JUN 05 and 0200 hours on Sunday, 05 JUN 05. JOHNSON stated there was "definite flirting going on" between her and YOUNG throughout the evening and JOHNSON felt that she and YOUNG got along well together.

JOHNSON states on Sunday, 05 JUN 05, 0200 hours, she stopped drinking alcohol and began drinking water. JOHNSON states that YOUNG was too intoxicated to drive home so he was going to sleep on the couch. JOHNSON states that she was going to sleep in the back bedroom, while RYAN and PETERSON slept in their own rooms. JOHNSON states that at 0300 hours, everyone was ready for bed. JOHNSON states that YOUNG walked into the bedroom that JOHNSON planned on sleeping in, where she was putting sheets on the bed. JOHNSON states that YOUNG began kissing her neck which led to JOHNSON and YOUNG kissing each other. JOHNSON states that she told YOUNG that they were only going to kiss and hug.

JOHNSON states that there was "heavy kissing" between JOHNSON and YOUNG and YOUNG tried to take off JOHNSON's shirt. JOHNSON states that she told YOUNG that she wanted to leave her clothes on and YOUNG stopped and apologized. JOHNSON states that YOUNG was laying on top of her when he touched her vagina on the outside of her pajama pants. JOHNSON states her only reaction was to push him off, which caused him to fall off the bed, hit a chair and eventually onto the floor. JOHNSON states that YOUNG apologized for touching her, but she suggested YOUNG go sleep on the couch because she was tired and ready to go to sleep. JOHNSON states YOUNG refused to leave, so she laid down, ignoring him for approximately fifteen minutes, while YOUNG tried to talk to her. JOHNSON states that YOUNG said, "I'll just lay here until you fall asleep." JOHNSON states that she was laying on her side with her back to YOUNG, approximately one foot away from YOUNG.

JOHNSON states that she fell asleep for what she believed to be approximately fifteen to twenty minutes. JOHNSON states that when she woke up she realized that YOUNG had pulled her pajama pants and underwear down to her mid-thigh and that YOUNG had inserted his fingers inside her vagina. JOHNSON stated that her legs were sprawled apart and YOUNG was behind her with one hand holding her vagina open while he was penetrating her vagina with his fingers from his other hand. JOHNSON stated that she had a tampon in and could feel YOUNG pushing it with his fingers. JOHNSON also stated that she saw YOUNG's erect penis through his open, unzipped pants.

JOHNSON stated that she asked YOUNG what he was doing and asked YOUNG if he was going to rape her. YOUNG apologized to JOHNSON, further stating that he couldn't believe he did this to her and that JOHNSON must hate him for what he did. JOHNSON stated that YOUNG left, but returned a short time later to apologize again.

JOHNSON described YOUNG as a white male, 20 years old, 6'1, average muscular build, dark eyes and was a pre-law Creighton student.

On Monday, 20 JUNE 05, 1436 hours, JOHNSON agreed to do a taped one party consent phone call to YOUNG. During the phone conversation, YOUNG agreed that JOHNSON had said "no" to having sex with YOUNG. YOUNG stated that he was "a little drunk" and had been through a broken engagement recently, further stating that he was "kind of screwed up", but that "it's not an excuse". JOHNSON asked YOUNG if he was going to have sex with her while she was sleeping and he replied, "no there was not a plan". JOHNSON asked YOUNG what YOUNG was going to do to her which YOUNG stated he didn't know. JOHNSON asked YOUNG if he knew that she was sleeping and he replied, "yeah". JOHNSON told YOUNG that she had a tampon in and YOUNG said, "Yeah, I know. That's why I wasn't gonna have sex with you." YOUNG told JOHNSON that everyday he wakes up, he regrets what happened. YOUNG apologized to JOHNSON, stating if there was any way to make this up to her, he would.

CONTINUATION OF AFFIDAVIT OF COMPLAINING WITNESS          PAGE 3

On Wednesday, 27 July 05, Sgt. REYES #1363 interviewed YOUNG, David at Omaha Police Department, 505 South 15th Street, Omaha, Douglas County Nebraska. YOUNG stated he and JOHNSON "fooled around" and eventually JOHNSON fell asleep. YOUNG denied that he did not remember consciously putting his finger inside JOHNSON's vagina, but his finger may have involuntarily went inside of JOHNSON's vagina. YOUNG also stated that due to the fact that he had been drinking, events about that night were fuzzy. YOUNG admitted to Sgt. REYES that he and JOHNSON had slept in the spoon position, or the front of one individual touching the back of the other individual. YOUNG stated that he recalled JOHNSON was wearing baggy black sweats and admitted that it was possible that his finger had gone into her vagina in the middle of the night, however it would have been involuntary on his part.

This affiant Officer further states that there is reasonable cause to believe the crime of 1st Degree Sexual Assault was committed and that the said defendant committed the said crime.


DATED this 18th day of Aug, 2005.

_____ 1546
OMAHA NEBRASKA POLICE OFFICER

SUBSCRIBED AND SWORN to before me this 18th day of Aug, 2005

Dep Clerk _____
JUDGE OF THE COUNTY COURT
OF DOUGLAS COUNTY, NEBRASKA


FILED
CRIM/TRAF DIVISION

AUG 1 8 2005

By: Etta L. Cortina
Acting Clerk of Court
DOUGLAS COUNTY COURT
OMAHA, NEBRASKA

# Arrest Warrant
# *State v. Young*

EXHIBIT

F

IN THE COUNTY COURT OF Douglas COUNTY, NEBRASKA

ARREST WARRANT                          Doc. No.     11/2299

State of Nebraska v. David J Young

Citation No: CW 50392      Case ID: CR 05    25780

TO: THE Omaha Police Department OR ANY DULY AUTHORIZED LAW ENFORCEMENT OFFICER

A complaint has been filed in the above court alleging the above-named defendant
committed the following offense(s):

| Statute | Offense Description | Type | Cls | Off. Date |
|---------|---------------------|------|-----|-----------|
| 28-319(1)(A) | Sexual assault/forcible-1st degree | FEL | 2 | 06/06/2005 |

The court finds, upon complaint supported by oath or affirmation, probable cause
exists for the issuance of a warrant

THEREFORE YOU ARE ORDERED to immediately arrest said defendant wherever he/she may
be found and to bring him/her promptly before this court or any judge or magistrate
having jurisdiction of this matter, to answer such complaint and be further dealt
with according to law.

Date: _____   Judge/Magistrate _____

Officer:     Angela Guzman                    Omaha Police Department

Defendant    David J Young                    AKA
             12920 Lafayette                  AKA
             Omaha, NE   68154-0000           AKA
                                              AKA
                                              Drivers Lic: H12726646              NE
                                              Vehicle Lic:                   Plate Type
DOB: 10/26/1984  Ht: 6 00  Wt: 170  Sex: M  Eyes: BRO  Hair: BLK  Race: W

# Journal Entry and Order
# First Appearance
# *State v. Young*

EXHIBIT
G

JUS82056                         Douglas County Court                    Page:     1
Ordin...: 01C25          JOURNAL ENTRY & ORDER    Judge.: No Judge Assigned
Case No.: CR 05   25260                                 Filed.:  9/18/2005
Date....: 8/26/2005   09:00   Action: First Appearanc
Caption: State v. David J Young                    AKA:
DOB.....: 10/26/1984        Arrest #:              Citation #: K      5486
No Charge                   Amended to             Statute/Ord. No.
1 Sexual assault/forcible~                         28-319(1)(A)     2  FEL

### APPEARANCES

( ) Defendant;  ( ) Defense Counsel _____ ; ( ) Parents or Guardians _____
( ) Prosecutor _____  ☐ Interpreter _____  ( ) _____

### ARRAIGNMENT AND ADVISEMENT

☐ Defendant arraigned on: ☐ the above charge(s): ☐ the charge(s) of _____
☐ Defendant advised of the charge(s) against him/her and the penalties for said charge(s).              ☒ Waiver(s) entered knowingly.
☐ Defendant advised ☐ privilege against self-incrimination;   ☒ waived.                                 ☒ Waiver(s) entered understandingly.
on each charge of: ☐ right to confront accusers;              ☒ waived.                                 ☒ Waiver(s) entered intelligently.
☐ right to preliminary hearing; .            ☒ waived;   ☒ bound over to District    ☒ Waiver(s) entered voluntarily.
☐ right to counsel.                          ☒ waived.        Court for trial        ☒ Factual basis for waiver(s) found.
☐ Public Defender appointed for purposes of bond setting only.
☐ Indigency inquiry held;  ☐ Defendant adjudged indigent, Public Defender appointed.  ☐ Defendant adjudged not indigent.
☐ Defendant will hire own counsel.                                      ☐ Employed _____
☐ Case set for preliminary hearing on ___Sept 3___ 20_05_ at 9:00 AM in Courtroom No. 25.
☒ Probable cause for detention found. Bond set at $_10,000_ ☐10%; ☐ Signature; ☒ROR; ☒ Pre-Trial Release. ☒ Transferred to Juvenile Court.

### CONTINUANCE/DISMISSAL

☐ Case continued to _____, 20____ at ____ on motion of ☒ Prosecutor; ☒ Defense; ☒ Court.
☐ Charge(s) 1 ( ) 2 ( ) 3 ( ) 4 ( ) 5 ( ) dismissed on motion of ☐ Prosecutor; ☐ Defense; ☐ Court.

### PRELIMINARY HEARING/EXTRADITION

☒ Preliminary hearing held:
   ☐ Court finds probable cause to believe Defendant guilty of crime(s) charged. 1 ( ) 2 ( ) 3 ( ) 4 ( ) 5 ( ); case bound over to District Court for trial.
   ☐ Court finds insufficient evidence to bind Defendant over on charge(s) 1 ( ) 2 ( ) 3 ( ) 4 ( ) 5 ( ); charge(s) is/are dismissed.
☐ Bond set at $_____ ☐10%; ☐Signature; ☒ROR; ☐Pre-Trial Release.
☐ Extradition hearing held;   ☐Defendant waives extradition and is remanded to custody of Sheriff.  ☐Defendant declines waiver of extradition,
   case continued to _____, 20 ____ at ____ .
☒ Exhibits introduced: Nos. _____thru_____. Received _____

### ADDITIONAL ENTRIES OF RECORD

☒ Upon oath of Prosecutor, probable cause is found for the issuance of arrest warrant.
☐ Defendant fails to appear;  ☐ Capias to issue;  ☐ Bond set at $_____;  ☐ Mittimus to issue;  ☐ Capias cancelled.
☐ Bond in the amount of $_____ ☒ forfeited;  ☐ reinstated; ☐ released.
☐ Court Costs $_____ ☒ Witness Fees $_____ ☐ Sheriff Fees $_____ ☐ Subpoena Fees $_____ ☐ Other $_____
☐ _____

_____

Hon. _____     _____    _____   _____
              Judge              Date     Bailiff   Tape Nos.                      CR/TR 240 (12/01)

                              FILE                                Index Pg. -35-

# Request for Hearing
# *State v. Young*

EXHIBIT
H

| STATE OF NEBRASKA | **REQUEST FOR HEARING** | |
|---|---|---|
| CR/TR 13 (8-01) | | |

**Douglas County Court, Criminal/Traffic Division**
**1701 Farnam Street, 2nd Floor, Omaha, NE 68183  (402) 444-5386**

STATE OF NEBRASKA,

                Plaintiff,

-vs-

David Young,

                Defendant

**(When Filling Out Press Firmly)**

Case No. _CR05-25260_

Arrest No. _K05486_

Arr./Trial Date _9/23/05_

In Jail/Data No. _2883618_

The undersigned requests that the court file and the prosecutor's paperwork be available in Courtroom No. _28_ on _September 16_, 20 _05_, at _1:30_ _p_ .m. for _Continuance_

DATE: _9/13/05_    Defendant or Defendant's Attorney: _State / Matthew Kahler_

           Printed Name: _Matthew Kahler_

           Phone #: _444-7040_

           Attorney No.: _22431_

\_\_ The requesting party is responsible for notifying the prosecuting authority (city prosecutor or county attorney) of this request, and for arranging the transportation of any incarcerated defendant.

