IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DAVID YOUNG, | ) | |
| | ) | |
| Plaintiff, | ) | 8:07CV265 |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF OMAHA, a political | ) | MEMORANDUM AND ORDER |
| sub-division of the State of | ) | |
| Nebraska; JENNA R. JOHNSON; | ) | |
| ANGIE CIRCO, individually and | ) | |
| in her official capacity; ALAN | ) | |
| REYES, individually and in | ) | |
| his official capacity; | ) | |
| JOHN DOE #1, real and true | ) | |
| name unknown; JANE DOE #1, | ) | |
| real and true name unknown, | ) | |
| | ) | |
| Defendants. | ) | |

## I. INTRODUCTION

This matter is before the Court on defendant Jenna Johnson's motion for summary judgment (Filing No. 211) and defendants the City of Omaha, Angie Circo, and Alan Reyes' (the "City Defendants") motion for summary judgment (Filing No. 214). Also before the Court are plaintiff David Young's motion in limine (Filing No. 188), regarding the City Defendants' proposed expert witness, Barry G. Dickey, and Young's motion to strike (Filing No. 226), regarding certain excerpts in the City Defendants' index of evidence supporting their motion for summary judgment. Because these motions relate to the City Defendants' and Johnson's summary judgment motions, the Court will evaluate the merits of these motions.

The Court has reviewed the briefs, evidentiary submissions, and the applicable law.  For the following reasons, the Court finds Young's motion in limine and motion to strike should be denied, the City Defendants' motion for summary judgment should be granted in full, and Johnson's motions for summary judgment should be granted in part and denied in part.

## II. FACTS

The facts relevant to these motions are largely undisputed.  This civil case arises from events surrounding the arrest, prosecution, and ultimate acquittal of Young for the crime of first-degree sexual assault.  In the evening on June 4, 2005, Katie Ryan, Samantha Peterson, Young, and Johnson gathered in Peterson's apartment located on Creighton University's campus (Young Brief in Opposition to Johnson's Motion for Summary Judgment ("Young-221"), Filing No. 221, at 2).  Early in the morning on June 5, 2005, Young and Johnson went to a spare bedroom in Peterson's apartment, in which the two hugged and kissed; Johnson at one point performed oral sex on Young (Young-221 at 3).  At one point, after Johnson told Young that she did not want to engage in sexual intercourse, Young touched Johnson near her vagina and Johnson pushed Young off the bed (Young-221 at 3; Young Brief in Opposition to City Defendant's Motion for Summary Judgment ("Young-224"), Filing No. 224, at 3).

-2-

Thereafter, Johnson went to sleep or feigned being asleep, while Young laid on the bed with her (Young-221 at 4; Young-224 at 4).  Johnson stated she next remembered feeling someone touching her, and found that her pajamas and underwear were pulled down and that Young had his finger in Johnson's vagina (Young-221 at 5; Young-224 at 4).  Johnson asked Young to leave the room, and Young left (Young-221 at 5).

Ryan reported a sexual assault to a Creighton representative the next day (Young-221 at 6).  Johnson reportedly told the Creighton representative that "she did not believe that [Young] ever penetrated her or ever successfully forced intercourse" (Andrew Perrone's Creighton University Division of Student Services Incident Report, Filing No. 213, Exhibit C, at 18).  Johnson later stated that, at the time of her initial statement to the Creighton representative, she did not believe the word "penetration" to include digital penetration, but rather included only penal penetration (Jenna Johnson Deposition, Filing No. 213, Exhibit N, at 84).

Later in the day on June 5, Johnson contacted the Omaha Police Department ("OPD") and reported a sexual assault (Cunningham Report, Filing No. 213, Exhibit B, at 15).  Johnson initially reported to OPD that Young had digitally penetrated her, but did not tell OPD that she had performed oral sex on Young prior to this incident (*Id.*).

-3-

Thereafter, Circo, an officer in OPD's Child Victims/ Sexual Assault Unit, began investigating the incident between Young and Johnson.  During the initial interview on June 16, 2005, Johnson did not disclose to Circo that Johnson had performed oral sex on Young (Young-221 at 8).

Circo arranged on June 20, 2005, for Johnson to place a "one-party consent" phone call to Young, during which Johnson denied performing oral sex on Young (Young-221 at 8; Young-224 at 5).  Circo tape recorded the phone call between Johnson and Young (*Id.*).  At one point during the call, Circo's tape recorder stopped recording Johnson and Young's conversation (*Id.*).