\_\_ **THIS REQUEST MUST BE SUBMITTED AT LEAST 24 HOURS PRIOR TO THE REQUESTED APPEARANCE DATE UNLESS YOU WISH TO GO INTO COURT TO HAVE A WARRANT CANCELLED.**

DATE: _____   BY THE COURT: _____

                                                      (County Judge)

**NO EARLY REQUESTS WILL BE ACCEPTED UNLESS THESE PROCEDURES ARE FOLLOWED.**

White  – Criminal/Traffic Clerk Office
Yellow  – Criminal/Traffic Clerk Office
Pink  – City Prosecutor
Gold  – Defendant

# Journal Entry and Order
# Request for Hearing
# *State v. Young*

EXHIBIT
I

JUSB2058-P3
Crtrm...: 01C25

Douglas County Court
JOURNAL ENTRY & ORDER

Page   1
Judge.: No Judge Assigned

Case No.: CR 05   25260
Date....: 11/02/2005   09:00   Action: Preliminary Hea
Caption.: State v. David J Young
DOB....: 10/26/1984
No Charge
1 Sexual assault/forcible-
BOND INFO:
B   81683 $   10,000.00   Ten Prc

Filed.: 8/16/2005

AKA:

Arrest #: **FILED**
Amended **FILED**
**CRIMINAL/TRAFFIC DIVISION**

Citation #: K   5438
Statute/Ord. No.
28-319(1)(A)   2 FEL

**NOV 02 2005**

BOND   8/26/2005

By: Etta L. Carlisle
Acting Clerk of Court
DOUGLAS COUNTY COURT
OMAHA, NEBRASKA

**FILED**
**CRIMINAL/TRAFFIC DIVISION**

**NOV 02 2005**

By: Etta L. Carlisle
Acting Clerk of Court
DOUGLAS COUNTY COURT
OMAHA, NEBRASKA

## APPEARANCES

☑ Defendant; ☐ Defense Counsel _J.M. Davis_ ; ☐ Parents of Juvenile
☐ Prosecutor _Kahle_ ☐ Interpreter _____

## ARRAIGNMENT AND ADVISEMENT

☐ Defendant arraigned on: ☐ the above charge(s): ☐ the charge(s) of_____
☐ Defendant advised of the charge(s) against him/her and the penalties for said charge(s).   ☑ Waiver(s) entered knowingly.
☐ Defendant advised ☐ privilege against self-incrimination;   ☐ waived.   ☑ Waiver(s) entered understandingly.
on each charge of: ☐ right to confront accusers;   ☑ waived.   ☑ Waiver(s) entered intelligently.
☐ right to preliminary hearing;   ☑ waived;   ☐ bound over to District   ☑ Waiver(s) entered voluntarily.
☐ right to counsel.   ☑ waived.   Court for trial   ☑ Factual basis for waiver(s) found.
☐ Public Defender appointed for purposes of bond setting only.
☑ Indigency inquiry held; ☐ Defendant adjudged indigent, Public Defender appointed. ☐ Defendant adjudged not indigent.
☐ Defendant will hire own counsel.   ☐ Employed_____
☐ Case set for preliminary hearing on _____,20____at 9:00 AM in Courtroom No. 25.
☐ Probable cause for detention found. Bond set at $_____ ☑10% ☑ Signature; ☑ ROR; ☐ Pre-Trial Release. ☑ Transferred to Juvenile Court.

## CONTINUANCE/DISMISSAL

☐ Case continued to _____, 20____at_____ on motion of ☐ Prosecutor; ☑ Defense; ☑ Court.
☐ Charge(s) 1 ( ) 2 ( ) 3 ( ) 4 ( ) 5 ( ) dismissed on motion of ☐ Prosecutor; ☐ Defense; ☐ Court.

## PRELIMINARY HEARING/EXTRADITION

☑ Preliminary hearing held;
☑ Court finds probable cause to believe Defendant guilty of crime(s) charged. 1 ( ) 2 ( ) 3 ( ) 4 ( ) 5 ( ); case bound over to District Court for trial.
☐ Court finds insufficient evidence to bind Defendant over on charge(s) 1 ( ) 2 ( ) 3 ( ) 4 ( ) 5 ( ); charge(s) is/are dismissed.
☑ Bond set at $_____ ☑10%; ☑ Signature; ☐ROR; ☐ Pre-Trial Release.
☐ Extradition hearing held; ☐ Defendant waives extradition and is remanded to custody of Sheriff. ☐ Defendant declines waiver of extradition.
case continued to _____, 20____at_____
☐ Exhibits introduced: Nos. _____thru_____. Received _____

## ADDITIONAL ENTRIES OF RECORD

☐ Upon oath of Prosecutor, probable cause is found for the issuance of arrest warrant.
☐ Defendant fails to appear; ☐ Capias to issue; ☐ Bond set at $_____; ☐ Mittimus to issue; ☐ Capias cancelled.
☐ Bond in the amount of $_____ ☐ forfeited; ☐ reinstated; ☐ released.
☐ Court Costs $_____ ☐ Witness Fees $_____ ☐ Sheriff Fees $_____ ☐ Subpoena Fees $_____ ☐ Other $_____
☐ _____

Hon. _____ 
Judge

Date _11.2.05_   Bailiff _DS_   Tape Nos. _F# 335_

336  0000-775
2452-3660

CR/TR 240 (12/01)

FILE

# Plea in Abatement
# *State v. Young*
# Doc. 167 No. 952

EXHIBIT
J
_____

## IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

| | |
|---|---|
| STATE OF NEBRASKA, | )   DOC. 167 NO. 952 |
| | ) |
| Plaintiff, | )   **PLEA IN ABATEMENT** |
| | ) |
| vs. | ) |
| | ) |
| DAVID J. YOUNG, | ) |
| | ) |
| Defendant. | ) |



**COMES NOW** David J. Young, the Defendant herein, pursuant to § 29-1809, as amended, and files this plea in abatement and alleges that this cause should be dismissed as a matter of law, as there is insufficient evidence adduced at the preliminary hearing to support a finding of probable cause to believe that a crime has been committed or that the Defendant committed that crime. In support of this plead in abatement, the Defendant shows the Court the following, to wit:

1. For purposes of this plea, the Defendant hereby incorporates by reference the whole of all of the testimony heard at the preliminary hearing conducted on the 2nd of November 2005 at 9:00 a.m. in the County Court of Douglas County before the Honorable John E. Huber.

2. That the Defendant alleges that the State failed to establish probable cause in the following particulars, to-wit:

   a. that the victim was actually subjected to sexual penetration;

   b. that if she was that it was without the victim's consent; or



c. that the victim was mentally or physically incapable of resisting or appraising the nature of the Defendant's conduct.

**WHEREFORE,** the Defendant David J. Young prays the Court for an Order abating these proceedings and dismissing this case against him.

DAVID J. YOUNG, Defendant

BY: _____
James Martin Davis   #10927
Davis Law Office
1623 Farnam Plaza, Suite 500
Omaha, NE  68102
(402) 341-9900
*Attorney for the Defendant*

## VERIFICATION

STATE OF NEBRASKA )
)
COUNTY OF DOUGLAS )

I, David J. Young, being first duly sworn on oath, depose and state that I am the Defendant in these proceedings; that I make this verification as required by the statutes of the State of Nebraska; and that on information and belief, the foregoing allegations and statements set forth on my behalf are true as I verily believe.

DATED this _29TH_ day of December 2005.

_____
DAVID J. YOUNG

SUBSCRIBED AND SWORN to before me this _29TH_ day of December 2005.

_____
NOTARY PUBLIC

GENERAL NOTARY - State of Nebraska
ROBERT F. CRAIN
My Comm. Exp. Jan. 22, 2007

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that a copy of the foregoing document was served on the following person by United States mail, postage prepaid, on December _29_, 2005.

Sandra Denton
Douglas County Attorney's Office
1701 Farnam Street, Room 100
Omaha, NE 68183

JAMES MARTIN DAVIS

# Order
# (Defendant's Plea in Abatement)
# *State v. Young*
# Doc. 167 No. 952

EXHIBIT
K

IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

STATE OF NEBRASKA,                )        DOC. 167 no. 952
                                  )
                  Plaintiff,      )
                                  )
vs.                               )        ORDER (DEFENDANT'S
                                  )        PLEA IN ABATEMENT)   FILED
DAVID J. YOUNG,                   )                       JOURNAL CLERK
                                  )
                  Defendant.      )                       MAR 1 0 2006
                                  )
                                           CLERK DISTRICT COURT

THIS MATTER came before the Court on the plea in abatement of

Defendant on January 17, 2006. Defendant appeared through counsel, James

Martin Davis, and the State appeared through Deputy County Attorney Sandra

Denton. Evidence was adduced, arguments were presented, and the matter was

taken under advisement. The Court, having been duly advised in the premises,

does hereby enter the following Order.

The record of the preliminary hearing in Douglas County Court was

admitted as evidence. A plea in abatement is a challenge to the sufficiency of

evidence at the preliminary hearing. State v. Hill, 255 Neb. 173 (1996).

A preliminary hearing is not a trial of the person charged in regard to his or

her guilt or innocence. See Delay v. Brainard, 182 Neb. 509 (1968); State v.

Sheldon, 179 Neb. 377 (1965). Instead, the purpose of a preliminary hearing is

to ascertain whether or not a crime has been committed and whether there is

probable cause (i.e., more evidence for than against) to believe the accused

committed the crime. See State v. Wilkinson, 219 Neb. 685 (1985); State v.

Ruzicka, 218 Neb. 594 (1984). The effect of the foregoing, if found to exist, is to

hold the accused for trial in district court, which has jurisdiction to try the accused. Delay, supra; Fugate v. Ronin, 167 Neb. 70 (1948).

The question here is not whether Plaintiff proved the accused guilty beyond a reasonable doubt at the preliminary hearing but rather whether Plaintiff has adduced enough evidence that, if believed by a trier of fact, would show that a crime of first-degree sexual assault had been perpetrated and that there is probable cause to believe that the accused committed the alleged act(s). Evidence that would justify a committing magistrate in finding that probable cause existed for the detention of the defendant need not necessarily be sufficient to sustain a verdict of guilty when he or she is placed on trial. Delay, supra.; Neudeck v. Beuttrow, 166 Neb. 649 (1958).

The rule that the accused is entitled to the benefit of a reasonable doubt does not apply in preliminary examinations. Delay, supra. The test is not whether guilt is established beyond a reasonable doubt but rather whether evidence is adduced that shows a crime was committed and that there is probable cause to believe that the accused committed the crime. State v. Bottolfson, 259 Neb. 470 (2000). Any alteration to this rule, when prompt preliminary hearings are required, would tend to make the preliminary hearing a trial and could seriously impede the flow of criminal prosecutions.

Defendant is charged with first-degree sexual assault. Omaha Police ("OPD") were called to Project Harmony (the specific date is not revealed in the bill of exceptions of the preliminary hearing held on November 2, 2005) to interview the alleged victim in this case, Jana Johnson. Ms. Johnson advised

2

OPD that she had been "out partying" on the evening of June 4, 2005, and returned to a friend's residence on the Creighton University campus. Defendant's two friends, who lived at the residence, accompanied her to the residence. She had just met Defendant that evening. Between the party and returning to the Creighton University campus, she informed OPD that they had stopped at Defendant's residence and "collected some alcohol." She told OPD that after returning to the campus residence everyone consumed alcohol, watched a movie, and at about 3:00 a.m. everyone went to bed. Defendant was to sleep in the living room and Ms. Johnson was to sleep in a bedroom at the back of the residence. Ms. Johnson's two friends were to sleep in their respective bedrooms.

Ms. Johnson related to OPD that as she was making the bed, Defendant entered the room and that she and Defendant "began kissing and making out." However, she stated that she set "ground rules" and that she did not want to engage in sexual relations. At some point she stated that Defendant "grabbed her" in a sexual manner and that she resisted by pushing him and causing him to fall to the floor. According to what she told OPD, when he stood up she told him that she was "done" and that he should go to the other room. She stated that he continued to try to kiss her. She told him she was tired and she lay down on the bed and went to sleep. As she was falling asleep, she stated that Defendant lay down next to her and she eventually went to sleep. When she awoke about 15 minutes later, she noted Defendant was behind her, that he had pulled down her pajama bottoms, had used his fingers to penetrate her vagina, and that he had

3

exposed himself.   She stated that she asked Defendant whether he had planned to rape her, he stated no and apologized, and eventually he left the residence.

After OPD interviewed Ms. Johnson, arrangements were made to tape record a telephone call between Ms. Johnson and Defendant.  According to the OPD witness, during the call Defendant told Ms. Johnson that he knew she did not want to have intercourse with him, that he knew she was asleep, and that he had used his fingers to penetrate her vagina.  Further, according to the OPD witness, Defendant asked her not to proceed with charges against him.

During cross-examination of the OPD witness, Defendant's counsel was able to elicit testimony that could create some credibility issues for a finder of fact as to Ms. Johnson's statement of what had occurred (as related by the OPD witness), and that the OPD witness testified only as to the alleged incriminatory statements on the taped telephone call between Defendant and Ms. Johnson while there could also exist exculpatory statements on the tape.

However, that there may exist issues of credibility for a trier of fact to resolve and that there may exist exculpatory statements on the tape does not mean that there is a lack of probable cause to believe that a crime has occurred and that Defendant committed the crime.  At this stage of the proceeding, it is not necessary for the Court to determine beyond all reasonable doubt the guilt or non-guilt of Defendant.  Rather, the Court need only determine whether the State has adduced enough evidence, if believed by a trier of fact, to show that a first-degree sexual assault had been perpetrated and that there was probable cause to believe Defendant committed the act.  It need not be enough evidence to

4

sustain a verdict of guilt when Defendant is placed on trial. The benefit of reasonable doubt does not apply in preliminary examinations.

The Court believes that for purposes of a plea in abatement, there exists probable cause to believe that a first-degree sexual assault occurred and that Defendant committed the act. Defendant's plea in abatement is overruled.

DATED this ___9___ day of March, 2006.

BY THE COURT:

J. Russell Derr
District Court Judge

Copies:
Sandra Denton, Esq.
James M. Davis, Esq.

5

# Verdict Form
# *State v. Young*
# Doc. 167 No. 952

EXHIBIT
L

## IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

| | | |
|---|---|---|
| STATE OF NEBRASKA, | ) | DOC. 167    PAGE 952 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | VERDICT FORM |
| | ) | |
| DAVID J. YOUNG, | ) | |
| | ) | |
| Defendant. | ) | |

FILED
IN DISTRICT COURT
DOUGLAS COUNTY, NEBRASKA

JUL 2 4 2006

RUDY J. TESAR
CLERK DISTRICT COURT

We, the jury, duly impaneled and sworn to well and truly try and true deliverance make between the State of Nebraska and David J. Young, the Defendant at the bar, do find as follows:

_____    Said Defendant is **GUILTY** of First Degree Sexual Assault, as charged in the Information.

✓    Said Defendant is **NOT GUILTY** of First Degree Sexual Assault, as charged in the Information.