On June 22, 2005, Circo again interviewed Johnson, during which Johnson initially denied, but eventually admitted, that she had performed oral sex on Young (Young-221 at 9; Young-224 at 7).  Circo later stated that, in her experience as an officer in the Child Victim/Sexual Assault Unit, it is not unusual for sexual assault victims to change their story due to fear, embarrassment, or other reasons (Young-224 at 8).  Circo also stated, even if Johnson performed oral sex on Young, Young's purported digital penetration of Johnson without Johnson's consent occurred after all other sexual activity between Johnson and Young had ceased (*Id.*).

Thereafter, Circo contacted Young to schedule an informal, voluntary interview with Young.  On July 26, 2005, the

-4-

date on which the interviewed was scheduled, Circo was
unavailable and Reyes, a sergeant in OPD's Child Victim/Sexual
Assault Unit, conducted the interview on Circo's behalf (*Id.* at
9-10).  Reyes informed Young of his *Miranda* rights and told Young
the interview was voluntary, Young was free to leave, and Young
could demand a lawyer (*Id.* at 10).  During the interview, as an
investigative technique, Reyes informed Young that the police had
obtained a tampon Johnson had used on the night of the incident
and that the tampon may contain a sample of Young's DNA (*Id.*).
Reyes also indicated to Young that analysis of Johnson's mouth
could prove or disprove the oral sex allegation (*Id.*).  In fact,
Reyes' statements to Young were misinformation (*Id.*).  Toward the
end of the interview, Young consented to Reyes request to swab
the inside of Young's mouth to obtain Young's DNA sample (*Id.* at
11).

On August 18, 2005, Circo filed an affidavit of
complaining witness with the Douglas County District Court, in
support of an arrest warrant application (Circo's Affidavit of
Complaining Witness, Filing No. 213, Exhibit E, at 29-31).  The
court found there was probable cause to arrest Young for the
offense of first-degree sexual assault and issued an arrest
warrant for Young on August 19, 2005 (Arrest Warrant, Filing No.
213, Exhibit F, at 33).  On August 24, 2005, Circo and another

officer went to Creighton University's campus and arrested Young; Young was released later that day on bond (Young-224 at 12).

Thereafter, Sandra Denton, a deputy prosecutor in the Douglas County Attorney's office, oversaw the prosecution of Young's criminal case (*Id.* at 12, 13). Denton stated she believed there was probable cause to prosecute Young for first-degree sexual assault and he could be convicted of these offenses (*Id.*). On at least three occasions during Young's criminal proceeding, the Douglas County District Court determined there was probable cause to believe that Young had committed first-degree sexual assault (Young-221 at 14; Young-224 at 13, 14). In addition, the court also ruled that the prosecution had established the prima facie case for first-degree sexual assault against Young (*Id.*).

In June 2006, shortly before Young's criminal trial was scheduled to begin, Circo interviewed Lauren Kjelden, Young's ex-girlfriend (Young-224 at 14). Kjelden reportedly told Circo that she knew of another incident involving Young in which a girl had reported Young had been too aggressive with her in her dorm room (*Id.*). Thereafter, Circo prepared an affidavit in support of an application for a search warrant to obtain Young's records from Creighton (*Id.* at 15). The Douglas County District Court issued the search warrant for Young's records at Creighton on July 12, 2006, and Circo executed the warrant the same day to obtain

-6-

copies of Young's Creighton records (*Id.*).  The records indicated
Young had been involved in another incident with another female
student at Creighton in which Young had reportedly gotten on top
of the female student, tried to remove her clothes without her
consent, and prevented her from leaving the dorm room (*Id.*).
Circo distributed the records to the Douglas County Attorney's
Office, which sought to offer the records against Young at his
criminal trial (*Id.*).  The court, however, excluded the records
(*Id.*).

During the trial, Johnson testified and admitted to
performing oral sex on Young on the night of the incident (Young-
221 at 10).  Ultimately, Young was acquitted (Young-221 at 10;
Young-224 at 16).

After Young's trial, Deputy District Attorney Matthew
Kahler sent a letter to OPD authorizing OPD to destroy the swabs
containing Young's DNA, which Reyes had obtained from Young
during their interview (Young-224 at 17, 18).  Upon receipt of
the letter, Circo sent a copy of the letter to OPD's property
unit with a memorandum requesting they destroy the swab (*Id.*).
An OPD property report indicates the swabs were destroyed on
October 12, 2006 (OPD Property, Filing No. 215, Exhibit D, at
18).