DATED this 24th day of July, 2006.

_____
Foreperson    Todd W. Kick

# Excerpts From Trial Transcript *State v. Young* Doc. 167 No. 952

EXHIBIT
M

```
 1    IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

 2    STATE OF NEBRASKA,    )      DOC. 167 NO. 952
                            )
 3              Plaintiff,  )
                            )        TRANSCRIPT OF
 4       vs.                )        PROCEEDINGS
                            )
 5    DAVID YOUNG,          )      VOLUME I of III
                            )      (Pages 1 to 233, incl.)
 6              Defendant.  )
                            )
 7    _____)

 8

 9        Proceedings had before THE HONORABLE J RUSSELL

10    DERR, District Judge, at Omaha, Nebraska, on July

11    17, 18, 19, 20, 21 and 24, 2006.

12

13                    A P P E A R A N C E S

14    FOR THE STATE:        Ms. Sandra Denton
                            Mr. Matthew Kahler
15                          Deputy County Attorneys
                            1701 Farnam Street
16                          Omaha, Nebraska  68183

17    FOR THE DEFENDANT:    Mr. James Martin Davis
                            Attorney at Law
18                          1623 Farnam Street, #500
                            Omaha, Nebraska  68102
19

20

21

22            Julie L. Hurley, CCR, RMR, CRR
                    Official Court Reporter
23           1701 Farnam Street, Courtroom #9
                  Omaha, Nebraska  68183
24                    (402) 444-7013

25
```

234

1      IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

2      STATE OF NEBRASKA,     )        DOC. 167 NO. 952
                              )
3               Plaintiff,    )
                              )        TRANSCRIPT OF
4      vs.                    )        PROCEEDINGS
                              )
5      DAVID YOUNG,           )        VOLUME II of III
                              )        (Pages 234 to 462, incl.)
6               Defendant.    )
                              )
7      _____)

8

9          Proceedings had before **THE HONORABLE J RUSSELL**

10     **DERR**, District Judge, at Omaha, Nebraska, on July

11     17, 18, 19, 20, 21 and 24, 2006.

12

13                      A P P E A R A N C E S

14     FOR THE STATE:        Ms. Sandra Denton
                             Mr. Matthew Kahler
15                           Deputy County Attorneys
                             1701 Farnam Street
16                           Omaha, Nebraska   68183

17     FOR THE DEFENDANT:    Mr. James Martin Davis
                             Attorney at Law
18                           1623 Farnam Street, #500
                             Omaha, Nebraska   68102
19

20

21

22              Julie L. Hurley, CCR, RMR, CRR
                     Official Court Reporter
23             1701 Farnam Street, Courtroom #9
                    Omaha, Nebraska   68183
24                      (402) 444-7013

25

1   IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

2   STATE OF NEBRASKA,      )      DOC. 167 NO. 952
                            )
3            Plaintiff,     )
                            )      TRANSCRIPT OF
4       vs.                 )      PROCEEDINGS
                            )
5   DAVID YOUNG,            )   VOLUME III of III
                            )(Pages 463 to 793, incl.)
6            Defendant.     )
                            )
7   _____)

8

9       Proceedings had before **THE HONORABLE J RUSSELL**

10  **DERR**, District Judge, at Omaha, Nebraska, on July

11  17, 18, 19, 20, 21 and 24, 2006.

12

13                   A P P E A R A N C E S

14  FOR THE STATE:        Ms. Sandra Denton
                          Mr. Matthew Kahler
15                        Deputy County Attorneys
                          1701 Farnam Street
16                        Omaha, Nebraska   68183

17  FOR THE DEFENDANT:    Mr. James Martin Davis
                          Attorney at Law
18                        1623 Farnam Street, #500
                          Omaha, Nebraska   68102

19

20

21

22           Julie L. Hurley, CCR, RMR, CRR
                   Official Court Reporter
23          1701 Farnam Street, Courtroom #9
                   Omaha, Nebraska   68183
24                   (402) 444-7013

25

 1    he might have been out in the living room.
 2         Q.   At some point does Mr. Young enter that
 3    third bedroom?
 4         A.   Yes.
 5         Q.   How does that come about, can you tell the
 6    jury, please?
 7         A.   Well, as soon as Katie went to bed, he came
 8    in.  And my light was still on so he flipped it off
 9    and came over and started kissing me.  I think on my
10    neck.  And I had just said, you know, Oh, okay,
11    yeah.  You know, I mean, we -- you know, This could
12    be fun.  And, you know.  And then we kissed a little
13    bit more.  And at some point in there I did say, you
14    know, This -- this could be a lot of fun but I --
15    just right up front I just want you to know I don't
16    want to to have sex tonight, you know.  I just -- I
17    just don't.  And, you know, while we're at it, maybe
18    we could just leave clothes on, you know.  I mean,
19    we've both been drinking tonight, we don't want
20    anything to happen that shouldn't.  And he said, you
21    know, That's fine, I just -- just want to be with
22    you.  I just want to be in here.  And so that's how
23    it came to be.
24         Q.   Okay.  When the defendant came into your
25    third bedroom, Ms. Johnson, was this at an

1          A.    Not at that time.

2          Q.    Okay.  So you had this conversation with

3     the defendant, he understood what you had to say.

4     What's the next thing that you -- that happened

5     next?

6          A.    I mean, the thing that happened next was we

7     climbed up on the bed.  It's one of those dorm beds

8     so it's a little bit higher.  And just continued

9     kissing.

10         Q.    And this is, again, still with your

11    consent?

12         A.    Correct.

13         Q.    And you have your clothes on?

14         A.    Yes.

15         Q.    The T-shirt and flannel pants?

16         A.    Correct.

17         Q.    And the defendant still has his clothes on?

18         A.    Yes.

19         Q.    Do you recall what he was wearing?

20         A.    He had on, I believe, jeans and a T-shirt.

21         Q.    Do you recall the color of the T-shirt?

22         A.    I think it was a black T-shirt.

23         Q.    And then what happened after that?

24         A.    We just continued kissing.  You know, we

25    would make out for a while and then just kind of lay

 1    there and talk for a little bit.  Kiss some more.
 2    You know, I mean, at one time he tried going up my
 3    shirt but I -- I just kind of said, whoa, you know,
 4    and he apologized.  And, yeah, kissing, talking.
 5         Q.   Okay.  And at some point did you perform
 6    oral sex on the defendant?
 7         A.   Yes.
 8         Q.   How long had the kissing been going on when
 9    this occurred?
10         A.   I believe -- and, again, I mean, it's all
11    -- all rough.  I believe maybe 20 or 30 minutes.
12         Q.   How did that come about?  Did the defendant
13    ask you to perform that?  Or did you do that on your
14    own?
15         A.   Yes, he asked me to.
16         Q.   Okay.  And did you agree to?
17         A.   Yes.
18         Q.   And this was with your consent?
19         A.   Yes.
20         Q.   Okay.  And how long did you perform oral
21    sex on the defendant, if you have any idea?
22         A.   Only a couple seconds.
23         Q.   Did the defendant ejaculate?
24         A.   No.
25         Q.   And after that sexual act occurred, what's

1    the next thing that you recall happening?

2        A.    After that, we honestly just talked for a

3    little bit longer and then got back to kissing.  And

4    then at one point he was on top of me and kissing me

5    and had reached down on top of my flannel pants and

6    was touching me kind of in my vagina region.  And it

7    really kind of startled me and I kind of had pushed

8    him back and ended up pushing him up and off the

9    bed.  And there was a futon sitting in the room,

10   because it's kind of a storage room, and he hit

11   that.  And I think he hurt his shoulder and was kind

12   of upset about that.

13       Q.    Okay.  And you pushed him off of you why?

14       A.    Because he had touched me and startled me,

15   and I didn't want to go there that night.

16       Q.    Okay.  Is it at that point that you told

17   him that you were on your period?

18       A.    Yes.

19       Q.    Okay.  And what did the defendant say, if

20   anything, when you told him that?

21       A.    He had just -- because he had said, you

22   know, Are you sure you don't want to have sex?  Are

23   you sure you don't want to take this farther?  And

24   at that point I did say, Well, I'm -- I'm on my

25   period.  So even if I wanted to, that's just not

1        Q.    Okay.

2        A.    So, you know, that was -- it just seemed

3    like a good breaking point for the night.

4        Q.    Okay.

5        A.    I said, you know, This might be a good time

6    for you to go out and sleep on the couch.  You know,

7    I'm exhausted, I'm ready to go to sleep.

8        Q.    And when you said this to the defendant,

9    that this would be a good time for us to break and

10   you were tired and you wanted to go to sleep, what

11   did the defendant say, if anything, in response?

12       A.    He said, you know, I mean, he just -- he

13   really didn't want to sleep on the couch and it was

14   so uncomfortable and it was just so nice being, you

15   know, close to me here.  And, you know, eventually

16   said, Okay, I'll go sleep on the couch, but I just

17   want to lay here until you fall asleep.  You know, I

18   mean, just until you fall asleep.  And so at that

19   point I just -- it wasn't even worth fighting over

20   any more.  So I just turned my back to him and

21   started to go to sleep.

22       Q.    This bed, how would you describe it?  You

23   said it's more elevated than your regular bed?

24       A.    Right.

25       Q.    What size of bed are we talking about?

1      A.   Yes.

2      Q.   Who was sleeping on the side by the wall?

3      A.   He was sleeping on the side by the wall.

4      Q.   Okay.  And you were on the outside?

5      A.   Correct.

6      Q.   And how were you positioned when you fell

7   asleep?

8      A.   When I fell asleep, I was on the -- towards

9   the edge of the bed.  And there was some space,

10  maybe a foot, in between us.

11     Q.   Are you facing the defendant?

12     A.   Away.

13     Q.   I'm sorry?

14     A.   I'm facing away from him.

15     Q.   Was the defendant facing you?

16     A.   I believe so, yes.

17     Q.   And you stated at some point then you fell

18  asleep; is that correct?

19     A.   Correct.

20     Q.   When you fell asleep, immediately before,

21  were you engaged in any type of kissing or sexual

22  contact with the defendant?

23     A.   No.

24     Q.   How long had that type of activity

25  ceased -- have been ceased?

1        A.    Probably -- I mean -- probably, from him

2    getting pushed off the bed to us talking, to me

3    deciding I was going to go to sleep, probably ten

4    minutes or so.  And then I just kind of laid there,

5    you know, with my eyes closed, pretending to be

6    asleep.  Just so -- I was going to wait until he

7    left so that I could get more comfortable and fall

8    asleep.

9        Q.    And during that whole time, that ten-minute

10   period of time, there was no kissing or sexual

11   activity?

12       A.    No.  He had -- I mean, I think he had,

13   like, touched my head once.  And I had just said,

14   you know, Seriously, I'm going to sleep.  But that

15   was it.

16       Q.    Did you -- you stated initially you were

17   pretending to fall asleep.  Did you ever actually

18   fall asleep?

19       A.    Yes.

20       Q.    And when you fell asleep, was the defendant

21   still in the bed with you?

22       A.    Yes.

23       Q.    What's the next thing that you remember

24   happening after falling asleep?

25       A.    I remember waking up and I -- I woke up

 1    because I felt someone touching me.  And I flipped

 2    around and the pajama pants and the underwear that I

 3    had on were pulled down, and David Young had put his

 4    finger or fingers into my vagina.

 5         Q.   They were on the inside of your vagina?

 6         A.   Correct.

 7         Q.   Okay.  And is that what you felt when you

 8    said that somebody was touching you that woke you

 9    up?

10         A.   Yes.

11         Q.   Could you feel anything else other than his

12    hands?

13         A.   Well, I had a tampon in and I felt him

14    pushing it up.

15         Q.   Okay.  And you were -- you stated you were

16    on your period; is that correct?

17         A.   Yes.

18         Q.   And you traditionally wear just one tampon?

19         A.   Correct.

20         Q.   And you had just one on?

21         A.   Yes.

22         Q.   When you felt the defendant doing this to

23    you, were you able to see -- turn around and see

24    him?

25         A.   Yes.

 1        A.   I was.   But I remember at the time not
 2   wanting to be too loud because I didn't want to wake
 3   my friends up.   Because I knew they had to work the
 4   next day.
 5        Q.   When you woke up and the defendant had his
 6   fingers inside of your vagina, was that with your
 7   consent?
 8        A.   No.
 9        Q.   And at the time that that was happening,
10   were you sleeping?
11        A.   Yes.
12        Q.   When you asked the defendant to leave, did
13   he in fact do so?
14        A.   He kept talking to me for a while.   And I
15   pushed him towards the door of the bedroom and shut
16   it and locked it.   There's a lock on the bedroom
17   door.   And he kept talking through the door.   And
18   during that time he just said, you know, some guy
19   had done something like this to a friend of his and
20   he went and beat that guy up.   And he couldn't
21   believe that he had become that guy.   He said, you
22   know -- I mean, he was just -- just so worried that
23   I was going to hate him for the rest of my life.
24   And I just said --
25             MR. DAVIS:   I'm going to object and ask

```
 1   that that be stricken that -- she doesn't know what
 2   his state of mind is.
 3              THE COURT:  I'll sustain --
 4              MS. DENTON:  I believe that's what she was
 5   saying he was saying.
 6              THE WITNESS:  He said to me --
 7              THE COURT:  Hold on just a moment.
 8              If -- I'll sustain the objection and strike
 9   after the words, He said, you know, I mean, he was
10   just -- I'll strike -- I'll sustain the objection
11   and strike and ask the jury to disregard the rest of
12   that answer.
13   BY MS. DENTON:
14       Q.   What other things was the defendant saying
15   to you?
16       A.   That he was sorry.  That, you know, Was I
17   going to tell Samantha about this?  What could he do
18   to make this up to me?  What could he do to make
19   this okay?  And I just told him, I just want you to
20   leave.  I don't want you to ever come back.  I just
21   want you to get out of here.  And then I went to the
22   back of the bedroom.  And he just kept apologizing
23   through the door for a while more.  And then I heard
24   him, you know, clean up the kitchen, pick up the
25   bottles of alcohol and the -- you know, the beer.
```

1   And I heard the front door close.

2       Q.   When you heard the front door close, what

3   did you do?