### III.  PROCEDURAL HISTORY

Young brought this action against Johnson, Johnson's parents, Douglas County, Stuart Dornan, Sandra Denton, Matthew Kahler, Jennifer Thompson (Douglas County, Dornan, Denton, Kahler, and Thompson collectively referred to as the "County Defendants"), the City of Omaha, Angie Circo, Alan Reyes, Teresa Negron (City of Omaha, Circo, Reyes, and Negron collectively referred to as the "City Defendants") (Complaint, Filing No. 1). In his complaint, in addition to the foregoing facts detailed above, Young alleged among other things that:

- A "higher up" at the Omaha World Herald received information regarding the charges to be filed against Young, and at the time Johnson's father worked at the Omaha World Herald (Complaint ¶ 15);

- Negron disclosed OPD information relating to Young to an unidentified person, and the disclosed information was discussed in a television news report (Complaint ¶ 17); and

- Thompson advised the Dean of the law school at Creighton University that Young should not be admitted to the law school, which resulted in Creighton denying admission to Young (Complaint ¶ 23).

Young alleged the defendants' conduct cumulatively gave rise to four causes of action:

1.  A conspiracy to deprive Young of certain constitutional rights in

-8-

> > violation of 42 U.S.C. § 1983
> > (Complaint ¶¶ 28-32);

> 2.   False Imprisonment (Complaint ¶¶
> > 33-36);

> 3.   Malicious Prosecution (Complaint ¶¶
> > 37-40); and

> 4.   Abuse of Process (Complaint ¶¶ 41-
> > 43).

On December 12, 2007, the Court granted Thompson's motion for summary judgment and dismissed her from the case (Filing No. 48).  On December 18, 2007, the Court granted a motion to dismiss in favor of Johnson's parents, but denied a motion to dismiss by the County Defendants (Filing No. 50).  On July 1, 2009, the Court granted Young's motion to voluntarily dismiss Negron from the case (Filing No. 167).  Similarly, Dornan was voluntarily dismissed at Young's request on July 22, 2009 (Filing No. 172).  On August 19, 2009, the Court granted summary judgment in favor of the remaining County Defendants and dismissed them from the case (Filing No. 196).  Johnson and the City Defendants thereafter filed their motions for summary judgment presently before the Court.

## IV.  MOTION IN LIMINE & MOTION TO STRIKE

### A.   Motion in Limine

Young's motion in limine (Filing No. 188) seeks to exclude expert opinion evidence derived from Barry J. Dickey, a certified forensic analyst specializing in the authentication and

-9-

evaluation of digital and analog media, including analysis of video and audio originals and reproductions.  First, Young seeks to exclude Dickey's opinion that "certain gaps occurring over parts of a cassette tape of the one-party consent telephone call between Johnson and Young are 'virgin tape.'"  Second, Young seeks to exclude Dickey's opinion "that a loss of power of the recording unit is a 'plausible' explanation for these gaps; and, the gaps existing on the cassette tape could have been 'plausibly' caused by someone hitting the play mode of the recording unit."  Young does not challenge Dickey's expert qualifications, but he does challenge whether the "theory and/or methodology is scientifically valid and reliable as having been tested and generally accepted in the scientific community."[1]

Fed. R. Evid. 702 requires expert testimony to be "the product of reliable principles and methods."  Fed. R. Evid. 702. Young presents no authority or information suggesting Dickeys' methods and principles are unreliable.  Conversely, the City Defendants have presented extensive information supporting the

---

[1] Young errantly relies on the long overturned *Frye* test for determining whether expert testimony is admissible.  *Compare Frye v. United States*, 293 F. 1013, 1014 (D.C. Cir. 1923) ("[W]hile courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, *the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs*.") (emphasis added), *with Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 587 (1993) (recognizing Fed. R. Evid. 702 superseded the *Frye* test).

reliability of Dickey's principles and methods.  *See* Dickey Declaration, Filing No. 198-2, ¶¶ 8e, 15, 17; AES Standard for Forensic Purposes, Filing No. 198-2, Exhibit B; Bruce E. Koenig, Authentication of Forensic Audio Recordings, Filing No. 198-3, Exhibit C.  The City Defendants' information supports the Court's finding that Dickey's principles and methods are reliable.  *See* Fed. R. Evid. 702; *see generally Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Alternatively, Young moves the Court to exclude Dickey's expert opinions under Rule 403, because Dickey's testimony will be "overly prejudicial as compared to its probative value" (Motion in Limine, Filing No. 188, at 2).  There is nothing to indicate the substantive value of Dickey's testimony will be "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.  Just because evidence may tend to refute a party's position does not make that evidence inadmissible under Rule 403.  Accordingly, Young's motion in limine is denied.