4       A.   I looked out the window.  The room I'm in

5   looks right out onto the street.  And I watched him

6   walk out the gate and across the street to his car.

7   So I figured that he was gone.  And so that's when I

8   went out of the bedroom and went to the bathroom and

9   washed my face and started thinking about -- just --

10  I don't even know what I was thinking.

11          And I came out of the bathroom and he was

12  standing at the kitchen.  He had taken, I believe,

13  Samantha's keys and let himself back in.  And I

14  said, you know, What are you doing back in here?  I

15  told you to leave.  And I went back to the bedroom

16  and shut and locked the door.  And then I believe I

17  heard him leave the second time.

18  BY MS. DENTON:

19      Q.   When you went back into the bedroom and

20  locked the door again, was there a point where

21  somebody else came to the door?

22      A.   Yes.  Someone started knocking on my

23  bedroom door and I thought it might be him so I

24  didn't say anything.  And then I heard Katie Ryan

25  saying, you know, What's -- what's going on?  You

 1              You may step down, sir.

 2              THE WITNESS:  Thank you.

 3              THE COURT:  Who is our next witness?

 4              MS. DENTON:  Your Honor, at this time I

 5      just wanted to verify the admission of receipt of

 6      the exhibits and the State would rest.

 7              THE COURT:  Certainly, subject to that.

 8      All right.

 9              And you have any motions?

10              MR. DAVIS:  I do.

11              THE COURT:  Are you satisfied with all the

12      exhibits you wish to offer?

13              MS. DENTON:  Yes, Your Honor.

14              THE COURT:  Thank you.  Why don't you

15      approach?

16              (In low tones, the following proceedings

17      were had at sidebar:)

18              THE COURT:  I thought this would be a good

19      -- you can make your motion.  If you want to add

20      more to it in argument later, you can.  But why

21      don't you make your motion now and then once the

22      jury's gone, if you want to make further argument or

23      add to it, but --

24              MR. DAVIS:  Well, the jury could be gone

25      right now if you granted my motion, Judge.  I move

1  for a verdict of -- a directed verdict of acquittal

2  based on the fact they haven't made a prima facie

3  case.

4          MS. DENTON:  And we would submit, Your

5  Honor, on the facts.

6          THE COURT:  I'll overrule your motion at

7  this time.  And, again, if you want to supplement it

8  in chambers later, I'd be happy to listen to

9  anything.  And resistance too.

10         Are you going to call Ms. Peterson?

11         MR. DAVIS:  I have three witnesses.

12         THE COURT:  Including the defendant?  Oh, I

13  was going to say --

14         MR. DAVIS:  Yeah, I have three witnesses.

15  I could probably get them all three on before noon.

16  They're very short.

17         THE COURT:  All right.  Let's see what we

18  can do.

19         MR. DAVIS:  While we're visiting, I know

20  what the inconsistencies are.  I want to stay out of

21  all that stuff Samantha wrote and out of all the

22  stuff of what the reporters wrote -- the police

23  officers wrote.  And -- but I'm going to need a

24  little latitude before and after.  I promise you I'm

25  not going to transgress.  So if you -- I don't want

```
 1               THE COURT:  Sustained.
 2               MR. DAVIS:  That's all I have.
 3               THE COURT:  All right.
 4               You may step down, sir.  Thank you.
 5               Do you have any more evidence?
 6               MR. DAVIS:  No, Your Honor, we'd rest.
 7               THE COURT:  All right.  Sidebar.
 8               (In low tones, the following proceedings
 9     were had at sidebar:)
10               THE COURT:  You want to make a motion?
11               MR. DAVIS:  I'd make the motion for --
12     renew my Motion for Directed Verdict.
13               THE COURT:  All right.  At this time I'll
14     overrule it.
15               Now, do you have any rebuttal?
16               MS. DENTON:  Maybe.  But we'd ask
17     permission until morning.
18               THE COURT:  How long do you think it will
19     take?  I mean, we can get everything done by noon,
20     you think, closing, instructions?
21               MS. DENTON:  Yes.
22               MR. DAVIS:  Who do you have?
23               MS. DENTON:  Desiree Shipman.
24               THE COURT:  I'll overrule your motion and
25     then I'll just ask the jurors to recess for the
```

# Excerpts From Deposition of Jenna Johnson
# *Young v. Dornan, et al.*
# May 14, 2009

EXHIBIT

N

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

DAVID J. YOUNG,                )
                               )  Case No.
              Plaintiff,       )  8:07-CV-00265
                               )
     v.                        )
                               )
STUART J. DORNAN,              )
individually and in his        )
official capacity; DOUGLAS     )
COUNTY, NEBRASKA, a            )
political subdivision of the   )
State of Nebraska, et al.,     )  TAKEN IN BEHALF
                               )  OF PLAINTIFF
              Defendants.      )

DEPOSITION OF JENNA R. JOHNSON, taken

at 8:55 a.m. on May 14, 2009, by Alvin J.

Thibault, RPR, CSR and General Notary Public in

and for the State of Nebraska, taken at Erickson

Sederstrom, 10330 Regency Parkway Drive, Suite

100, Omaha, Nebraska.

```
 1    APPEARANCES:

 2
      MR. THOMAS J. YOUNG              For Plaintiff
 3    Attorney at Law
      2433 South 130th Street
 4    Omaha, Nebraska 68144-2528

 5    MR. ALAN M. THELEN               For Defendant
      Assistant City Attorney         City of Omaha
 6    804 Omaha/Douglas Civic Center
      1819 Farnam Street
 7    Omaha, Nebraska 68183-0001

 8    MR. DOUGLAS L. PHILLIPS          For Defendant
      Attorney at Law                 Jenna Johnson
 9    KLASS STOIK MUGAN
      VILLONE PHILLIPS
10    4280 Sergeant Road
      Suite 290
11    Sioux City, Iowa 51102-0327

12    MS. KRISTIN M. LYNCH            For Defendant
      MR. TIM DOLAN                   Douglas County
13    DEPUTY DOUGLAS COUNTY ATTORNEYS
      1819 Farnam Street
14    #LC2
      Omaha, Nebraska 68183
15

16

17

18

19

20

21

22

23

24

25
```

```
 1          A.   No.

 2          Q.   All right.  So my understanding is

 3     that you did go home that day, on Sunday, the

 4     5th, correct?

 5          A.   Yes.

 6          Q.   And you apparently had a conversation

 7     with your mother regarding this incident?

 8          A.   Yes.

 9          Q.   And did that provoke a phone call to

10     the police department?

11          A.   Not that conversation, no.

12          Q.   Am I correct in understanding it

13     wasn't until you had a conversation with your

14     father, apparently by telephone that evening,

15     that you made a decision to -- I believe it was

16     to call the telephone -- I think it's reporting

17     line or something like that?

18          A.   Yes.

19          Q.   And at that point in time -- was that

20     on June 5th or June 6th when you talked to your

21     dad?

22          A.   It was on Sunday.

23          Q.   That would be the 5th?

24          A.   The 5th, yes.

25          Q.   In the evening?
```

Page 18

```
 1          A.   Yes.
 2          Q.   And when did you make that phone call
 3   to the PRU line or whatever it's called?
 4          A.   Immediately after talking to my dad.
 5          Q.   And that must have been in the
 6   evening, then?
 7          A.   Yes.
 8          Q.   Do you know approximately what time
 9   it was?
10          A.   I have no idea.
11          Q.   And that is the first time that we --
12   that you mention to anyone, at least as far as
13   the reports that we have go, of any type of an --
14   I believe you reported an attempted rape?
15          A.   I don't remember what I said on that
16   report of mine.
17          Q.   And to the -- apparently you were
18   transferred then to 911?
19          A.   Correct.
20          Q.   And is it the next day, then, the
21   6th, that officers come and interview you at your
22   home?
23          A.   Yes.
24          Q.   So the first indication we have of
25   anything dealing with a rape charge is the
```

Page 33

1           MR. PHILLIPS:  Object, foundation.

2      Q.   Go ahead and answer.

3           MR. THELEN:  Same objection.

4      A.   Not that I know of.

5      Q.   You didn't provide them any other

6  information of conduct between you and Mr. Young

7  of that morning?

8      A.   No.

9      Q.   Okay.  That's all I'm trying -- I

10 just want to know what the police knew, what you

11 had conveyed to the police at the time the arrest

12 warrant was issued, and nothing more than what

13 they would have gotten out of the Project Harmony

14 interview?

15     A.   Is that a question?

16     Q.   Yes.

17     A.   Yes.

18     Q.   So if I look at the Project Harmony

19 interview, then I know what the police knew at

20 the time they determined that an arrest warrant

21 was appropriate?

22          MR. PHILLIPS:  Object to the form.

23     A.   I believe so.

24     Q.   Okay.  Am I correct in understanding

25 that up to the point Mr. Young was arrested in

Page 34

```
 1    August of 2005, it was your desire that Mr. Young

 2    be arrested for first degree sexual assault?

 3         A.    I wanted him to be held accountable.

 4    I had no say in what charges would be pressed.

 5         Q.    I didn't indicate -- I'm not -- the

 6    question didn't indicate that you had any say in

 7    it, but the question was:  You wanted him charged

 8    with first degree sexual assault?

 9         A.    Yes.

10              MR. PHILLIPS:  I think she's

11    answered that.

12         A.    I just answered it.

13         Q.    And the answer is?

14         A.    The answer is I had no control over

15    what charges they pressed, but, yes, I wanted him

16    held responsible for what had happened.  I wanted

17    him to be arrested, yes.

18         Q.    You wanted him to be charged?

19         A.    Yes.

20         Q.    And you wanted him to, at least,

21    endure the prosecution for those charges,

22    whatever the police and county attorney decided?

23         A.    Yes.

24         Q.    Did you want him to also go to jail?

25         A.    I don't know.
```

1          Q.    Never thought about it up to that

2     point in time?

3          A.    No.

4          Q.    And up to this point in time, you're

5     not telling the truth, are you?

6                MR. PHILLIPS:  Up to what point in

7     time?

8          Q.    Up until August of 2005 when

9     Mr. Young is arrested, you were not telling the

10    police the truth; is that correct?

11         A.    I did not tell them the truth about

12    the oral sex, correct.

13         Q.    You actually told them that you had

14    never touched his penis also, correct?

15         A.    Correct.

16         Q.    That wasn't truthful, was it?

17         A.    No, it was not truthful.

18         Q.    Not that you would have any

19    knowledge, but I will ask the question and you

20    can tell me that you have no idea if that such is

21    the answer, but do you have any idea why a tape

22    recorder utilized for the one-party consent call

23    would be able to record your question to

24    Mr. Young but not his answer and do that three

25    more times after that?

Page 58

1     time she had to get contact information for one

2     of my friends, and then she called me after David

3     was arrested, and then another time after that

4     with a request from Creighton.  That's all the

5     times I remember.

6          Q.   Well, in 2006 did she call you any

7     time in June or July regarding an ongoing

8     investigation?

9          A.   No.

10         Q.   So you couldn't have provided her

11    with any information with regard to a search

12    warrant or an affidavit for a search warrant that

13    got issued in that time period?

14         A.   No.

15         Q.   Did you know that there was going to

16    be a search warrant issued?

17         A.   No.

18         Q.   Did you know when David Young was

19    going to be arrested?

20         A.   No.

21         Q.   Did you know that he was going to be

22    arrested?

23         A.   No.

24         Q.   So you were not advised that an

25    arrest warrant was sworn out and filed?

Page 59

1        A.   No.

2            Q.   And you weren't aware that an arrest

3    warrant was signed by the -- by the county court?

4        A.   No.

5            Q.   Were you aware of the county

6    attorney's office activities in attempting to

7    subpoena David Young's -- David Young's records

8    from Creighton?

9        A.   No.

10           Q.   Well, were you aware of information

11   that was to be disclosed -- that was disclosed by

12   the Omaha Police Department upon Mr. Young's

13   arrest?

14       A.   I'm sorry.  What was the question?

15           Q.   Did you know what information the

16   Omaha Police Department disclosed at the time of

17   Mr. Young's arrest?

18       A.   To the general public?

19           Q.   Yes.

20       A.   No.

21           Q.   Were you aware that KETV was going to

22   run a news report on the arrest?

23       A.   No.

24           Q.   Did you know -- I think it was July

25   2006 there was a search warrant that was -- a

Page 61

1    knowledge of any attempts by anyone to assure

2    that David Young did not get admitted to

3    Creighton Law School?

4        A.   No.

5        Q.   Were you aware that Mr. Young had

6    been arrested on a traffic citation on July 30 of

7    2006?