**B.   Motion to Strike**

Young's motion to strike (Filing No. 226) seeks to strike certain excerpts from the record offered by City Defendants in support of their motion for summary judgment (Filing No. 215).  Specifically, Young moves to strike paragraphs

11 and 15 from the Declaration of Angie Circo, paragraphs 14 and 19 from the Declaration of Sandra L. Denton, and paragraph 6 from the Declaration of Barry DeJong.  Young also moves to strike "[a]ll portions of the Declaration of Barry G. Dickey . . . and the second Declaration of Barry G. Dickey . . . which are not contained in the disclosure of expert testimony previously provided by the City of Omaha Defendants pursuant to Fed. R. Civ. P. 26(2) [sic]."

        With regard to the Dickey statements, the Court denies Young's motion for failing to comply with this district's rules regarding motion practice.  Rule 7.0.1(a) requires a moving party to "state the basis for the motion and the *specific* relief requested."  NECivR 7.0.1(a) (emphasis added).  Young's motion to strike, however, contains a nebulous statement requesting the Court strike "[a]ll portions" of Dickey's declarations "not contained in the disclosure of expert testimony."  Necessarily, because the Court cannot ascertain the specific relief Young requests, the Court will deny Young's motion with regard to the Dickey declarations without prejudice.

        Regarding the Circo, Denton, and DeJong declaration excerpts, Young argues the Court must strike these excerpts because they contain beliefs and opinions, which "are contrary to Fed. R. Civ. P. 56 which requires consideration only of facts and not beliefs and opinions of non experts."  Young cites no

-12-

authority supporting the argument that a court may not consider non-expert opinions in evaluating a summary judgment motion. Contrary to Young's position, cases have held that courts may consider non-expert opinions when evaluating a motion for summary judgment if the opinion fulfills the requirements of Federal Rule of Evidence 701. *See*, *e.g.*, *Gallimore v. Newman Mach. Co., Inc.*, 301 F. Supp. 2d 431, 438 (M.D.N.C. 2004) (declining to strike a non-expert's opinion or inference in evaluating a summary judgment motion when the opinion or inference was otherwise admissible under Fed. R. Evid. 701).  The Court finds Circo, Denton, and DeJong's testimony fulfills the requirements of Rule 701 because their testimony is rationally based on their perceptions, helpful to clearly understanding their testimony, and not based on scientific, technical, or other specialized knowledge within the scope of Fed. R. Evid. 702.  *See* Fed. R. Evid. 701.  Young's motion to strike will be denied.

## V.  SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is material only when its resolution affects the outcome of the case. *Anderson,* 477 U.S. at 248. A material issue is genuine if it has any real basis in the record. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). On a motion for summary judgment, the Court must view all evidence and reasonable inferences in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 250. However, the nonmoving party may not rest on the mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). If the plaintiff cannot support each essential element of his claim, summary judgment will be granted because a complete failure of proof regarding an essential element necessarily renders other facts immaterial. *Id.* at 322-23.

## VI. DISCUSSION

### A. The City Defendants

The City Defendants argue summary judgment is appropriate with respect to Young's claims against the City Defendants for three reasons. First, the City Defendants argue they did not deprive Young of his civil rights, thus nullifying Young's claim under 42 U.S.C. § 1983 (City Defendant's Brief in Support of Summary Judgment ("CD Brief"), Filing No. 216, at 13-

-14-

39).  Alternatively, the City Defendants argue Circo and Reyes are individually entitled to a defense of qualified immunity (CD Brief at 39-44).  Finally, the City Defendants argue the state law claims Young has made against the City Defendants are expressly barred by the Nebraska Tort Claims Act, Neb. Rev. Stat. §§ 13-901 et seq. (*Id.* at 44-48).

1.   42 U.S.C. § 1983 Claims

a.   Circo & Reyes - Individual Capacities

The City Defendants argue Circo and Reyes are entitled to qualified immunity in their individual capacities with respect to Young's 42 U.S.C. § 1983 claim.  "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Wilson v. Lane*, 526 U.S. 603, 609 (1999).  Qualified immunity makes an official sued in his or her individual capacity immune from suit.  15 Am. Jur. 2d *Civil Rights* § 113.  Qualified Immunity is a question of law for the Court.  *Littrell v. Franklin*, 388 F.3d 578, 584 (8th Cir. 2004).  However, in the context of summary judgment, the Court views the record in the light most favorable to Young and draws all reasonable inferences in his favor.