8        A.   No.

9        Q.   Did anybody provide you any

10   information or make any statements to you that

11   there were other claims of sexual assaults by

12   David Young?

13       A.   Yes.

14       Q.   Who was that?

15       A.   Desiree Shipman.

16       Q.   What did she say?

17       A.   When I first talked to her, I said

18   that my whole reason for reporting this was that

19   I had heard from other girls at Creighton that

20   David was known to assault women and that this

21   had happened before and that he hadn't been held

22   responsible for it, and she said, yes, I know, we

23   have a whole file on him.

24       Q.   Well, let me pick up on that subject.

25   What information did you have and who did you get

Page 64

1    student file.  These weren't just abstract

2    claims, that there were concrete prior incidences

3    that they were going to try to use in my case,

4    but they didn't know if they would be able to,

5    but they really kept me out of the loop.  I had

6    no idea.

7         Q.   You have no more specifics than that?

8         A.   Exactly.

9         Q.   That's what I was asking.  There's an

10   allegation in the Complaint with regard to a

11   higher up at the World-Herald.  Are you familiar

12   with that?

13        A.   Yes.

14        Q.   Is there any such higher up, to your

15   knowledge?

16        A.   To my knowledge, no.

17        Q.   All right.  Let's go back to your

18   answers to discovery.  I believe we've already

19   completed Circo.  You didn't talk to her much

20   after the initial investigation.

21        Who is Lynn Safranek?

22        A.   She's a police reporter at the

23   World-Herald.

24        Q.   Your Answers to Interrogatories

25   indicate that you talked to her.

1    that was taken against your son was.  Schmeling

2    said she couldn't tell me, that I had to call

3    Bones.  I called Amy Bones and she told me that

4    they couldn't release that information.

5           Q.   Is that the only time you talked to

6    her?

7           A.   As far as I remember, yes.

8           Q.   Your Answers to Interrogatories

9    indicate you may have talked to others which you

10   then didn't recall.  Is there anybody else you

11   recall, as you sit here today, talking to about

12   this incident, Mr. Young's application for

13   admission to Creighton Law School, the

14   prosecution, charges, et cetera?

15          A.   Not that I can think of.

16              MR. YOUNG:  Can we take about a

17   five- or ten-minute break?

18              MR. PHILLIPS:  Sure.

19              (A short recess was taken.)

20              MR. YOUNG:  Okay.  Back on the

21   record.

22          Q.   Mrs. Johnson -- Ms. Johnson, you had

23   no idea that Officer Circo was going to attempt

24   to obtain a search warrant, a no-knock search

25   warrant on Creighton University prior to it

1    occurring?

2          A.    Right.  I had no idea.

3          Q.    Do you know when you might have found

4    out about it?  Well, did you find out about it?

5          A.    No -- or when?

6          Q.    Well, did you find out that there was

7    a search warrant served on Creighton to obtain

8    David Young's records?

9          A.    No, I didn't know that.

10         Q.    Okay.  But I believe in the prior

11   testimony you indicated that one of the

12   prosecutors said they had gotten records from

13   Creighton?

14         A.    I don't know how they got those.

15         Q.    I'm not indicating you did.

16         A.    Right.  I knew that they had them.

17         Q.    All right.  And just for the record,

18   you aren't going to provide any information --

19   testimony with regard to any information that

20   Mr. Cox has provided to you based on

21   attorney-client privilege; is that correct?

22         A.    Yes.

23         Q.    And I'm dealing with questions -- or

24   I would be dealing with questions -- strike that.

25         I would be asking questions dealing with

Page 81

1    that you had identified the correct individual in

2    David Young when you spoke with the prosecutors,

3    Sandy Denton and Matt Kahler?

4         A.   No.

5         Q.   Now, there was questioning earlier on

6    with respect to Exhibits 1, 2 and 3.  I would ask

7    you to pick those up, if you don't mind.  I'm

8    going to run through each one of those.

9    Specifically I'd like to talk with you about the

10   touching that is described in Exhibits 1, 2 and 3

11   that you have been questioned about and actual

12   penetration that is mentioned in subsequent

13   reports.

14        When you first spoke with security personnel

15   from Creighton, for instance, in Exhibit No. 1,

16   were you -- when you said there was sexual

17   touching, can you tell us what you meant by that?

18   Do you know, when you first spoke with them, what

19   you meant by "touching"?

20        A.   By "touching" I meant that he was

21   putting his fingers inside my vagina.

22        Q.   Do you know if you were ever asked

23   during the trial how you had defined "touching"

24   when you were making these original reports?  Did

25   anybody ever ask you that?

Page 82

1          A.    No.

2          Q.    Did the prosecutors ever ask you

3     that?

4          A.    I don't remember.

5          Q.    Looking at page 2 of Exhibit No. 1,

6     two sentences in, there's a sentence:  She does

7     not believe that he ever penetrated her or ever

8     successfully forced intercourse.

9          Do you remember making that statement to the

10    security officers at Creighton?

11         A.    I remember them -- I remember them

12    asking just point blank was there penetration.

13         Q.    And was that after you told them he

14    had his pants off?

15         A.    Yes.

16         Q.    Do you understand them to be asking

17    if he had penetrated with his penis?

18         A.    That's all I thought it could mean.

19         Q.    So it's your recollection, and I'm

20    asking at the time, if you remember, of that

21    statement on page 2 of Exhibit No. 1, that she

22    does not believe that he ever penetrated her or

23    ever successfully forced intercourse, is it your

24    recollection that you meant that he had not

25    penetrated you with his penis?

Page 83

1          A.    Exactly.

2          Q.    Were you excluding digital

3     penetration when you told officers that or were

4     you just not asked?

5                MR. YOUNG:  Counsel, I'm going to

6     object to the questions as being leading.

7                MR. DOLAN:  It's cross-examination.

8                MR. YOUNG:  You may consider it

9     cross, I consider it not cross because of the

10    relationship with the defendant, but I just want

11    to make my objection for the record.

12               MR. DOLAN:  The objection is duly

13    noted.

14               MR. YOUNG:  Thank you.

15         Q.    Did you understand my question?

16         A.    Ask it again.

17         Q.    Were you ruling out digital

18    penetration when you spoke with the security

19    officers from Creighton?

20               MR. YOUNG:  Same objection.

21         A.    Yes -- or I -- I thought when they

22    said penetration, they only meant with a penis.

23    I didn't think that digital was included in that.

24         Q.    Did you ever ask them -- did you ever

25    make any effort --

Page 84

1          A.   No.

2          Q.   -- to make sure you were all on the

3     same page?

4          A.   Not really, no.

5          Q.   And did you think when you spoke of

6     touching that that encompassed digital

7     penetration?

8          A.   Yes.

9          Q.   At some point was the difference

10    between touching and penetration explained to

11    you?

12         A.   Yes.

13         Q.   And do you remember who explained

14    that to you?

15         A.   Well, when the police reporting line

16    called me back, the woman asked me what happened,

17    and I said, well, I woke up and he was touching

18    me.  She said, well, where was he touching you?

19    Where were his fingers?  What was he doing?  And

20    then I told her, and she said, ma'am, that is a

21    sexual assault and I'm going to dispatch you

22    through to 911.

23         Q.   And that was after contacting the

24    Omaha Police Department?

25         A.   Right.

# Excerpts From Deposition of Angie Circo
# *Young v. Dornan, et al.*
# July 17, 2009

EXHIBIT
O

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

DAVID J. YOUNG,                    )
                                  ) Case No.
              Plaintiff,          ) 8:07-CV-00265
                                  )
      v.                          )
                                  )
STUART J. DORNAN,                 )
individually and in his           )
official capacity; DOUGLAS        )
COUNTY, NEBRASKA, a               )
political subdivision of the      )
State of Nebraska, et al.,        ) TAKEN IN BEHALF
                                  ) OF PLAINTIFF
              Defendants.         )


DEPOSITION OF ANGIE CIRCO, taken at

9:03 a.m. on July 17, 2009, by Alvin J. Thibault,

RPR, CSR and General Notary Public in and for the

State of Nebraska, taken at the City Attorney's

Office, 804 Omaha/Douglas Civic Center, 1819

Farnam Street, Omaha, Nebraska.

```
 1    APPEARANCES:

 2
      MR. THOMAS J. YOUNG           For Plaintiff
 3    Attorney at Law
      2433 South 130th Street
 4    Omaha, Nebraska 68144-2528

 5    MR. ALAN M. THELEN            For Defendant
      MR. TIMOTHY G. HIMES, SR.     City of Omaha
 6    Assistant City Attorneys
      804 Omaha/Douglas Civic Center
 7    1819 Farnam Street
      Omaha, Nebraska 68183-0001
 8
      MR. DOUGLAS L. PHILLIPS       For Defendant
 9    Attorney at Law               Jenna Johnson
      KLASS STOIK MUGAN
10    VILLONE PHILLIPS
      4280 Sergeant Road
11    Suite 290
      Sioux City, Iowa 51102-0327
12
      MS. KRISTIN M. LYNCH          For Defendant
13    MR. TIM DOLAN                 Douglas County
      Deputy Douglas County Attorneys
14    1819 Farnam Street
      #LC2
15    Omaha, Nebraska 68183

16

17

18

19

20

21

22

23

24

25
```

1    A.   I don't remember.

2    Q.   You don't remember making any?

3    A.   No, I don't.

4         MR. YOUNG:  Okay.  I don't have any

5    further questions.

6              CROSS-EXAMINATION

7    BY MR. PHILLIPS:

8    Q.   With respect to the gaps in the tape,

9    do you have any reason to suspect that Jenna

10   Johnson was responsible in any way for causing

11   those gaps to appear?

12   A.   No.

13   Q.   What was -- first of all, what was

14   the charge, if it was, for which David Young was

15   arrested?

16   A.   It was first degree sexual assault.

17   Q.   And what is it that you believe he

18   did that amounted to first degree sexual assault?

19   A.   Penetration without consent.

20   Q.   There has been much discussion about

21   Jenna's lack of candor with respect to consensual

22   oral sex.  Did the issue of whether she did or

23   didn't have consensual oral sex have anything to

24   do with the reasons for the arrest?

25   A.   No.

1        Q.    Jenna was not candid with you about

2     whether there was or wasn't oral sex, correct?

3        A.    Correct.

4        Q.    If she didn't tell you the truth

5     about that, why did you think she was telling the

6     truth about anything else?

7        A.    Based on the fact that I have been in

8     law enforcement for a long time.  It's not

9     uncommon for any person, whether it's the victim,

10    suspect, witness to leave out information and all

11    of that is taken into consideration; but based on

12    the fact that she did complete the one-party

13    consent phone call and there were statements made

14    by David Young indicating that he had penetrated

15    her vaginally without her consent, I did believe

16    what she said.

17       Q.    You were shown, I believe, Exhibits 1

18    and 2, but you were shown documents ostensibly

19    prepared by Creighton security in which the

20    authors say that Jenna told them there was no

21    penetration.  In the depositions of Mr. Kahler

22    and Ms. Denton and Ms. Johnson, did you then

23    explain that Jenna thought penetration meant with

24    a penis?  Based on the experience that you just

25    described in investigating these types of cases,

1   is that an explanation that's relatively common?

2              MR. YOUNG:  Objection, form and

3   foundation.  Go ahead.

4       A.   It's very common.

5       Q.   Is that the kind of interpretation

6   that you frequently see victims use when they

7   answer questions?

8       A.   Yes.

9       Q.   If you knew everything you know today

10  from every source of information that has been

11  available to you since the trial of the criminal

12  case, would you still have served an arrest

13  warrant on August of 2005?

14             MR. YOUNG:  Objection, form and

15  foundation.

16      A.   Yes.

17             MR. PHILLIPS:  That's all I have.

18  Thank you.

19             FURTHER CROSS-EXAMINATION

20  BY MS. LYNCH:

21      Q.   Officer Circo, I'm Kristin Lynch from

22  the County Attorney's Office.

23      First, you've read the Complaint that's been

24  filed against you by Tom Young, haven't you?

25      A.   Yes.

1    in some of those reports, correct, or about

2    the -- about the actual allegation?

3         A.   Right.  Yes, that's correct.

4         Q.   But you were not able to verify any

5    of the information she gave to you against the

6    reports, correct?

7         A.   Right.

8         Q.   You've been asked multiple times if

9    the information that you now know that was

10   contained in those reports would have -- would

11   have affected your investigation and you've

12   previously answered yes.  Could you please tell

13   us exactly how that information would have

14   affected your investigation?

15        A.   Regarding anything involving

16   Creighton or --

17        Q.   Specifically, I think -- I think we

18   can narrow it down to I think it was -- it was --

19   dealt with whether or not there was penetration

20   and Jenna indicating there was not and whether or

21   not she was asleep.

22        A.   Basically I would have -- if I had

23   this information, I would have specifically asked

24   her.  You know, maybe she didn't understand the

25   question, maybe she wasn't familiar with what --

1    what penetration actually was.  So I would have

2    discussed it further with her.

3         Q.    Even knowing what you know now,

4    what's contained in those reports, do you think

5    that that would have affected your probable cause

6    determination?

7              MR. YOUNG:  Form and foundation.

8    Objection.

9         A.    Can you reask that question?

10        Q.    Knowing now that there may have

11   been -- that initially Jenna may not have

12   reported penetration or that Jenna may have

13   indicated that she was awake and then with all of

14   your investigations that you've performed, would

15   that have made any -- would that have influenced

16   your probable cause determination?

17             MR. YOUNG:  Objection, form and

18   foundation.