-15-

The Supreme Court has established a two-prong analysis for resolving whether an official is entitled to qualified immunity.  Traditionally, courts will first determine whether the facts the plaintiff alleges or shows make out a violation of a constitutional right; then courts must determine whether the right at issue was clearly established.  *Saucier v. Capps*, 533 U.S. 194, 201 (2001), *modified by Pearson v. Callahan*, 129 S. Ct. 808 (2009); *Harlow*, 457 U.S. at 818.  The Supreme Court has recently ruled courts have discretion to resolve either prong of the analysis in an order that best suits the case.  *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009) (holding the *Saucier* protocol for resolving qualified immunity cases is not mandatory, but may often be beneficial).

In this case, Young maintains the following alleged conduct by the City Defendants were constitutional or statutory violations:

1.    Circo initially arresting Young in August 2005;

2.    Circo seizing Young's records from Creighton University;

3.    Circo tampering with the audio tapes used during the one-party consent telephone call between Johnson and Young;

4.    Reyes seizing Young's DNA sample during their interview; and

> 5.   Circo and Reyes' failing to destroy
>      Young's DNA sample.

(Young-224 at 33).

The Court finds Circo and Reyes are entitled to qualified immunity with regard to Young's § 1983 claims against them.  With regard to Circo's initial arrest of Young in 2005, the Court finds Circo did not violate Young's 4th Amendment rights.  Circo obtained a valid arrest warrant from the Douglas County District Court, which makes Young's arrest proper under the 4th Amendment.[2]

Young maintains Circo intentionally or recklessly included false statements in her affidavit supporting the arrest warrant application, which necessarily make the arrest warrant for Young invalid.  Young cites the case of *Bagby v. Brondhaver*, 98 F.3d 1096 (8th Cir. 1996), as supporting his argument.  In *Bagby*, the Eighth Circuit determined an initial warrant affidavit contained false and misleading statements not supporting a probable cause finding, but allowed the affiant to assert qualified immunity because the affiant later submitted a corrected affidavit to the court supporting a probable cause

---

[2] Because Young had a full and fair opportunity to litigate the validity of the arrest warrant before the state court and because the state court determined on several occasions that there was probable cause to suspect Young had committed the crime of first-degree sexual assault, this Court is precluded from re-deciding the probable cause issue.  *See Allen v. McCurry*, 449 U.S. 90, 94, 95 (1980); *Simmons v. O'Brien*, 77 F.3d 1093, 1095 (8th Cir. 1996); 28 U.S.C. § 1738.

finding.  *Bagby*, 98 F.3d at 1099.  The affiant's initial warrant affidavit did not include exculpatory statments the accused made, did not discuss a witness' reliability, and the affidavit led a reasonable person to believe that one person witnessed the accused's criminal conduct.   *Id.* at 1098.  The district court denied qualified immunity because "it was not reasonable for the [affiant] to submit an affidavit that contained materially false statements." *Id.*

Young argues the omissions Circo made in her affidavit, regarding Johnson's performing of oral sex on Young and Johnson's statement to a Creighton representative that Young did not penetrate her, were material false statements similar to the circumstances in *Bagby*.  However, the statements in the *Bagby* affidavit are distinguishable from Circo's statements in her affidavit.  Unlike the *Bagby* affidavit, which led a reasonable person to believe someone had witnessed the crime, Circo's affidavit contained no such misstatement.  While Circo's application did not disclose the conflicting statement Johnson made regarding penetration and did not disclose the exculpatory statements Young made during the one-party consent telephone call, the Court finds these statements do not arise to the level of "deliberate falsehood" or "reckless disregard for the truth." *Bagby*, 98 F.3d at 1098.  Therefore, the Court finds Young's initial arrest in 2005 did not violate the Constitution, and

Circo is entitled to qualified immunity for her involvement in
Young's initial arrest in 2005.