19        A.    No.

20        Q.    And just to reiterate, when I speak

21   of the Douglas County defendants, I'm talking

22   about Sandra Denton, Matt Kahler and Stu Dornan

23   or anybody from Douglas County, for that matter,

24   did any of the Douglas County defendants have any

25   involvement in the pre-arrest investigation?

# Excerpts From Deposition of Jenna Johnson
## *State v. Young*
# Doc. 167 No. 952
# March 17, 2006

EXHIBIT
  P

Page 1

1      IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

2   STATE OF NEBRASKA,          ) DOC. 167 NO. 192
                                )
3             PLAINTIFF,        ) DEPOSITION OF
                                ) JENNA R. JOHNSON
4   VS.                         )
                                ) TAKEN ON BEHALF OF
5   DAVID YOUNG,                ) DEFENDANT
                                )
6             DEFENDANT.        )
    - - - - - - - - - - - - - - - - - - - - - - - - -

7

8

9             DEPOSITION OF JENNA R. JOHNSON, taken

10   before Cynthia Craig, General Notary Public within

11   and for the State of Nebraska, beginning at

12   9:30 a.m., on March 17, 2006, at the Douglas County

13   Attorney's Office - Civil, 909 Civic Center,

14   1819 Farnam Street, Omaha, Nebraska.

15

16

17

18

19

20

21

22

23                    COPY

24

25

Page 2

```
 1                    A P P E A R A N C E S

 2    FOR THE PLAINTIFF:
      MS. SANDRA LEE DENTON (#20486)
 3    MR. MATTHEW R. KAHLER (#22431)
      DOUGLAS COUNTY ATTORNEY
 4    100 Hall of Justice
      1701 Farnam Street
 5    Omaha, Nebraska  68183
      (402)444-7040  FAX 444-6787
 6
      FOR THE DEFENDANT:
 7    MR. JAMES MARTIN DAVIS (#10927)
      DAVIS & FINLEY LAW OFFICE
 8    1623 Farnam Street, Suite 500
      Omaha, Nebraska  68102
 9    (402) 341-9900  FAX 341-8144

10    ALSO PRESENT:
      Ms. Jenny Young
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

J. JOHNSON - Direct (By MR. DAVIS)

Page 61

1   shirt off and then we kind of cooled things down for

2   a little bit and talked, and then, um, you know, we

3   started kissing again, um, he brought up with the

4   whole sex thing again, he brought --

5       Q.   Wait a minute, wait a minute.  What do you

6   mean he brought up the whole sex thing again?

7       A.   Oh, just saying, you know, I mean are you

8   sure you don't want to have sex, you know.

9       Q.   But he knew you were on your period though

10  by this time, didn't he?

11      A.   I had told him that, but I don't know if

12  he believed me or not.

13      Q.   Okay.  Then go on.

14      A.   Um, and then, um, you know, just continued

15  kissing and he offered to, you know -- he -- you

16  know, said -- you know, offered to give me oral sex,

17  and, you know, I reminded him, you know, no, you

18  know, I'm on my period, you know, I don't think you

19  want to do that, and um, you know, he asked me, um,

20  you know, if I would give him a blow job, and, you

21  know, after some talking and things like that, um, I

22  did give him a blow job, and, um, you know, it was

23  just really -- it wasn't an all out one, it was just

24  a couple times, and then I have a pretty bad gag

25  reflex and said, you know, I'm really not enjoying

# Excerpts From Deposition of Sandra Denton
# *Young v. Dornan, et al.*
# July 15, 2009

EXHIBIT
Q

```
        IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF NEBRASKA

DAVID J. YOUNG,                 )
                                ) Case No.
                 Plaintiff,     ) 8:07-CV-00265
                                )
        v.                      )
                                )
                                )
STUART J. DORNAN,               )
individually and in his         )
official capacity; DOUGLAS      )
COUNTY, NEBRASKA, a             )
political subdivision of the    )
State of Nebraska, et al.,      ) TAKEN IN BEHALF
                                ) OF PLAINTIFF
                 Defendants.    )
```

            DEPOSITION OF SANDRA DENTON, taken at

10:50 a.m. on July 15, 2009, by Alvin J.

Thibault, RPR, CSR and General Notary Public in

and for the State of Nebraska, taken at the City

Attorney's Office, 804 Omaha/Douglas Civic

Center, 1819 Farnam Street, Suite 800 Omaha,

Nebraska.

Page 2

```
 1     APPEARANCES:

 2

       MR. THOMAS J. YOUNG              For Plaintiff
 3     Attorney at Law
       2433 South 130th Street
 4     Omaha, Nebraska 68144-2528

 5     MR. ALAN M. THELEN              For Defendant
       MR. TIMOTHY G. HIMES, SR.       City of Omaha
 6     Assistant City Attorney
       804 Omaha/Douglas Civic Center
 7     1819 Farnam Street
       Omaha, Nebraska 68183-0001
 8

       MR. DOUGLAS L. PHILLIPS         For Defendant
 9     Attorney at Law                 Jenna Johnson
       KLASS STOIK MUGAN
10     VILLONE PHILLIPS
       4280 Sergeant Road
11     Suite 290
       Sioux City, Iowa 51102-0327
12

       MS. KRISTIN M. LYNCH            For Defendant
13     MR. TIM DOLAN                   Douglas County
       DEPUTY DOUGLAS COUNTY ATTORNEYS
14     1819 Farnam Street
       #LC2
15     Omaha, Nebraska 68183

16

17

18

19

20

21

22

23

24

25
```

1     action?

2            A.   Yes.

3                 MR. YOUNG:  Well, Counsel, if you

4     give me five or ten minutes, I'll tell you

5     whether or not I'm going to be done.  I think I

6     am.  Is that acceptable?

7                 MR. PHILLIPS:  Sure.

8                 (A short recess was taken.

9                 MR. YOUNG:  Ready?  I don't have any

10    further questions.

11                 CROSS-EXAMINATION

12    BY MR. PHILLIPS:

13           Q.   I do.  If Jenna had been completely

14    and consistently candid and truthful with the

15    police about consensual oral sex and you had

16    known what you knew from the charge packet, if

17    that's what you called it, would you still have

18    filed this charge?

19                 MR. YOUNG:  Okay.  I've got an

20    objection on foundation and form, and the form

21    I'm not -- I've got the foundation, but go ahead

22    and answer.

23           A.   Yes.

24           Q.   Would you still have tried the case?

25           A.   Yes.

1        Q.   You described a meeting that took

2    place between you, Mr. Dornan and Thomas Young at

3    which --

4        A.   Yes.

5        Q.   -- Mr. Young explained why you

6    shouldn't proceed with this matter?

7        A.   Yes.

8        Q.   Other than Thomas Young, did anyone

9    from anywhere ever apply any kind of pressure in

10   either direction with respect to your pursuit of

11   this case?

12            MR. YOUNG:  And I'm going to have an

13   objection on foundation.

14       A.   No.

15       Q.   Thomas Young tried to convince you to

16   drop the matter?

17       A.   Tried to convince Mr. Dornan.

18       Q.   I'm sorry, tried to convince

19   Mr. Dornan to drop the matter.  No one ever tried

20   to convince you to pursue it?

21       A.   That's correct.

22            MR. PHILLIPS:  I don't have any

23   other questions.

24

25

# Excerpts From Deposition of Matthew Kahler
# *Young v. Dornan, et al.*
# June 29, 2009

EXHIBIT
R

1

```
 1            IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEBRASKA
 2
     DAVID J. YOUNG,                    ) Civil No.
 3                                      ) 8:07 CV 265
               Plaintiff,               )
 4                                      )
                                        )
 5              v.                      )
                                        )
     STUART J. DORNAN, individually     )
 6   and in his official capacity;      )
     DOUGLAS COUNTY, NEBRASKA,          )
 7   a political subdivision of the     )
     State of Nebraska, et al.,         )
 8                                      ) TAKEN ON
               Defendants.              ) BEHALF OF
 9   _____) PLAINTIFF

10

11

12

13

14

15

16

17

18

19

20            DEPOSITION OF MATTHEW KAHLER, taken at

21   2:06 p.m. on June 29th, 2009, by Shannon L. Brack,

22   RPR, CCR, CSR, and General Notary Public in and

23   for the State of Nebraska, at 909 Civic Center,

24   Omaha, Nebraska.

25
```

                  THIBAULT, SUHR & THIBAULT, INC.
                  Omaha, Nebraska   (402) 331-2500

2

```
 1   APPEARANCES:

 2   Mr. Thomas J. Young          For Plaintiff
     Attorney at Law
 3   2433 South 130th Circle
     Omaha, Nebraska 68144
 4
     Mr. Timothy K. Dolan         For Douglas County
 5   Ms. Kristin M. Lynch
     Attorneys at Law
 6   DEPUTY COUNTY ATTORNEYS
     909 Civic Center
 7   Omaha, NE 68183

 8   Mr. Alan M. Thelen           For City of Omaha
     Attorney at Law
 9   DEPUTY CITY ATTORNEY
     1819 Farnam Street, Suite 804
10   Omaha, NE 68183

11   Mr. Douglas L. Phillips      For Jenna Johnson
     Attorney at Law
12   KLASS LAW FIRM, L.L.P.
     4280 Sergeant Road
13   Mayfair Center, Suite 290
     Sioux City, IA 51106
14
     Also Present:  Brian Gough
15                  Ruth Horvatich