      With regard to the remaining conduct Young asserts
Circo and Reyes engaged in, the Court finds Young has not shown
these rights were clearly established constitutional or statutory
rights.[3]  Therefore, under *Callahan*, Circo and Reyes are entitled
to qualified immunity in their individual capacity for this other
alleged conduct.[4]

      b.   Circo and Reyes - Official Capacities

      The Court finds Young's claims against Circo and Reyes
in their official capacities likewise fail.  Even when the
evidence is viewed in a light most favorable to Young, Circo and
Reyes conduct did not deprive Young of a constitutional right.
As discussed above, the circumstances surrounding Young's initial
arrest did not violate Young's 4th Amendment rights.

      Likewise, Circo's conduct in obtaining a search warrant
to obtain Young's education records from Creighton University did
not deprive Young of his Fourth Amendment rights.  Young
maintains the Family Educational Rights and Privacy Act

------

[3] Because the Court has discretion to address either prong
of the *Saucier* test first, the Court in this section only
addresses whether Circo and Reyes' other conduct violated a
clearly established right.

[4] As an alternative ground for granting qualified immunity
to Circo and Reyes, none of their conduct deprived Young of a
constitutional or statutory right.  *See infra* § VI.A.1.b.

-19-

("FERPA"), 20 U.S.C. § 1232g, provides Young with a privacy right in his education records, which the Fourth Amendment protects. However, FERPA's text does not prohibit law enforcement officers from obtaining a student's education records from an education institution.  Moreover, the Supreme Court has held FERPA does not create an individual right enforceable under § 1983. *Gonzaga University v. Doe*, 536 U.S. 273, 289, 290 (2002).  FERPA's sole enforcement mechanism is the Department of Education's power to withhold federal funds from education institutions that disclose education records to unauthorized third parties. *Gonzaga*, 536 U.S. at 279; 20 U.S.C. § 1232g(b)(1).

Regarding Circo's alleged tampering with the audio tapes used during the one-party consent telephone call between Young and Johnson, the Court finds no constitutional violation occurred.  There is no information in the record, other than Young's unsupported assertions, that would lead a reasonable jury to believe Circo tampered with the audio tapes.  Young has not set forth specific facts sufficient to raise a genuine issue of material fact.  Accordingly, Circo did not deprive Young of a right with respect to the audio tape.

Regarding the collection of Young's DNA during the interview with Reyes, the Court finds Young voluntarily consented to give his DNA to Reyes, and no constitutional violation occurred.  Young argues his consent was not given voluntarily,

-20-

but rather was the product of Reyes' false statement to Young that OPD had obtained a tampon Johnson used on the night of the incident, which would potentially contain Young's DNA, and that a DNA analysis of Johnson's mouth could determine whether Johnson had performed oral sex on Young.

In determining whether Young voluntarily gave his DNA sample to the police, the Court looks to the totality of the circumstances and determines whether the suspect's will was overborne by police and whether his capacity for self-determination was critically impaired. *See United States v. Larry*, 126 F.3d 1077, 1079 (8th Cir. 1997) (concluding a police statement to a suspect that the suspect would not be prosecuted did not make the suspect's subsequent confession involuntary). The totality of the circumstance in Young's case demonstrate Young's capacity for self-determination was not critically impaired when he consented to give his DNA sample to Reyes. Young does not dispute that he voluntarily came to the interview with Reyes, that Reyes informed Young of his *Miranda* rights, and that Reyes told Young he was free to go at any time or could demand to have a lawyer present. Nothing about the situation suggests Young could not have refused to allow Reyes to obtain a DNA sample. Thus, Reyes did not deprive Young of a constitutional right in obtaining Young's DNA sample.

Finally, Circo and Reyes did not deprive Young of a right with respect to the destruction of the DNA sample obtained during the Reyes interview.  Although Young maintains the DNA sample has not been destroyed, Young has not set forth any specific facts sufficient to raise a genuine issue of material fact and all the evidence in the record indicates the DNA sample was destroyed on October 12, 2006.  Accordingly, no rights deprivation occurred.

In sum, Circo and Reyes did not deprive Young of a constitutional or statutory right.  Therefore, the Court will dismiss the claims against Circo and Reyes in their official capacity.

c.   City of Omaha

The Court finds Young's claims against the City of Omaha also fail.  In order to prevail against the City, Young must demonstrate the City of Omaha had a policy or custom which caused a constitutional rights violation.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978).  The Court finds no evidence in the record of any policy or custom would subject the City of Omaha to direct liability and Young mentions no specific policy or custom by the City violating a constitutional right.