16

17

18

19

20

21

22

23

24

25
```

THIBAULT, SUHR & THIBAULT, INC.
Omaha, Nebraska  (402) 331-2500

1                    FURTHER CROSS-EXAMINATION

2    BY MR. PHILLIPS:

3         Q.    These questions may be borne more out

4    of ignorance of the criminal procedure in Nebraska

5    than anything, but does a victim get to decide if

6    a case proceeds to trial?

7         A.    No.

8         Q.    So it wasn't up to Jenna?

9         A.    No.  As soon as the report is made,

10   it's in the hands of the police officers, and then

11   from there it was -- the police officers went for

12   an arrest warrant, the judge signs off on that,

13   the prosecutors made a decision to charge it.  It

14   is not up to an alleged victim on whether or not

15   to press charges, per se, at that point.

16              MR. PHILLIPS:  That's all I have.

17   Thank you.

18              FURTHER CROSS-EXAMINATION

19   BY MR. THELEN:

20        Q.    Mr. Kahler, as I mentioned, my name's

21   Alan Thelen.  I'm with the Omaha City Attorney's

22   Office, and I just have a few questions for you.

23   I think you testified that you didn't have any

24   communications at any time with Teresa Negron?

25        A.    That's correct.

REDIRECT - KAHLER (Young)                                    170

1    her prior to trial, I can't answer whether or not

2    we would have pursued it because it would depend

3    on how strong -- some of the evidence would still

4    come in with respect to David Young and the other

5    witnesses.  So it would have certainly made our

6    case weaker if the alleged victim did not testify

7    at the time of a sexual assault trial.  That does

8    not necessarily mean that we would have dismissed.

9    I've tried cases victimless before, as long as

10   there were other pieces of evidence that would

11   corroborate it.  Would we have gone forward in

12   this particular case, I don't know.

13        Q.    Was there any other witness who could

14   have provided any evidence with regard to the

15   alleged sexual assault besides Jenna Johnson?

16        A.    Again, based on David's interview with

17   Sergeant Reyes and the taped conversation, there

18   were certain statements, in my opinion, in both of

19   those that corroborated Jenna Johnson's statements

20   that, again, could have been presented at trial

21   without Jenna Johnson present.

22        Q.    So only David Young?

23        A.    And the statements of the -- the prior

24   statements made by Jenna Johnson to other

25   individuals, whether they be law enforcement or

                        THIBAULT, SUHR & THIBAULT, INC.
                        Omaha, Nebraska  (402) 331-2500

# Defendant Jenna R. Johnson's Answer and Jury Demand

EXHIBIT
S

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DAVID J. YOUNG,<br><br>                    Plaintiff,<br><br>vs.<br><br>STUART J. DORAN,  individually and in his official capacity;  DOUGLAS COUNTY, NEBRASKA A political subdivision of the State of Nebraska;  CITY OF OMAHA, A political subdivision of the State of Nebraska;<br>JENNA R. JOHNSON;<br>SANDRA L. DENTON, individually and in her official capacity;  MATTHEW R. KAHLER, Individually and his official capacity;  ANGIE CIRCO, individually and in her official capacity;  ALAN REYES, individually as in his official capacity;  TERESA NEGRON, individually and in her official capacity;  JOHN DOE #1, real and true name unknown;  JANE DOE #1, real and true name unknown,<br><br>                    Defendants. | CASE NO. 8:07-cv-00265<br><br><br><br>**DEFEDNANT<br>JENNA R. JOHNSON'S ANSWER<br>AND JURY DEMAND** |

COMES NOW Defendant, Jenna R. Johnson, and for her Answer to Plaintiff's

Complaint, states as follows:

## **PRELIMINARY STATEMENT**

1.      Paragraph one is denied for lack of sufficient information to form a belief as

to the truth of the matters asserted.

2.      Paragraph two is denied for lack of sufficient information to form a belief as

to the truth of the matters asserted.

3.      Paragraph three is denied for lack of sufficient information to form a belief as to the truth of the matters asserted.

4.      Defendant admits that William R. Johnson is her father and Bridgette Johnson is her mother, and that her father and mother live in Omaha, Nebraska.  The remainder of paragraph four is denied for lack of sufficient information to form a belief as to the truth of the matters asserted.

5.      Paragraph five is denied for lack of sufficient information to form a belief as to the truth of the matters asserted.

## PRELIMINARY ALLEGATIONS

6.      Paragraph six is denied.

7.      Paragraph seven is denied.

8.      Paragraph eight is denied.

9.      Paragraph nine is denied.

10.      Paragraph ten is denied for lack of sufficient information to form a belief as to the truth of the matters asserted.

11.      Paragraph eleven is denied.

12.      Paragraph twelve is denied for lack of sufficient information to form a belief as to the truth of the matters asserted.

13.      Paragraph thirteen is denied for lack of sufficient information to form a belief as to the truth of the matters asserted.

14.      Paragraph fourteen is denied for lack of sufficient information to form a belief as to the truth of the matters asserted.

15.      Paragraph fifteen is denied.

KLASS LAW FIRM,
L.L.P.

2

16.     Paragraph sixteen is denied.

17.     Paragraph seventeen is denied for lack of sufficient information to form a belief as to the truth of the matters asserted.

18.     Paragraph eighteen is denied for lack of sufficient information to form a belief as to the truth of the matters asserted.

19.     Paragraph nineteen is denied for lack of sufficient information to form a belief as to the truth of the matters asserted.

20.     Paragraph twenty is denied for lack of sufficient information to form a belief as to the truth of the matters asserted.

21.     Paragraph twenty-one is denied for lack of sufficient information to form a belief as to the truth of the matters asserted.

22.     Paragraph twenty-two is denied.

23.     Paragraph twenty-three is denied for lack of sufficient information to form a belief as to the truth of the matters asserted.

24.     Paragraph twenty-four is denied.

25.     Paragraph twenty-five is denied.

26.     Paragraph twenty-six is denied.

27.     Paragraph twenty-seven is denied for lack of sufficient information to form a belief as to the truth of the matters asserted.

## **FIRST CAUSE OF ACTION**

### **(42 U.S.C. § 1983)**

28.     Defendant incorporates her answers to paragraphs one - twenty-seven of the Complaint.

29.     Paragraph twenty-nine is denied.

30.     Paragraph thirty is denied.

31.     Paragraph thirty-one is denied.

32.     Paragraph thirty-two is denied.

WHEREFORE, Defendant prays for dismissal of the Complaint, and for her costs.

## SECOND CAUSE OF ACTION

### (State Claim - False Imprisonment)

33.     Defendant incorporates her answers to paragraphs one - twenty-seven of the Complaint.

34.     Paragraph thirty-four is denied.

35.     Paragraph thirty-five is denied.

36.     Paragraph thirty-six is denied.

WHEREFORE, Defendant prays for dismissal of the Complaint, and for her costs.

## THIRD CAUSE OF ACTION

### (State Claim - Malicious Prosecution)

37.     Defendant incorporates her answers to paragraphs one - twenty-seven of the Complaint.

38.     Paragraph thirty-eight is denied.

39.     Paragraph thirty-nine is denied.

40.     Paragraph forty is denied.

WHEREFORE, Defendant prays for dismissal of the Complaint, and for her costs.

**KLASS LAW FIRM, L.L.P.**

## **FOURTH CAUSE OF ACTION**

### **(State Claim - Abuse of Process)**

41.     Defendant incorporates her answers to paragraphs one - twenty-seven of the Complaint.

42.     Paragraph forty-two is denied.

43.     Paragraph forty-three is denied.

WHEREFORE, Defendant prays for dismissal of the Complaint, and for her costs.

## **AFFIRMATIVE DEFENSES**

1.     The Complaint fails to state a claim for relief against Jenna R. Johnson.

2.     Jenna R. Johnson is immune from suit.

3.     The actions about which plaintiff complains were based on the existence of probable cause.

4.     Jenna R. Johnson was not acting under color of law and is not a proper defendant in a claim under 42 U.S.C. § 1983.

5.     There was no agreement between Jenna R. Johnson and any other defendant so as to support a claim for conspiracy.

6.     Jenna R. Johnson acted in good faith.

7.     Any injury plaintiff suffered was a result of his own misconduct.

## **JURY DEMAND**

Defendant requests a jury trial.

Respectfully submitted,

Douglas L. Phillips
KLASS LAW FIRM, L.L.P.
Mayfair Center, Upper Level
4280 Sergeant Road, Suite 290
Sioux City, IA  51106
phillips@klasslaw.com
WWW.KLASSLAW.COM
712/252-1866
712/252-5822 fax

ATTORNEYS FOR DEFENDANT
JENNA JOHNSON

Copy to:
Thomas J. Young
2433 South 130th Circle
Omaha, NE  68144

George A. Thompson
1804 Collins Drive
Bellevue, NE  68005

Alan M. Thelen
Assistance City Attorney
804 Omaha / Douglas Civic Center
1819 Farnam Streeet
Omaha, NE  68183

Kristin M. Lynch
Deputy County Attorney's Office
Room 909, Civic Center
1819 Farnam Street
Omaha, NE  68183

**CERTIFICATE OF SERVICE**
The undersigned hereby certifies that a true
copy of the foregoing instrument was served
upon all parties to the above cause to each
of the attorneys of record herein at their
respective addresses disclosed on the pleading
on _____January 4, 2008_____

| | | |
|---|---|---|
| ___ U.S. Mail | ___ Facsimile | |
| ___ Hand Delivered | ___ Overnight Courier | |
| ___ Other _____ | X  ECF | |

Signature _____

KLASS LAW FIRM,
L.L.P.

6

# Defendants City of Omaha and Angie Circo, Allen Reyes, and Teresa Negron's. Johnson's Answer and Request For Jury Trial.

EXHIBIT
T

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DAVID J. YOUNG, | ) | **Case No. 8:07CV265** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ANSWER AND REQUEST** |
| | ) | **FOR JURY TRIAL** |
| STUART J. DORNAN, individually | ) | |
| and in his official capacity; | ) | |
| DOUGLAS COUNTY, NEBRASKA, | ) | |
| a political subdivision of the State of | ) | |
| Nebraska; CITY OF OMAHA, a | ) | |
| political subdivision of the State of | ) | |
| Nebraska; JENNA R. JOHNSON; | ) | |
| WILLIAM J. JOHNSON; | ) | |
| BRIDGETTE JOHNSON; SANDRA | ) | |
| L. DENTON, individually and in her | ) | |
| official capacity; MATTHEW | ) | |
| R. KAHLER, individually and in his | ) | |
| official capacity; JENNIFER | ) | |
| THOMPSON, individual and in her | ) | |
| Official capacity; ANGIE CIRCO, | ) | |
| individually and in her official capacity; | ) | |
| ALAN REYES, individually and in | ) | |
| his official capacity; TERESA | ) | |
| NEGRON, individually and in her | ) | |
| official capacity; JOHN DOE #1, | ) | |
| real and true name unknown; JANE | ) | |
| DOE #1, real and true name unknown, | ) | |
| | ) | |
| Defendants. | ) | |

COME NOW the Defendants City of Omaha and Angie Circo, Alan Reyes, and Teresa

Negron, and for their answer to the Plaintiff's Complaint state and allege as follows:

**Index Pg. -118-**

1.      Admit paragraph 3.

2.      Admit that the Defendants Circo, Reyes, and Negron are, respectively, a duly appointed officer, sergeant, and sergeant employed by the City of Omaha Police Department.

3.      Admit the first sentence of paragraph 6.

4.      Admit that on June 5, 2005, Defendant Jenna Johnson reported to Creighton University officials/employees that Plaintiff had sexually assaulted her.

5.      Admit that sometime on June 5 or 6, 2005, Defendant Johnson contacted the Omaha Police Department to report the sexual assault.

6.      Admit that on the morning of June 6, 2005, an officer of the Omaha Police Department met with the Defendant Johnson and the said Defendant reported a sexual assault with penetration, claiming she was an unwilling participant.

7.      Admit the first two sentences of paragraph 10.

8.      Admit that at some time the Defendant Johnson admitted to some degree of consensual sexual conduct with the Plaintiff.

9.      Admit the second sentence of paragraph 12.

10.      Admit that on August 18, 2005, the Defendant Circo signed a felony complaint for first degree sexual assault against the Plaintiff, and that shortly thereafter the Douglas County Court issued an arrest warrant for Plaintiff on the charge.

11.      Admit that on or about July 12, 2006, the Defendant Circo signed an affidavit and application for a search warrant for Creighton University for Plaintiff's records, and that the Douglas County Court signed such a search warrant.

12.      Admit paragraph 21.

13.     These Defendants do not possess sufficient information as to paragraphs 16, 18, 19, and 23, and therefore deny the same.

14.     Deny the remaining allegations contained in the Complaint, except those allegations which constitute admissions against Plaintiff's interest.

15.     Affirmatively allege:

a.      The said criminal complaint and warrants were supported by probable cause to believe that Plaintiff had committed a crime.

b.      The DNA obtained from Plaintiff with his consent was destroyed after Plaintiff's criminal trial on the charge at issue.

c.      With respect to the July 30, 2006, incident, Plaintiff was stopped with reasonable suspicion; and was convicted of the offense of operating a motor vehicle without a license, which constitutes res judicata and collateral estoppel.

d.      The individual Defendants Circo, Reyes, and Negron are entitled to qualified immunity.

e.      Plaintiff's three alleged causes of action fail to state claims upon which relief can be granted.

WHEREFORE, the Defendants City of Omaha, Angie Circo, Alan Reyes, and Teresa Negron pray that Plaintiff's Complaint be dismissed with prejudice, and that they be awarded their reasonable attorney's fees and court costs.

**REQUEST FOR JURY TRIAL IN OMAHA, NEBRASKA**

The said Defendants request trial by jury as to all issues so triable, in Omaha Nebraska.

CITY OF OMAHA, ANGIE CIRCO, ALAN REYES, and TERESA NEGRON, Defendants

s/Alan M. Thelen

By _____

ALAN M. THELEN, No. 17811
Assistant City Attorney
Attorney for Defendants
804 Omaha/Douglas Civic Center
1819 Farnam Street
Omaha, NE 68183
Phone:  (402) 444-5115
Fax:  (402) 444-5125
E-mail:  athelen@ci.omaha.ne.us

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of September, 2007, I electronically filed the foregoing **ANSWER AND REQUEST FOR JURY TRIAL** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Thomas J. Young, Esq., 2433 South 130th Circle, Omaha, NE 68144.

s/Alan M. Thelen_____

# Defendants Stuart J. Dornan, Sandra L. Denton,

# Matthew R. Kahler and Douglas County's Answer

EXHIBIT
U

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DAVID J. YOUNG, | ) |
| Plaintiff, | ) CASE NO. 8:07 CV 00265 |
| vs. | ) |
| STUART J. DORNAN, individually and in his | ) |
| official capacity; DOUGLAS COUNTY, | ) |
| NEBRASKA, a political subdivision of the State | ) |
| of Nebraska; CITY OF OMAHA, a political | ) |
| subdivision of the State of Nebraska; JENNA R. | ) |
| JOHNSON; WILLIAM J. JOHNSON; | ) **DEFENDANTS'** |
| BRIDGETTE JOHNSON; SANDRA L. DENTON, | ) |
| individually and in her official capacity; | ) **ANSWER** |
| MATTHEW R. KAHLER, individually and in his | ) |
| official capacity; JENNIFER THOMPSON, | ) |
| individually and in her official capacity; ANGIE | ) |
| CIRCO, individually and in her official capacity; | ) |
| ALAN REYES, individually and in his official | ) |
| capacity; TERESA NEGRON, individually and in | ) |
| her official capacity; JOHN DOE #1, real and true | ) |
| name unknown; JANE DOE #2, real and true name | ) |
| unknown | ) |
| Defendants. | ) |

COMES NOW Deputy County Attorney Kristin M. Lynch, and without waiving any right or objection of Defendants Stuart J. Dornan, former Douglas County Attorney, former Deputy Douglas County Attorney Sandra L. Denton, former Deputy Douglas County Attorney Matthew R. Kahler, and Douglas County, Nebraska, and for their answer to Plaintiff's Complaint, admit, deny and allege as follows:

1. Acknowledge the claimed basis of jurisdiction contained in Paragraph 1 of the Complaint, but deny that a proper claim has been stated under any of the alleged stated bases.

2. Admit the allegations contained in Paragraph 2 of the Complaint as they relate to jurisdiction of the First Cause of Action in the Complaint; but, deny the

1

**Index Pg. -123-**

allegations as they relate to jurisdiction in the Second, Third, and Forth Causes of Action in the Complaint.

3. Admit the allegations contained in Paragraph 3 of the Complaint.

4. Admit allegations contained in Paragraph 4 of the Complaint to the extent that at all times relevant to this action Stuart J. Dornan was the duly appointed County Attorney for Douglas County, Nebraska; Douglas County is a political subdivision of the State of Nebraska; at all times relevant to this action Sandra L. Denton was employed as an attorney in the office of the Douglas County Attorney; and at all times relevant to this action Matthew R Kahler was employed as an attorney in the office of the Douglas County Attorney.

5. Admit allegations contained in the first sentence of Paragraph 6 of the Complaint.

6. Admit that on June 5, 2005, Defendant Jenna Johnson reported to Creighton University officials/employees that Plaintiff had sexually assaulted her.

7. Admit that Plaintiff was arrested on August 24, 2005.

8. Admit allegations contained in Paragraph 18 of the Complaint.

9. Admit allegations contained in Paragraph 19 of the Complaint.

10. Admit allegations contained in Paragraph 21 of the Complaint.

11. Deny each and every allegation contained in Plaintiff's Complaint except those specifically admitted herein and those that constitute admissions by the Plaintiff.


AFFIRMATIVE DEFENSES


1. Affirmatively allege that the Plaintiff has failed to state a claim upon which relief may be granted under 42 U.S.C. §1983.

2. Affirmatively allege that at no time was Plaintiff deprived of any right, privilege or immunity secured by the Constitution or the laws of the United States.

3. Affirmatively allege that all applicable policies, procedures, customs and practices, if any, were performed in accordance with state and federal law.

4. Affirmatively allege that Defendants acted in good faith and pursuant to all applicable state and federal laws.

2

5.  Affirmatively allege that Plaintiff's alleged injury, if any, was caused by Plaintiff's own actions or inactions.

6.  Affirmatively allege that Defendants are entitled to absolute immunity to the extent they are named in their official capacities.

7.  Affirmatively allege that Defendants are entitled to qualified immunity to the extent they are named in their individual capacities.

8.  Affirmatively allege that this Court is not the most appropriate venue for Plaintiff's pendant state claims under 28 U.S.C. § 1367(a);

9.  Affirmatively allege that Plaintiff's Complaint, on its face, fails to state a claim upon which relief can be granted, because they are barred under Neb.Rev.Stat. § 13-905 et. seq.

10. Affirmatively allege that the Defendants reserve the right to assert additional affirmative defenses should discovery reveal facts supportive of the same.


WHEREFORE, the Defendants pray for dismissal of this action as well as their attorneys' fees and costs.


RESPECTFULLY SUBMITTED this 4th day of January, 2008.

STUART J. DORNAN, et al.
Defendants

BY      DONALD W. KLEINE
        Douglas County Attorney


/s/Kristin M. Lynch
Kristin M. Lynch #21512
Deputy Douglas County Attorney
909 Civic Center
Omaha, NE 68183
(402) 444-7935 phone
(402) 444-6817 fax
kristin.lynch@douglascounty-ne.gov

Attorney for Defendants.

3

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on January 4, 2008, I electronically filed a true and correct copy of the foregoing Answer with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Thomas J. Young        Doug Phillips
2433 South 130th Circle      4280 Sergeant Road, #290
Omaha, NE  68144       Sioux City, IA  51106

Alan Thelan         George A. Thompson
Assistant City Attorney      1210 Golden Gate Drive, #3127
1819 Farnam St., Ste 804     Papillion, NE  68046
Omaha NE 68183.

          /s/Kristin M. Lynch
          Kristin M. Lynch #21512

# Excerpts from Deposition of David Young,
## *Young v. Dornan, et al.*,
## May 19, 2008

**EXHIBIT**

**V**