2.   State Law Claims

a.   Circo and Reyes - Official Capacities

Young has also sued the City Defendants for the torts of false imprisonment, malicious prosecution, and abuse of process.  The Nebraska Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 13-901 to 13-926, generally allows political subdivisions to be held liable for tort claims.  The Act also allow political subdivision employees to be sued in their official capacities.  Neb. Rev. Stat. §§ 13-902, 13-903(3).  The Act is the sole method in Nebraska law for asserting a tort claim against a political subdivision.  Neb. Rev. Stat. § 13-902.

The Act, however, limits the types of actions that may be brought against a political subdivision and its employees in their official capacity.  The Act does not allow a political subdivision or its employees to be sued "for any claims arising out of . . . false imprisonment, malicious prosecution, or abuse of process. . . ."  Neb. Rev. Stat. § 13-910(7).  Accordingly, the Court finds the Act bars Young's state law claims against Circo and Reyes in their official capacities.

b.   City of Omaha

For the same reasons Young's state law claims are barred against Circo and Reyes in their official capacities, Young's state law claims against the City of Omaha are similarly barred.

-23-

c.   Circo and Reyes - Individual Capacities

Young also asserts his state law claims against Circo and Reyes in their individual capacities.  Nebraska courts have consistently held that a political subdivision's employee cannot be sued individually if the alleged tortious conduct occurred while the employee acted within the scope of the employee's employment.  *Bohl v. Buffalo County*, 251 Neb. 492, 499, 557 N.W.2d 668, 673 (1997); *Kuchar v. Krings*, 248 Neb. 995, 999, 540 N.W.2d 582, 586 (1995); *Edington v. City of Omaha*, Nos. A-98-205 & A-98-206, 1999 WL 703294, at *4, *5 (Neb. Ct. App. Sept. 7, 1999).

The Court finds at all relevant times, Circo and Reyes acted within the scope of their employment.  As he previously argued in connection with the former Douglas County defendants (*see* Young's Brief in Opposition to Motion for Summary Judgment of the Douglas County Defendants, Filing No. 176, at 28-29), Young argues Circo and Reyes acted outside the scope of their employment.  As the Court previous stated, whether Circo and Reyes acted with authorization or according to the policy of their superiors does not dispose of the question of whether they acted in the scope of their employment.  *See* Memorandum and Order, Filing No. 196, at 12, 13; *see also Bohl*, 251 Neb. at 501, 557 N.W.2d at 674 (determining an off-duty police officer traveling to testify before a court regarding a matter unrelated

to his employment with Buffalo County acted within the scope of
his employment when the officer collided with another vehicle).
Any alleged tortious conduct Circo and Reyes engaged in occurred
in the scope of their employment, which prevents Young from
asserting his state law claims against Circo and Reyes
individually.

**B.   Johnson**

Johnson argues summary judgment is appropriate with
respect to Young's claims against Johnson for four reasons.
First, Johnson argues she did not conspire with the other
defendants to deprive Young of his constitutional rights, and
Young's constitutional rights were not deprived (Johnson's Brief
in Support of Summary Judgment ("Johnson Brief"), Filing No. 212,
at 11-15).  Second, Johnson argues she did not falsely imprison
Young because, to the extent Johnson made inconsistent statements
to the police, these inconsistent statements were not
determinative of the police's decision to arrest Young (Johnson
Brief at 15-16).  Third, Johnson argues she could not have
maliciously prosecuted Young because there was probable cause to
institute the prosecution against Young and Johnson's actions
were not the causation of Young's prosecution (*Id.* at 16-18).
Finally, Johnson argues the record is devoid of evidence
suggesting Johnson attempted to abuse process against Young (*Id.*
at 18-19).

1.   42 U.S.C. § 1983 Conspiracy Claim

Young alleges Johnson conspired with OPD and/or the prosecutors in handling Young's criminal action, and this conspiracy resulted in a deprivation of Young's constitutional rights.  The parties both point to the case of *White v. McKinley*, 519 F.3d 806 (8th Cir. 2008), as setting the standard for establishing whether a private actor conspired with state actors to deprive a constitutional right in violation of 42 U.S.C. § 1983.  *See White*, 519 F.3d at 814 ("[A] plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff.).

Before determining whether a private actor conspired with state actors to deprive a plaintiff's constitutional rights, courts must first determine whether the plaintiff's constitutional rights were deprived.  *See id.* ("The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail in a § 1983 civil conspiracy claim.").  As discussed above and in the Court's order dismissing Young's claims against the Douglas County defendants (*see generally* Filing No. 196), Young was not deprived of his constitutional rights.  Young cannot support an essential element

of his § 1983 conspiracy claim against Johnson, and accordingly the Court will dismiss this claim against Johnson.