```
 1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEBRASKA
 2

 3   DAVID J. YOUNG,              )  CASE NO. 8:07-cv-00265
                                  )
 4              Plaintiff,        )
                                  )
 5      vs.                       )
                                  )
 6   STUART J. DORNAN,            )
     individually and in his      )
 7   official capacity;           )
     DOUGLAS COUNTY NEBRASKA,     )
 8   A political subdivision of   )
     the State of Nebraska;       )
 9   CITY OF OMAHA, A political   )
     subdivision of the State     )
10   of Nebraska; JENNA R.        )
     JOHNSON; SANDRA L. DENTON,   )
11   individually and in her      )
     official capacity;           )
12   MATTHEW R. KAHLER,           )
     individually and in his      )
13   official capacity; ANGIE     )
     CIRCO, individually and in   )
14   her official capacity;       )
     ALAN REYES, individually     )
15   and in his official          )
     capacity; TERESA NEGRON,     )
16   individually and in her      )
     official capacity; JOHN      )
17   DOE #1, real and true name   )
     unknown; JANE DOE #1, real   )
18   and true name unknown,       )
                                  )
19              Defendants.       )
                                  )
20
                        * * * * *
21
           VIDEOTAPED DEPOSITION OF DAVID J. YOUNG,
22   taken before Nancy S. Jones, a Nebraska Certified
     Court Reporter, Registered Merit Reporter, and
23   General Notary Public in and for the State of
     Nebraska, on May 19, 2008, commencing at 10:03
24   a.m., at 2433 South 130th Circle, Omaha, Nebraska,
     pursuant to notice.
25


                  NANCY S. JONES, CCR-RMR
                 TWIN CITY REPORTERS, LTD.
                     (712) 325-6109
```

                                                              2

1                    - A P P E A R A N C E S -

2

3        Thomas J. Young, Esq.
         2433 South 130th Circle
4        Omaha, NE 68144                    for Plaintiff

5

6        Kristin M. Lynch
         Deputy County Attorney
7        Omaha/Douglas Civic Center
         1819 Farnam Street, Room 909      for Douglas
8        Omaha, NE 68183                   County

9

10       Alan M. Thelen
         Assistant City Attorney
11       City of Omaha Law Department
         Omaha/Douglas Civic Center
12       1819 Farnam Street, Suite 804
         Omaha, NE 68183                   for City of Omaha
13

14
         Douglas L. Phillips, Esq.
15       Klass Law Firm, L.L.P.
         Mayfair Center, Upper Level
16       4280 Sergeant Road, Suite 290     for Jenna R.
         Sioux City, IA 51106              Johnson
17

18

19       THE VIDEOGRAPHER:  Matthew Daharsh

20

21

22

23

24

25

                         NANCY S. JONES, CCR-RMR
                        TWIN CITY REPORTERS, LTD.
                            (712) 325-6109

Young - Direct

83

1    knowledge of every change of stories and he can

2    answer to the extent he knows.

3         MR. PHILLIPS:  Okay.

4    BY MR. PHILLIPS:

5         Q.   My question deals with what you were

6    just telling me.

7         A.   Okay.

8         Q.   I don't expect you to have photographic

9    recall of --

10        A.   All the --

11        Q.   -- all of the record.

12        A.   All right.

13        Q.   I want to know what you were referring

14   to me -- what you were referring to when you just

15   told me a moment ago that she had changed her

16   story.

17        A.   Okay.  The way I remember the documents,

18   and it's been a while since I read them, when she

19   originally talked to the officers, the public

20   safety officers at Creighton, she made the claim

21   that she did not believe there was any attempt at

22   penetration or anything.  Then when she talked to

23   the police there was, and there was no issue -- or

24   there was no existence of any consensual oral

25   sex.  During the one-party consent call she denies

Young - Direct

84

1    it occurring.  Afterwards --

2         Q.   Denies what occurring?

3         A.   I'm sorry.  The consensual oral sex.

4    Then afterwards she has a conversation with

5    Officer Circo, who asks her whether or not

6    consensual oral sex did occur.  She says yes.

7    Officer Circo then calls her back downtown to talk

8    to her.  Afterwards, she now believes there was no

9    consensual oral sex.  When she is then finally

10   under oath in her deposition, she does concede

11   that there was consensual oral sex.  And the same

12   is true for her testimony at trial.

13        Q.   Okay.  So one of the changes is this

14   back and forth about whether there was or wasn't

15   consensual oral sex?

16        A.   Yes.

17        Q.   And, I'm sorry, you prefaced it with

18   some other change.

19        A.   Whether or not an attempt at penetration

20   even did occur.

21        Q.   Okay.  Those are the two changes that

22   you had in mind when you used that phrase a moment

23   ago?

24        A.   Yes.

25        Q.   The affidavit to which you refer in

NANCY S. JONES, CCR-RMR
TWIN CITY REPORTERS, LTD.
(712) 325-6109

Young - Direct

85

1   paragraph 20 of your complaint --

2        A.   Yeah.

3        Q.   -- was the police officer's affidavit?

4             MR. YOUNG:   To the extent you can

5   answer, answer.

6        A.   I'm --

7   BY MR. PHILLIPS:

8        Q.   It says, and I quote, Defendant Circo

9   executed a false affidavit.

10       A.   You know, that's what it says there, yes.

11       Q.   Fair for me to assume that it was

12  Defendant Circo's affidavit?

13       A.   I would say yes.

14       Q.   What I want to know is, did Jenna

15  Johnson have the ability, as far as you know, to

16  control what Defendant Circo decided to put in her

17  affidavit?

18       A.   I have no idea.

19       Q.   Did Jenna Johnson --  Was it Jenna

20  Johnson's idea to go get a no-knock search

21  warrant?

22       A.   I have no idea.

23       Q.   Do you know if Jenna Johnson had any

24  input into the decision to get a no-knock search

25  warrant?

Young - Direct
86

1          A.    I have no idea.

2          Q.    At the end of paragraph 20, you allege

3    that no proper return and inventory was made as

4    required by law.  Not asking you for your opinion

5    of what's required by law, but I do want you to

6    explain that as best you can.

7                MR. YOUNG:  Objection:  foundation.

8                Answer to the best of your ability.

9                MR. PHILLIPS:  That's what I just said.

10               MR. YOUNG:  I understand.  I'm just

11   making my objection on foundation for the record.

12   BY MR. PHILLIPS:

13         Q.    Explain that as best you can.

14               MR. YOUNG:  Same objection.

15         A.    If I remember the document right, there

16   was never a return filed or any list of what

17   exactly was taken.

18   BY MR. PHILLIPS:

19         Q.    Do you have any basis for claiming that

20   Jenna Johnson had any input into an alleged

21   failure to file a return and/or an inventory?

22         A.    Yes.

23         Q.    What is your basis for claiming that she

24   had input into the decision not to file a return

25   and inventory?

NANCY S. JONES, CCR-RMR
TWIN CITY REPORTERS, LTD.
(712) 325-6109

Young - Direct

87

1        A.   It's a conspiracy claim.

2        Q.   And what is the basis for your claim

3    that she conspired with someone to prevent the

4    filing of a return and inventory?

5        A.   Well, again I don't know the law.

6        Q.   I'm not asking for the law.

7        A.   I know.  I'm just --

8        Q.   There's nothing legal about that

9    question.

10        A.   I'm just --

11        Q.   I'm asking for the facts.

12        A.   -- prefacing my answer.  That I believe

13    a conspiracy implicates everyone involved in it

14    and all the actions, so that's my basis for saying

15    she was involved with that.

16        Q.   You've told me that she changed her

17    story in two ways that come to mind as we sit here

18    today.

19        A.   Yes.

20        Q.   You told me that you have no idea

21    whether she was involved in preparing the

22    affidavit that Defendant Circo filed.  Correct?

23        A.   That's correct.

24        Q.   You have no idea whether she was

25    involved in the decision that someone made to try

Young - Direct

88

1      to secure a no-knock warrant.  Correct?

2           A.   That's correct.

3           Q.   And so she's a coconspirator because she

4      changed her mind in at least the two ways that you

5      describe?

6           A.   She's a coconspirator for those reasons,

7      yes.

8           Q.   Are there some other reasons why you

9      think Jenna was a coconspirator?

10          A.   I was about to get to that.

11          Q.   Sorry.  Okay.

12          A.   I guess really you could say she

13     instigated this whole thing by being dishonest

14     with the police and not revealing the truth to the

15     officers or anyone who took her statement

16     originally.  I imagine if it hadn't -- if she had

17     been truthful, none of these actions would have

18     came about.  And it's because of that I say that

19     she is a coconspirator.

20          Q.   So she started the ball rolling by, to

21     summarize what you just said, being dishonest with

22     the police?  Is that what you just told me?

23          A.   Yeah, she started the ball rolling by

24     doing that, yes.  And I don't know to where her

25     extent of involvement ended.

Young - Direct

89

1        Q.    So you don't know as you sit here today

2    whether Jenna did anything else to further the

3    conspiracy than make the initial complaint with

4    the omissions that you have described?

5        A.    That and her omissions in the one-party

6    consent call and her continued assertion of those

7    false -- or dishonest statements.  But otherwise I

8    have no knowledge to when her involvement ended,

9    no.

10       Q.    Was she conspiring with anyone in

11   particular?

12       A.    I have no knowledge on that.

13       Q.    Was there an agreement between Jenna and

14   any police officer, for example, to concoct a

15   story that would result in your arrest and

16   conviction?

17            MR. YOUNG:  Objection:  foundation.

18            Answer it the best you can.

19       A.    I have no idea.  No one --

20   BY MR. PHILLIPS:

21       Q.    That's exactly what I thought.

22            Was there a -- an agreement between

23   Jenna and any state's attorney to concoct and

24   stick to a story that would result in your arrest

25   and ultimate conviction?

Young - Direct

1          A.    I don't know.

2          Q.    Have you read Dean Borchers' deposition?

3          A.    I read the transcript after it occurred

4     but not since, no.

5          Q.    Are you basically familiar with what he

6     said about why you didn't get into Creighton?

7          A.    I have a general understanding, but I

8     couldn't cite anything he specifically said.

9          Q.    Tell me generally what your

10    understanding is after having read that

11    transcript.

12         A.    While qualified for admission, I was at

13    the very bottom of the qualifying class and

14    didn't -- there weren't either enough open spots

15    or they just never got up the wait list far

16    enough.

17         Q.    What is the basis, the factual basis for

18    your allegation in paragraph 23 of your complaint

19    that Jennifer Thompson advised the dean of the

20    Creighton Law School that you should be denied

21    admission and that you were unfit to engage in the

22    practice of law?

23         A.    Well, I -- as I understand it -- I, you

24    know, wasn't there -- and this goes to the

25    deposition, as well -- he cleared that up, that

NANCY S. JONES, CCR-RMR
TWIN CITY REPORTERS, LTD.
(712) 325-6109