    2.   State Law Claims

        a.   False Imprisonment Claim

Young has asserted Johnson is liable to Young for the state law tort of false imprisonment.  Under Nebraska law, a police informant can be held liable for false imprisonment if the "informer knowingly gives to an officer false information which is a determining factor in the officer's decision to make an arrest. . . ."  *Nauenburg v. Lewis*, 265 Neb. 89, 94, 655 N.W.2d 19, 23-24 (2003) (citing *Johnson v. First Nat. Bank & Trust Co.*, 207 Neb. 521, 300 N.W.2d 10 (1980)).

The Court finds, when the evidence is viewed in a light most favorable to Young, a genuine issue of material fact exists regarding the determining factor in OPD's decision to arrest Young for first-degree sexual assault.  Accordingly, summary judgment in favor of Johnson is not proper on this issue.

        b.   Malicious Prosecution

Young also asserts Johnson is liable to Young for the state law tort of malicious prosecution.  Under Nebraska law, the elements of malicious prosecution are:

      1.   The commencement or prosecution of the proceeding against him or her;

      2.   Its legal causation by the present defendant;

-27-

3.    Its bona fide termination in favor
      of the present plaintiff;

4.    The absence of probable cause for
      such proceeding;

5.    The presence of malice therein; and

6.    Damage, conforming to legal
      standards, resulting to the
      plaintiff.

*Holmes v. Crossroads Joint Venture*, 262 Neb. 98, 116-17, 629

N.W.2d 511, 526 (2001) (citing *Prokop v. Hoch*, 258 Neb. 1009,

1014, 607 N.W.2d 535, 540 (2000)).  "[W]here an informant

knowingly gives false or misleading information or otherwise

directs or counsels officials in such a way so as to actively

persuade and induce the officer's decision, then the informant

may still be held liable for malicious prosecution."  *Holmes*, 262

Neb. at 117, 629 N.W.2d at 527.

When the evidence is viewed in a light most favorable

to Young, the Court finds genuine issues of material fact exist

regarding whether Johnson gave false and misleading information

to OPD, which may have actively persuaded and induced the

decision to prosecute Young for first-degree sexual assault.

Accordingly, summary judgment is not proper on this issue.

c.    Abuse of Process

Finally, Young alleges Johnson is liable to Young for

the state law tort of abuse of process.  Two elements are

necessary to establish an abuse of process action: "[1] the

-28-

existence of an ulterior purpose[; 2] and an act in the use of the process not proper in the regular prosecution of the proceeding." *Gordon v. Comm. First State Bank*, 255 Neb. 637, 646-47, 587 N.W.2d 343, 351 (1998), *cert. denied*, 528 U.S. 814 (1999) (quoting *Martin v. Sanford*, 129 Neb. 212, 261 N.W. 136 (1935)). "The gist of the tort of abuse of process is misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish, as compared with the tort of malicious prosecution, which focuses on commencing an action or causing process to issue without justification." *Stagemeyer v. County of Dawson*, 192 F. Supp. 2d 998, 1010 (D. Neb. 2002) (internal quotations omitted) (citing *Vybiral v. Schildhauer*, 130 Neb. 433, 265 N.W.2d 241, 244 (1936)).

In this case, no genuine issue of material fact exists suggesting Johnson's statements to OPD had an ulterior purpose that sought to use judicial processes for an irregular and improper purpose. While Johnson's statements, to the extent a jury could find them false or misleading, could be sufficient to support a finding at trial that she is liable to Young for malicious prosecution, her statements are not sufficient to support an abuse of process claim. Thus, the Court will enter summary judgment in favor of Johnson on this issue.

IT IS ORDERED:

1) Young's motion in limine (Filing No. 188) is denied;

2) Young's motion to strike (Filing No. 226) is denied;

3)  The City Defendant's motion for summary judgment is granted - all of Young's claims against the City Defendants are dismissed; and

4)  Johnson's motion for summary judgment is granted in part and denied in part:  Young's claims against Johnson for conspiracy to violate 42 U.S.C. § 1983 and for abuse of process are dismissed, and in all other respects is denied.

DATED this 2nd day of December, 2009.

BY THE COURT:

/s/ Lyle E. Strom

LYLE E. STROM, Senior Judge
United States District Court